IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Criminal No. 1:00-300-03 |
| ) | |
| AHMED WALKER ) | J Rambo |
| a/k/a Amelios, a/k/a/ Ammo ) | |

## RESENTENCING MEMORANDUM

Ahmed Walker, through his undersigned counsel, files this Resentencing Memorandum. This memorandum will set forth two proposed sentences and state his reasons in support.

### Introduction

A jury convicted Mr. Walker in this Court of six counts of a seven count Indictment (Count 2 was dropped by the government) as follows: Count 1 - a violation of 18 U.S.C. § 924(c)(1)(A)(I), (II), (III) and § 924(o); Count 3 - a violation of 18 U.S.C. § 924(c)(1)(A) and § 924(c)(1)(C)(I); Count 4 - a violation of 18 U.S.C. § 924(c)(1)(A)(I), (II), (III) and § 924(c)(1)(C)(I); Count 5 - a violation of 21 U.S.C. § 846; and Count 6 - a violation of 21 U.S.C. § 841(a)(1).

The United States Court of Appeals for the Third Circuit affirmed Mr. Walker's conviction on all counts, vacated his sentence with regards to Counts 1, 5 and 6, and remanded for resentencing consistent with *Booker*. Walker's sentence was vacated because it was based on findings involving other drugs and amounts of cocaine base that the jury did not expressly pass upon. The Third Circuit directed that: "the District Court will redetermine the applicable guidelines range for counts 5 and 6. Such a redetermination may equally apply to count 1. And such a redetermination might very well lead to a guidelines range below the 240 month statutory maximum." *U.S. v. Walker*, 2005 WL 1503888 (3rd Cir.(Pa.)), *3.

The Third Circuit noted that Mr. Walker raised the issue of a leadership role sentencing enhancement. This enhancement had been objected to at sentencing. The Third Circuit did not rule on this enhancement, since it was vacating Mr. Walker's sentence and remanding for resentencing.

This case is now before this Court for resentencing pursuant to the Third Circuit's opinion. It is respectfully suggested for the reasons set forth herein that a 481 month (40 years) sentence is appropriate in this case.

## Proposed Sentencing Guideline Calculation

Criminal History Category - Category II[1]
Offense Gravity Score:
    Group One - Counts 1, 5 & 6
        Quantity of narcotics involved - greater than 50 Grams
            of Cocaine Base[2] - U.S.S.G.2 § 2D1.1(c)(4) -        <u>32</u>

| | |
|---|---|
| Sentencing Guideline Range Counts 1, 5 & 6 | 135-168 months |
| Mandatory minimum sentence for Count 2 | 60 months (5 years)[3] |
| Mandatory minimum sentence for Count 3 | 300 months (25 years)[4] |
| Total possible sentence range | 495 - 528 months, or 41 years, 3 months to 44 years.[5] |

## Alternate Proposed Sentencing Guideline Calculation

Criminal History Category I
Offense Gravity Score:
    Group One - Counts 1, 5 & 6
        Quantity of narcotics involved - greater than 50 Grams
            of Cocaine Base - U.S.S.G.2 § 2D1.1(c)(4) -          <u>32</u>

| | |
|---|---|
| Sentencing Guideline Range Counts 1, 5 & 6 | 121-151 months |
| Mandatory minimum sentence for Count 2 | 60 months (5 years) |
| Mandatory minimum sentence for Count 3 | 300 months (25 years) |
| Total possible sentence range | 481 - 511 months, or 40 years to 42.6 years. |

---

[1] Calculated in Pre-Sentence Investigation Report (hereinafter "PSIR") dated 8/26/02.

[2] Verdict Form pages 2 & 3.

[3] Mandated under 18 U.S.C. § 924(c)(1)(A)(i).

[4] Mandated under 924 U.S.C. § 924(c)(1)(C)(i).

[5] Sentences for violations of 18 U.S.C. § 924(c)(1)(D)(ii) cannot run concurrently to any other sentences.

1.      **Walker should be assigned to Criminal History Category I.**

Mr. Walker's Criminal History Category was calculated to be a Category II based on a 1997 juvenile arrest and conviction. He was adjudicated Delinquent and sentenced to serve 6-18 months in custody in a limited secure residential facility.[6]

At his first sentencing, Mr. Walker objected to the use of this offense in determining his Criminal History Category. The Third Circuit affirmed this Court's inclusion of the 1997 juvenile conviction in determining Mr. Walker's Criminal History Category. Despite this, it is respectfully suggested that to use this enhancement would violate Mr. Walker's rights under the Fifth and Sixth Amendment.

The Supreme Court has held that use of a defendant's prior convictions used to impose an enhanced sentence does not implicate due process concerns. *Almendarez-Torres v. United States*, 523 U.S. 224 (1998). The continued viability of *Almendarez-Torres* itself, however, is suspect. "*Almendarez-Torres*, like *Taylor*, has been eroded by this Court's subsequent Sixth Amendment jurisprudence, and a majority of the Court now recognizes that *Almendarez-Torres* was wrongly decided. The parties do not request it here, but in an appropriate case, this Court should consider *Almendarez-Torres*' continuing viability. Innumerable criminal defendants have been unconstitutionally sentenced under the flawed rule of *Almendarez-Torres*, despite the fundamental 'imperative that the Court maintain absolute fidelity to the protections of the individual afforded by the notice, trial by jury, and beyond-a-reasonable-doubt requirements." *Shepard v. United States*, 125 S.Ct. 1254, 1264 (Thomas, J., concurring) (citations omitted).

Mr. Walker was never given notice through the Indictment that his prior juvenile conviction would serve as an enhancement to his sentence. The government never submitted any evidence that Mr. Walker's juvenile conviction was of the type that required a "sentence of imprisonment" as defined in U.S.S.G. § 4A1.2(b)(1). No evidence of his juvenile conviction was submitted to the jury, either. Nor was any documentation of this offense submitted to this Court as part of the sentencing process.

Arguably, under the Law of the Case doctrine, the question of Mr. Walker's Criminal History Category is settled. Given the questionable status of *Almendarez-Torres*, however, and to preserve the issue for appeal, Mr. Walker objects to the use of his juvenile conviction in determining his Criminal History category. Further, since the Sentencing Guidelines are only advisory, this Court has the discretion to not include the 1997 juvenile conviction, for which little documentation exists, in its sentencing determination.

Further, Mr. Walker directs this Court's attention to *United States v. Driskell*, 277 F.3d 150 (2nd Cir., Jan. 7, 2002). Mr. Walker contends that his 1997 juvenile conviction is improperly counted in determining his criminal history category. The *Driskell* court explained that under New York law,

---

[6]PSIR § 41

3

a person less than 16 years old is generally not held to be criminally responsible for his conduct under New York law. *Driskell*, 277 F.3d at 155. Under New York law, persons between seven and sixteen who commit acts that would be a crime if committed by an adult are not criminally responsible by reason of infancy and are known as juvenile delinquents. *Id.*, n.7. Driskell distinguishes between youthful offenders and juvenile delinquents. *Id.* Youthful offenders are placed in the custody of New York's Department of Correctional Services, just like convicted adults. Juvenile delinquents are placed in the custody of New York's Division for Youth. *Id.* Mr. Walker was not tried and convicted in an adult court for this 1997 juvenile conviction. The PSIR itself notes that Mr. Walker was "adjudicated delinquent:. As a matter of New York law, Mr. Walker was not criminally responsible for his 1997 offense. As such, it should not be counted against him in this proceeding.

### 2. Under *Booker*, the Offense Gravity Score should be a Level 32.

The quantity of crack cocaine to be used in determining Mr. Walker's sentence cannot exceed the jury's findings. The jury found that the quantity was greater than 50 grams. No upper quantity was found. The appropriate guideline level under U.S.S.G. § 2D1.1(c)(4) is a level 32. U.S.S.G. § 2D1.1 contains multiple offense levels based on drug quantities; and each level under *Booker* constitutes a separate crime. Any other guideline level than a level 32 would necessitate the use of judicial factfinding, a practice prohibited under *Booker*, and a violation of Mr. Walker's Fifth and Sixth Amendment rights.

#### A. Mr. Walker's Fifth and Sixth Amendment rights extend through sentencing.

The Sixth Amendment is violated when an enhanced sentence is imposed under the Guidelines based on the sentencing court's determination of facts neither found by a jury nor admitted by the defendant. *Booker*, 125 S.Ct. at 756. *Booker* reiterates the holding in *Apprendi v. New Jersey*, 530 U.S. 466 (2000). (Any fact other than a prior conviction necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict *must be admitted by the defendant or proved to a jury beyond a reasonable doubt.*)

A defendant is entitled to have a jury determine, beyond a reasonable doubt, his guilt of every element of the crime charged. *Apprendi*, 530 U.S. at 477. *Apprendi* was based on *Jones v. United States*, 526 U.S. 227 (2000). In *Jones*, the Supreme Court held that the federal carjacking statute, 18 U.S.C. § 2119, if construed as defining just one crime with three maximum penalties, instead of three distinct offenses, would violate the Due Process Clause of the Fifth Amendment because it did not require proof beyond a reasonable doubt of facts that increase the maximum sentence, and *the notice and jury trial guarantees* of the Sixth Amendment. *Id.* at 243, n.6 (emphasis added). The *Jones* Court said: "If a potential penalty might rise from 15 years to life on a nonjury determination, the jury's role would correspondingly shrink from the significance usually carried by determinations of guilt to the relative importance of low-level gatekeeping: in some cases, a jury finding of fact

necessary for a maximum 15-year sentence would merely open the door to a judicial finding sufficient for life imprisonment. It is therefore no trivial question to ask whether recognizing an unlimited legislative power to authorize determinations setting ultimate sentencing limits without a jury would invite erosion of the jury's function to a point against which a line must necessarily be drawn." *Id.*, at 243-244. To use judicial factfinding to determine a higher drug quantity would cross that line.

      B.      **Like the carjacking statute in *Jones*, the statutes in Counts 5 and 6, 21 U.S.C. §§ 846 and 841(a)(1), must be read as constituting multiple distinct offenses.**

The United States Sentencing Guidelines Manual provides multiple offense levels, based on drug type and quantity, for violations of 21 U.S.C. § 841. The possible offenses range from a beginning base offense level of 6, to a base offense level of 38. In this case, Walker was charged with possession with the intent to distribute and conspiring to distribute crack cocaine, among other controlled substances. The jury found that the quantity of crack cocaine was greater than 50 grams. There were no jury findings as to the quantities of the other drugs involved. The drug quantity, then, is capped at the jury's finding.

Justice Thomas put it well in his concurrence in *Apprendi*: " [A] 'crime' includes every fact that is by law a basis for imposing or increasing punishment (in contrast with a fact that mitigates punishment). Thus, if the legislature defines some core crime and then provides for increasing the punishment of that crime upon a finding of some aggravating fact--of whatever sort, including the fact of a prior conviction--the core crime and the aggravating fact together constitute an aggravated crime, just as much as grand larceny is an aggravated form of petit larceny. The aggravating fact is an element of the aggravated crime. Similarly, if the legislature, rather than creating grades of crimes, has provided for setting the punishment of a crime based on some fact--such as a fine that is proportional to the value of stolen goods--that fact is also an element." *Apprendi v. New Jersey*, 530 U.S. 466, 501 (Thomas, J., concurring). The fact, or element, in question here is drug quantity, something solely up to the jury, no one else.

      C.      ***Booker* established that the Fifth Amendment guarantee of due process and the Sixth Amendment guarantee of jury determination of the elements of an offense extend to sentencing.**

Constitutional due process and the associated jury protections extend to determinations that go not to guilt or innocence, but to the length of a defendant's sentence. *Apprendi*, 530 U.S. at 484. *Booker* clarified that this rubric applied to any factor affecting a defendant's sentence. Each such factor must be either proven to a jury or stipulated to by the defendant. This is simply what is fair. "We recognize, as we did in *Jones, Apprendi,* and *Blakely,* that in some cases jury factfinding may impair the most expedient and efficient sentencing of defendants. But the interest in fairness and reliability protected by the right to a jury trial--a common-law right that defendants enjoyed for

centuries and that is now enshrined in the Sixth Amendment--has always outweighed the interest in concluding trials swiftly" *Booker*, 128 S.Ct. at 755-756. To use any other quantity than that found by the jury in this case is a violation of Mr. Walker's Fifth Amendment right to due process and his Sixth Amendment right to a jury determination of his offense.

### D. The Miller decision does not control this matter.

It is recognized that in *United States v. Miller*, 417 F.3d 358 (3rd Cir., July 29, 2005), the Third Circuit held that "We merely note that the District Court is free to engage in precisely the same exercise in judicial fact finding as it did in February 2003, so long as such fact finding is consistent with *Booker*."[7] *Miller*, 417 F.3d at 363. It is respectfully submitted however, that *Miller* does not control in this case.

*Miller* involved the crimes of wire fraud and security fraud, 18 U.S.C. §§ 1343 and 1348 respectively. Neither of these two statutes is complex. Neither carries a mandatory minimum sentence, simply a maximum sentence. They only define one crime. Walker, on the other hand, was convicted at Count 6 of a violation of 21 U.S.C. § 841(a)(1). That statute is considerably more complex. Multiple offenses and punishments are defined in § 841, based on facts such as drug identity, drug quantity, whether or not death or serious bodily injury results, and the offender's criminal history. The related sentencing guideline, U.S.S.G. § 2D1.1 is equally complex and based on factual findings of drug quantity and identity. Multiple crimes, therefore, are defined at § 841. *Miller* cannot be said to provide any reliable guidance to a court sentencing for violations of controlled substances laws. To use any drug quantity other than that found by the jury in determining Walker's sentence will violate *Booker*.

### 3. A forty year sentence is appropriate in this case.

In the post-*Booker* world, the United States Sentencing Guidelines themselves are merely advisory, and not mandatory. *Booker*, 125 S.Ct. at 757. Courts, can, however, tailor a sentence in light of the statutory concerns set forth at 18 U.S.C. § 3553(a) (Supp. 2004). *Id.*

When determining a defendant's sentence, the Sentencing Court is to first consider the nature and circumstances of the offense and the history and characteristics of the defendant. 18 U.S.C. § 3553(a)(1). Then, the sentence is to be sufficient but no greater than necessary to satisfy the sentencing concerns set forth in 18 U.S.C. § 3553(a)(2). Those include the need for the sentence imposed to:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

---

[7]*United States v. Booker*, 125 S.Ct. 738 (2005)

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; *Id.*

A 40 year sentence will be more than adequate to meet the objectives of § 3553(a). It certainly reflects the seriousness of Mr. Walker's offense. A 40 year sentence will promote respect for the law amongst those contemplating its violation, and the loss of 40 years of freedom will certainly punish Mr. Walker for his offenses.

A 40 year sentence will serve as more than adequate deterrence to criminal conduct. By the time he is released, even with good time credited against his sentence, Mr. Walker will be well into his 50's, if not older. The public will be safe from future crimes by Mr. Walker for a very long time. Finally, it will provide the Bureau of Prisons with amply opportunity to provide Mr. Walker with whatever educational or vocational training, medical care, or other correctional treatment is needed.

4. **Other matters**

Mr. Walker has advised undersigned counsel that he wishes to raise at sentencing an issue concerning drug identity as it relates to sentencing, and an issue relating to the imposition of fines.

## Conclusion

Title 18, U.S.C. § 3553(a) calls for the imposition of a sentence that is sufficient, but no greater than necessary, to comply with the purposes set forth in § 3553(a)(2). A 40 year sentence will deprive Mr. Walker of his youth and his middle age. When released, he will be too old to be a danger to society. He will lose all of the blessings of a life that most of us take for granted - marriage, work, children, and the development of friends and interests. If he lives to serve his full term, he will come out to a world where he knows no one. His fate will serve as a warning to anyone who knows him now or will come to know him when he is finally freed. A longer sentence will not accomplish any more.

Respectfully submitted,

/s/ R. Damien Schorr
R. Damien Schorr
Pa. Id. No. 62928
1015 Irwin Drive
Pittsburgh, PA 15236
412-884-1597
Counsel for defendant
Ahmed Walker

Dated: October 25, 2005

## Certificate of Service

I, R. Damien Schorr, certify that on this 25th day of October, 2005, a true and correct copy of the within Resentencing Memorandum was served by United States Mail, First Class, postage prepaid, upon the following:

>AUSA Christy H. Fawcett
>Federal Building - 2nd Floor
>228 Walnut Street
>Harrisburg, PA 17108

*R. Damien Schorr*
R. Damien Schorr