**UNITED STATES DISTRICT COURT**

**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

FILED
HARRISBURG, PA

JUL 10 2008

MARY E. D'ANDREA, CLE
Per _____
Deputy Clerk

|  |  |  |
|---|---|---|
| | : | |
| UNITED STATES OF AMERICA, | : | Civil No. : _____ |
| Respondent, | : | |
| v. | : | Underlying case No.: |
| AHMED WALKER , | : | 1:CR-00-300 |
| Movant. | : | (Rambo, J.) |
| | : | |

---

MOVANT AHMED WALKER'S MEMORANDUM OF LAW WITH
ADDENDUM IN SUPPORT OF HIS MOTION UNDER §2255 TO
VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN
FEDERAL CUSTODY

---

Ahmed Walker
Reg. No. 10837-067
United States Penitentiary Allenwood
P.O. Box 3000
White Deer, PA  17887

Movant, *pro se*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,   :   Civil No.:_____

          Respondent,   :   Underlying Criminal No.:

       v.          :   1-CR-00-300

AHMED WALKER,        :   (Rambo, J.)

          Movant,  :

                :

## MOVANT'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255

Movant Ahmed Walker, proceeding *pro se* and *in forma pauperis*, submits this memorandum of law in support of his motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255.

This brief supports Movant's contentions that:

(I)    THE COURT COMMITTED LEGAL ERROR IN GIVING ITS JURY INSTRUCTIONS AND IN DOING SO, CONSTRUCTIVELY AMENDED COUNT 3 OF THE INDICTMENT

(II)   TRIAL COUNSEL WAS CONSTITUTIONALLY INEFFECTIVE FOR FAILING TO MOVE TO SUPPRESS ANY EVIDENCE RELATING TO THE SEARCH AND SEIZURE OF THE PREMISES KNOWN AS 315 NORTH 9TH ST., APT. 3 IN LEBANON, PENNSYLVANIA

(III)  ONE OF THE ALTERNATIVE THEORIES SUPPORTING MOVANT'S CONVICTION ON COUNT 4 IS EITHER UNCONSTITUTIONAL, OR LEGALLY INVALID

(IV)   COUNT 4 FAILED TO CHARGE MOVANT WITH ANY
       CODIFIED FEDERAL CRIME

(V)    COUNT 4 IS DUPLICITOUS. THIS VIOLATED MOVANT'S
       SIXTH AMENDMENT RIGHT TO A UNANIMOUS JURY
       VERDICT.

(VI)   THE TWO § 924(c)(1) COUNTS, COUNTS 3 & 4 ARE BASED ON
       A SINGLE "UNIT OF PROSECUTION", THEREFORE, THE
       MULTIPLE § 924(c)(1) CONVICTIONS ARE IMPROPER

(VII)  TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO
       REQUEST A CURATIVE INSTRUCTION AT THE TIME HIS
       SECOND MOTION FOR MISTRIAL WAS MADE AND DURING
       THE COURT'S CHARGE TO THE JURY. APPELLATE
       COUNSEL WAS INEFFECTIVE FOR NOT CLAIMING THAT
       THE TRIAL COURT ABUSED HER DISCRETION IN NEITHER
       GRANTING THE MOTIONS FOR MISTRIAL NOR GRANTING
       MOVANT'S MOTION FOR A NEW TRIAL

(VIII) TRIAL COUNSEL WAS INEFFECTIVE FOR REQUESTING
       TO STIPULATE TO THE ADMISSION OF TESTIMONY ABOUT TWO
       YEAR OLD JUSTINA PEREZ WHO WAS SHOT ON JULY 18, 2000,
       AND FOR FAILING TO REQUEST A LIMITING INSTRUCTION.
       APPELLATE COUNSEL WAS INEFFECTIVE FOR NOT APPEALING
       THAT THE COURT ABUSED HER DISCRETION IN ALLOWING SAID
       TESTIMONY AND IN NOT ADMINISTERING AN APPROPRIATE
       LIMITING INSTRUCTION

(IX)   TRIAL COUNSEL WAS INEFFECTIVE BY FAILING TO
       INVESTIGATE AND PRESENT WITNESSES FAVORABLE TO
       MOVANT'S DEFENSE

(X)    APPELLATE COUNSEL WAS INEFFECTIVE FOR NOT
       CONTENDING ON APPEAL THAT THE DISTRICT COURT
       ABUSED HER DISCRETION IN COUNTING MOVANT'S
       DELINQUINCY ADJUDICATION IN HIS CRIMINAL HISTORY
       CALCULATION

2

(XI)   TRIAL COUNSEL WAS INEFFECTIVE AT SENTENCING
       BECAUSE THE COURT WAS NOT MADE AWARE OF
       MOVANT'S MENTAL HEALTH PROBLEMS

(XII)  TRIAL COUNSEL WAS INEFFECTIVE FOR SUGGESTING A
       DEFENSE THAT WAS NOT LEGALLY VIABLE

(XIII) TRIAL COUNSEL WAS INEFFECTIVE FOR NOT SUBMITTING,
       UNDER Fed. R. Crim. P. 29 and 33, THAT THE EVIDENCE **WAS**
       INSUFFICIENT TO SUPPORT A FINDING OF GUILT ON
       COUNTS 3, 4, AND 6 ON THE GOVERNMENT'S THEORY OF
       AIDING AND ABETTING.  APPELLATE COUNSEL WAS
       INEFFECTIVE FOR NOT CHALLENGING THE DISTRICT
       COURT'S DISCRETION ON GIVING AN AIDING AND
       ABETTING INSTRUCTION

(XIV)  COUNSEL'S CUMULATIVE ERRORS VIOLATED MOVANT'S
       FIFTH AMENDMENT DUE PROCESS RIGHT AND SIXTH
       AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF
       COUNSEL

Accordingly, Movant's convictions and sentences must be vacated.
Disputed material facts, if any, and material facts outside the record, can
only be properly resolved through a hearing.

### JURISDICTION

The District Court has jurisdiction under 29 U.S.C. § 2255.

### STATEMENT OF THE CASE

History of the Case

On May 16, 2001, the grand jury issued a seven-count superseding
indictment charging Movant Ahmed Walker, Christopher Ames, and Eric
Sanchez.  Movant was charged in Count 1 with conspiracy to possess,
brandish, and discharge firearms in furtherance of drug trafficking in
violation of 18 U.S.C. § 924 (c) and (o); in Count 2 with possessing,

3

brandishing and discharging a firearm in furtherance of drug trafficking on March 13, 2000, in violation of 18 U.S.C. § 924 (c); in Count 3 with possession of firearms in furtherance of drug trafficking on July 12, 2000, in violation of 18 U.S.C. § 924 (c); in Count 4 with possessing, brandishing and discharging firearms in furtherance of drug trafficking between July 18, 2000, and July 21, 2000, in violation of 18 U.S.C. § 924 (c); in Count 5 with criminal conspiracy to distribute and possess with intent to distribute 50 grams and more of cocaine base and a quantity of cocaine hydrochloride, marijuana, and heroin, in violation of 21 U.S.C. § 846; and in Count 6 with distribution and possession with intent to distribute 50 grams and more of cocaine base and a quantity of cocaine hydrochloride, heroin , and marijuana, in violation of 21 U.S.C. § 841 (a).

On August 8, 2001, a seven-count Second Superseding Indictment was filed. The Second Superseding Indictment added Angel Sanchez as a co-defendant in several counts and 18 U.S.C. § 2 in counts 3, 4, and 6. Movant remained charged in counts one through six. Movant entered pleas of not guilty to each of these charging documents.

On January 14, 2002, a jury was selected to hear the case, and jurors were ordered to report for the commencement of trial in February 2002.

At the commencement of trial on February 20, 2002, District Court Judge Sylvia H. Rambo ("district court") granted the government's motion to dismiss Count 2 of the indictment.

On February 25, 2002, the three co-defendants pleaded guilty and trial continued as to Movant.

On February 28, 2002, the jury returned a verdict finding Movant guilty on all counts. Later, Movant filed a motion for arrest of judgment and

a motion for a new trial. The district court filed memorandum and order denying Movant's motions on December 10, 2002.

On February 13, 2003, the district court sentenced Movant to an aggregate term of imprisonment of 681 months. The term consisted of 240 months on his conviction for conspiracy to possess, brandish, and discharge firearms in furtherance of drug trafficking (Count 1); 321 months on both his conviction for criminal conspiracy to distribute and possess with intent to distribute 50 grams and more of crack cocaine and a quantity of cocaine hydrochloride, heroin, and marijuana, and the underlying substantive offense (Counts 5 and 6); 60 months on his conviction for possession of firearms in furtherance of drug trafficking on July 12, 2000 (Count 3); and 300 months on his conviction for possessing, brandishing and discharging firearms in furtherance of drug trafficking between July 18, 2000, and July 21, 2000 (Count 4). The sentencing on Counts 5 and 6 were ordered to be served concurrently; all other sentences were ordered to be served consecutively.

A timely Notice of Appeal was filed and on June 27, 2005, this Court filed an opinion affirming Movant's conviction in part, vacating it in part, and remanding the case to the District Court for re-sentencing consistent with *United States v. Booker*, 543 U.S. 220 (2005). *See United States v. Walker*, 136 Fed.Appx. 524, 525 (3rd Cir. 2005).

Following a re-sentencing hearing held before the District Court on October 28, 2005, the District Court reduced Movant's aggregate term of imprisonment from 681 months to 622 months.

Movant filed a timely notice of appeal. On December 15, 2006, the Third Circuit affirmed the judgment of the District Court. Subsequently, Movant timely filed a petition for a writ of certiorari with the U.S. Supreme

Court. The petition for a writ of certiorari was denied on June 18, 2007.
This post conviction motion under 28 U.S.C. §2255 follows.

Facts of the case

 This Court as well as the Third Circuit and Respondent are fully
apprised of the factual background of this case. *See Walker*, 136 Fed. Appx.
524, 525 (3rd Cir. 2005) (Factual Background and Procedural History). With
that understanding and for the sake of brevity, Movant submits a brief
conspectus of the case.

 The underlying events of this case involved a July 18, 2000, gunfight
in Lebanon, Pennsylvania, and other events over the course of July 2000.
Respondent, the government, alleged that the gunfight arose from disputes
among those trafficking in drugs. Movant was indicted for the crimes
described above. *Id.*


# ARGUMENT


## I. THE COURT COMMITTED LEGAL ERROR IN GIVING ITS JURY INSTRUCTIONS AND IN DOING SO, CONSTRUCTIVELY AMENDED COUNT 3 OF THE INDICTMENT

In the matter at bar, the Grand Jury, in a second superseding
indictment, charged Movant, *inter alia*, with Count 3; to wit possession of a
firearm in furtherance of drug trafficking; and Count 4; to wit: possessing,
using, carrying, brandishing, and discharging a firearm in furtherance of
drug trafficking and during and in relation to drug trafficking. The petit jury
was not given access to the second superseding indictment. Instead, the jury

relied solely on the court's jury instructions as to what constituted counts 3 and 4.

On February 26, 2002, day 5 of the trial, Judge Rambo instructed the jury. As to counts 3 and 4, Judge Rambo charged as follows:

Now Count 3 of the second superseding indictment charges Ahmed Walker (movant) with carrying <u>or</u> using a firearm during and in relation to a drug trafficking crime <u>or</u> possessing a firearm in the furtherance of drug trafficking on July 12, 2000. *See* trial transcript ("TT.") at p. 1156.

*       *       *

Count 4 of the indictment charges Ahmed Walker with the same offense (as Count 3 only) on another occasion….. In each of "<u>these</u> counts," (Movant) is charged with either committing the offense himself or aiding and abetting another in committing the offense. TT. at p. 1157 (emphasis added).

*       *       *

With respect to the (movant), you may find him guilty if you find the government has proven beyond a reasonable doubt that he either <u>carried or used</u> a firearm during and in relation to a drug trafficking offense <u>or</u> that he <u>possessed</u> a firearm in furtherance of a drug trafficking offense. *Id.*

*       *       *

Now there are two legal theories under which (Movant), either as a principal or as an aider and abettor, can be found guilty… TT. at p. 1158.

*       *       *

The first is that (Movant) carried or used a firearm during and in relation to a drug trafficking offense. *Id.*

*       *       *

7

The second theory under which (Movant) may be found guilty of the offense charged in Counts 3 and 4 of the indictment is the theory that (Movant) possessed a firearm in furtherance of drug trafficking. TT. at p. 1160.

An indictment is constructively amended when the district court's jury instructions effectively "amend(s) the indictment by broadening the possible bases for conviction from that which appeared in the indictment." *United States v. Lee*, 359 F.3d 194, 208 (3rd Cir. 2004). The Third Circuit has held that a constructive amendment is an exceptional category of error because it violates a basic right of criminal defendants, the grand jury guarantee of the Fifth Amendment. *United States v. Syme,* 276 F.3d 131, 154 (3rd Cir. 2002) (applying *United States v. Adams,* 252 F. 3d 276 (3rd Cir. 2001). "A constructive amendment to the indictment constitutes 'a *per se* violation of the Fifth Amendment's grand jury clause'." *Id.* at 148 (quoting *United States v. Castro* 776 F.2d 1118, 1121-22 (3rd Cir. 1985). A constructive amendment of the charges against a defendant deprives the defendant of his/her "substantial right to be tried only on charges presented in an indictment returned by a grand jury." *United States v. Syme,* 276 F.3d 131, 149 (3rd Cir. 2002)(citation omitted). Thus, where a trial court constructively amends by a jury instruction, the Third Circuit's plain error analysis presumes prejudice. *Id.*

Here, the jury instructions informed the jury that Movant could be convicted on the basis of conduct that was not charged in the indictment, of which he had no notice. The trial court not only misrepresented Count 3 altogether, but gave specific instructions that Movant could be found guilty of the misrepresentation, *i.e.* that Movant could be found guilty of Count 3, possession …, if you find Movant carried or used a firearm during and in

relation to a drug trafficking offense. TT. at pp 1156-1160. Movant cannot be convicted on the bases of an alternative theory containing elements that are included in jury instructions, but not charged in the indictment. *Syme, supra.* This allowed the jury to convict Movant for uncharged conduct. Accordingly, the court's instructions improperly amended the indictment. *See, e.g., United States v. Thomas,* 274 F. 3d 655, 670 (2nd Cir. 2001)(constructive amendment occurs when the terms of the indictment are effectively modified by the court's actions such that "there is a substantial likelihood that the defendant may have been convicted of an offense other than that charged in the indictment").[1]

As stated earlier, in conjunction with constructively amending Count 3, one of the two alternative theories supporting the conviction on Count 3 was legally or constitutionally invalid, to wit: "The first (legal theory) is that (Movant) carried or used a firearm during and in relation to a drug trafficking offense." TT. at p. 1158. The Court cannot discount that the jury did not unanimously agree on this alternative theory in finding Movant guilty on Count 3. *See Griffin v. United States,* 502 U.S. 46, 60 (1991) (citing from *United States v. Williams,* 344 F.3d 365, 376-77 n. 6 (3rd Cir. 2003). Under *Griffin,* if one of two or more alternative theories supporting a count of conviction is either (1) unconstitutional, or (2) legally invalid,[2] then the reviewing court should vacate the jury verdict and remand for a new trial

---

[1]     Because the error affected the charging terms of the indictment, it is a constructive amendment, not a variance. *See United States v. Castro,* 776 F.2d 1118, 1121-22 § n.1 (3rd Cir. 1985) (distinguishing constructive amendments form variances).

[2]     The Court in *Griffin* explained the distinction in treatment between insufficient evidence and legal error by stating: Jurors are not generally equipped to determine whether a particular theory of conviction submitted to them is contrary to law...When, therefore, jurors have been left the option of relying upon a legally inadequate theory, there is no reason to think that their own intelligence and expertise will save them from that error...502 U.S. at 59.

without the invalid or unconstitutional theory. *See United States v. Syme*, 276 F. 3d 131, 144 (3rd Cir. 2002) (citations omitted).

Consequently, the Court should vacate the jury verdict on Count 3.

### Trial and Appellate Counsel were ineffective in failing to object to the jury instructions and then to raise the issue on appeal.

To prove that his counsel were ineffective, Movant must show that his attorney's performance was deficient and that he suffered prejudice from this deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Counsel have a duty to research the facts and law. Surely counsel was aware of Movant's charges, yet failed to object to the jury charge on Count 3 as described earlier in this brief. Counsel should have instantly realized that the court, during its charge to the jury, constructively amended Movant's indictment on Count 3. Solid, meritorious arguments based on directly controlling precedent should be discovered and timely brought to the Court's attention. Movant's Counsel failed to meet this standard in that they failed to recognize and argue that in Count 3, Movant was not charged with carrying or using a firearm during and in relation to a drug trafficking crime. TT. at p. 1156.

In *Syme*, the Third Circuit recognized the difficulty of a defendant proving actual prejudice in the matter at bar. 276 F.3d at 154. As the Third Circuit explained, it is nearly impossible for a defendant to demonstrate that his/her conviction was based on a particular theory. *Id.* Similarly, there is no way to determine whether the jury (unanimously) convicted Movant on the first or second legal theories. *See id.* Therefore, it cannot be demonstrated that Movant was not prejudiced.

Trial and appellate Counsel's performance fell below an objective standard of reasonableness. Counsel's deficient performance prejudiced Movant, resulting in an unreliable or fundamentally unfair outcome in the proceeding.

Movant is entitled to have his conviction and sentence on Count 3 vacated.

## II.    TRIAL COUNSEL WAS CONSTITUTIONALLY INEFFECTIVE FOR FAILING TO MOVE TO SUPPRESS ANY EVIDENCE RELATING TO THE SEARCH AND SEIZURE OF THE PREMISES KNOWN AS 315 NORTH 9TH ST., APT. 3 IN LEBANON, PENNSYLVANIA

The Supreme Court explicitly has extended the right to federal habeas review of Sixth Amendment claims to instances in which the alleged ineffective representation necessarily implicates a Fourth Amendment claim. *See Kimmelman v. Morrison*, 477 U.S. 365, 382-83 (1986).

Failure to file a suppression motion can amount to ineffective assistance of counsel. *Id.* At 365, 385. But the defendant "must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice." *Id.* At 375 (affirming finding of ineffectiveness).

In *Strickland v. Washington,* the Supreme Court established a two-prong test to evaluate ineffective assistance claims, 466 U.S. 668, 687 (1984). To obtain reversal of a conviction under the *Strickland* standard, the defendant must prove that counsel's performance fell below an objective standard of reasonableness, *Id.* At 687-88, and that counsel's deficient performance prejudiced the defendant, resulting in an unreliable or fundamentally unfair outcome in the proceeding. *Id.* at 687. A defendant's

failure to satisfy one prong of the *Strickland* test negates a court's need to consider the other. *Werts v. Vaughn*, 228 F.3d 178, 206 (3rd Cir. 2000) (court did not address prejudice prong because counsel's pretrial investigations and decisions were reasonable).

On January 23, 2002, Counsel filed motions to (1) suppress the oral statements made by Movant at the Good Samaritan Hospital on July 21, 2000, and (2) suppress any evidence regarding the search at 315 North Ninth Street, Apartment Three, Lebanon, Pennsylvania. On January 24, 2002, the Court denied Movant's motion to suppress any evidence at 315 North Ninth Street, Apartment Three, Lebanon, Pennsylvania.

On February 7, 2002, the Court granted Movant's motion to suppress the oral statements made by him at the Good Samaritan Hospital on July 21, 2000.[3] Doc's 239 & 240. The Court concluded that "(b)ecause (Movant) invoked his right to have counsel present during interrogation, and Lieutenant Kauffman re-initiated interrogation after the assertion of the right, the subsequent statements were elicited in violation of the Fifth Amendment of the United States Constitution." *Id.* at 10.

Unfortunately for Movant, his suppressed statements were used anyway, in an affidavit of probable cause to secure a search warrant and authorization to search the premises known as 315 North 9th Street,

---

[3]    In response to questions asked by Lebanon City Police Department Lieutenant Daniel Kauffman about the specifics of the July 21, 2000, shooting, Movant nodded his head in affirmation that he knew certain persons, including an individual known as "Boom" and Defendant Angel Sanchez. Moreover, Movant indicated that he had been at the Lebanon Village Apartments on July 18, 2000 -- the night of the first shooting. Doc. 239 at 4. He also indicated that he was with Defendant Angel Sanchez that night. *Id* However, he denied involvement in July 18, 2000 shooting and clarified that if he had wounded the victim of that shooting, he would have admitted responsibility. *Id.* Lieutenant Kauffman never read Movant his rights or obtained a written waiver of those rights. *Id.*

Apartment 3 in Lebanon, Pennsylvania. Movant's name was identified on the warrant as name of owner, occupant or possessor of said premises to be searched. *See* Exhibit A, Application for Search Warrant and Authorization.

Following the successful suppression of Movant's oral statements, counsel <u>never</u> followed up with another motion to suppress any evidence regarding the search at 315 North Ninth Street. The suppression motion, had it been filed, would have shown that the affidavit of probable cause to secure the search warrant relied heavily on the suppressed oral statements made by Movant on July 21, 2000. *See* Exhibit B, Memorandum dated March 14, 2001, denying codefendant Christopher Ames' motion to suppress any evidence relating to the search and seizure of the premises known as 315 North 9th Street, Apartment 3 in Lebanon, Pennsylvania.

Exhibit B reveals that during the Apartment search, the police found crack cocaine in a pair of blue jeans lying on the floor near where Mr. Ames was standing when the police entered as well as additional quantities of crack cocaine located in other areas. *Id.* at p. 3. Mr. Ames was subsequently arrested and charged with possessing with intent to deliver the crack cocaine found in the apartment on July 21, 2000. *Id.* To establish probable cause for the search warrant, the government relied heavily on Movant's admissions to Lt. Kauffman, *i.e.* Movant's presence at Lebanon Village during the shooting and his arrest that followed. *Id.* at pp. 6, 8-9. Relying on Movant's responses to questions asked by Lt. Kauffman, the Court found that the affidavit was sufficient to support probable cause and that the police acted in good faith in relying on the search warrant. *Id.*

In *Wong Sun v. United States*, 371 U.S. 471 (1963), it was held that a trial court erred in admitting as accused's statements to the police and also a quantity of drugs (heroin) that was seized from a third party on the basis of

13

the accused statements, where these items of evidence had been obtained following the unconstitutional arrest of the accused, and where the taint of the arrest had not been purged. The Supreme Court said that the heroin should not have been used as evidence against the accused, since such evidence had been come at by the exploitation of the officer's illegal contact, and since the connection between that conduct and the discovery of the evidence had not become so attenuated as to dissipate the taint of the illegality. *See also Brown v. Illinois,* 422 U.S. 590 (1975) (The absence of other police misconduct) was not enough to attenuate the connection between the police misconduct and the incrimination evidence obtained from the accused during his detention, and thus such evidence was properly suppressed).

In the case *sub judice,* without Movant's admissions, there was no probable cause to search his residence. Consequently, any search and seizure was unreasonable and in violation of the Federal Constitution's Fourth Amendment.

Exhibits A & B were a matter of record long before Movant's trial started. Where trial counsel fails to make a motion to suppress because he neglected "to make a reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary", then ineffective representation is shown. *Kimmelman,* 477 U.S. at 385; *Strickland,* 466 U.S. at 691. Movant's trial counsel should have investigated the record and discovered that the search warrant's affidavit of probable cause was premised primarily on Movant's admissions to Lt. Kauffman; admissions that were subsequently suppressed by the Court. Without Movant's admissions, the affidavit was sorely lacking in many respects. *See* Exhibit B at p.9. When this ineffective representation is combined with the equally

14

disturbing fact that trial counsel failed to preserve for appeal any of the claims made here, trial counsel's representation was, indeed, constitutionally ineffective.

Aside from the crack seized from the apartment and used as an evidentiary exhibit in the government's case in chief against Movant, there was no additional evidence of crack <u>sufficient</u> to convict Movant on Counts 5 & 6.[4]

Counsel's deficient performance prejudiced Movant which resulted in an unreliable or fundamentally unfair trial or its verdict, *i.e.* Movant was convicted on Counts 5 & 6.

Accordingly, the convictions and sentences on Counts 5 & 6 should be vacated.

### III. ONE OF THE ALTERNATIVE THEORIES SUPPORTING MOVANT'S CONVICTION ON COUNT 4 IS EITHER UNCONSTITUTIONAL OR LEGALLY INVALID

Count 4 charged Movant with possessing, using, carrying, brandishing, and discharging a firearm in furtherance of drug trafficking and during and in relation to drug trafficking. According to the verdict form, the jury unanimously agreed that Movant was guilty of possession, use, carry, brandishing the firearm that he possessed, used or carried, discharging the firearm he possessed, used or carried.

In retrospect, as to Count 4, the court charged the jury as follows:

---

[4]      Count 5 – criminal conspiracy to distribute and possess with intent to distribute controlled substances; to wit: 50 grams of crack; and Count 6 – distribution and possession with intent to distribute controlled substances; to wit:  50 grams of crack.

Use of a firearm includes... <u>bartering</u> the firearm during and in relation to the commission of a crime. TT. at p. 1160 (emphasis added).[5]

*          *          *

Now there are two legal theories under which (movant), either as a principal or as an aider and abettor, can be found guilty....
TT. at p. 1158.

*          *          *

The first is that (Movant) carried <u>or</u> used a firearm during and in relation to a drug trafficking offense. *Id.* (emphasis added).

*          *          *

The second theory under which (Movant) may be found guilty of the offense charged in Counts 3 and 4 of the indictment is the theory that (Movant) possessed a firearm in furtherance of drug trafficking.
TT. at p. 1160.

At this stage, it is impossible to discern which legal theory the jury unanimously agreed on. However, adding insult to injury, one of the two theories submitted to the jury was legally insufficient due to a subsequent Supreme Court decision interpreting the statute, 18 U.S.C. § 924 (c)(1)(A).

On December 10, 2007, the United States Supreme Court held a person does not "use" a firearm under 18 U.S.C. § 924 (c)(1)(A) when he receives it in trade for drugs. *Watson v. United States,* No. 06-571 (United States Supreme Court, December 10, 2007). In *Watson,* the government fruitlessly urged the Supreme Court to import "use" as "receipt in barter"

---

[5] "Bartering" referred to the alleged straw purchase of firearms for these defendants by Dennis Rittle on July 12, 2000 in exchange for drugs. TT. at p. 1156.

into § 924 (c)(1)(A). To that end, the Court provided the government no succor.

Multiple-theory guilty verdicts "based on evidentiary deficiencies must be treated differently than those based on legal deficiencies." *United States v. Garcia,* 992 F.2d 409, 416 (2nd Cir. 1993). Where a conviction may have rested on a ground determined to be unconstitutional, it must be reversed. *See Stromberg v. California,* 283 U.S. 359, 368 (1931). The same is true where one of the possible bases of a guilty verdict is shown to be statutorily defective and "it is impossible to tell which ground the jury selected." *See Yates v. United States,* 354 U.S. 298 (1957) (one object of conspiracy barred by statute of limitations). The idea that animates *Stromberg* and *Yates* is: where "jurors have been left the option of relying upon a legally inadequate theory, there is no reason to think that their own intelligence and expertise will save them from that error." *Griffin v. United States,* 502 U.S. 46 59 (1991). *See also Garcia,* 992 F. 2d at 416 (Court has reversed convictions under the same statute where instruction on two of the three theories submitted to the jury were legally insufficient due to a subsequent Supreme Court decision interpreting the statute.)

One of the two alternative theories supporting Movant's conviction on Count 4 was legally or constitutionally invalid; to wit: "The first (legal theory) is that (Movant) carried or used a firearm during and in relation to a drug trafficking offense." TT. at p. 1158 (emphasis added). The Court cannot discount that the jury did not unanimously agree on this "either/or" alternative theory in finding Movant guilty on Count 4. *See Griffin v. United States,* 502 U.S. 46, 60 (1991)(citing from *United States v. Williams,* 344 F. 3d 365, 376-77 n.6 (3rd Cir. 2003). Under *Griffin,* if one of two or more

alternative theories supporting a count of conviction is either (1) unconstitutional, or (2) legally invalid, then the reviewing court should vacate the jury verdict and remand for a new trial without the invalid or unconstitutional theory. *See United States v. Syme,* 276 F.3d 131, 144 (3rd Cir. 2002) (citations omitted).

Consequently, the Court should vacate the jury verdict on Count 4.

### The Supreme Court's holding in *Watson V. United States,* No. 06-571 was unavailable to Movant's trial and appellate counsel

Courts usually will not entertain a § 2255 motion if the Movant did not raise the claim at trial, or on direct appeal. *See United States v. Frady,* 456 U.S. 152, 162-66 (1982). In order to obtain § 2255 relief despite such procedural default, Movant must show both cause for his failure to assert the claim in earlier proceedings and actual prejudice from the alleged error. *See Frady,* 456 U.S. at 170-71.

Prior to *Watson,* Third Circuit case law wholly embraced "use of a firearm includes bartering the firearm; purchase of firearms in exchange for drugs." The Supreme Court, in *Watson,* recently recognized this not to be true. And instead, interpreted 18 U.S.C. § 924 (c)(1)(A) to mean a person does <u>not</u> use a firearm when he receives it in trade for drugs.

Though the issue was not previously raised by Movant in any prior proceedings, the novelty of the issue constitutes "cause" for procedural default. *Reed v. Ross,* 468 U.S. 1 (1981). A claim is novel when "...its legal basis is not reasonably available to counsel." *Id.* at 16. The legal basis

for this issue was sufficiently unavailable to Movant's attorney before the *Watson* case as it was not the subject of any prior federal court decision. *See* the reasoning in *United States v. Gardner,* 417 F.Supp. 2d 703, 707 (D. Md. 2006).

To establish prejudice, Movant must show "not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions. *See Frady,* 456 U.S. at 170.

In *United States v. Syme, supra,* the Third Circuit recognized the difficulty of a defendant proving actual prejudice in the matter at bar. 276 F.3d at 154. As the Third Circuit explained, it is nearly impossible for a defendant to demonstrate that his/her conviction was based on a particular theory. *Id.* Similarly, there is no way to determine whether the jury (unanimously) convicted Movant on the first or second legal theory. *See id.* Therefore, it cannot be demonstrated that Movant was not prejudiced.

Movant is entitled to have his conviction and sentence vacated on Count 4.[6]

## IV.  COUNT 4 FAILED TO CHARGE MOVANT WITH ANY CODIFIED FEDERAL CRIME

---

[6]    Assuming *arguendo* the government contends that the Supreme Court's holding in *Watson* was available to trial counsel and that "cause" has not been established, Movant timely asserts that his trial and appellate counsel were constitutionally ineffective. Movant further reserves the right to supplement his § 2255 motion with a memorandum of law briefing ineffective assistance of counsel.

The Sixth, Tenth, and Eleventh Circuit Courts of Appeals treat 18 U.S.C. § 924 (c) as setting forth two separate and distinct offenses.[7]  The Third Circuit appears to have not addressed this issue.

Count 4 charged Movant with possessing, using, carrying, brandishing and discharging firearms in furtherance of and during and in relation to drug trafficking crimes …. (underscore added).[8]

Just as *Combs* dissected § 924 ( c ), Movant adopts the analyses in *Combs* and likewise submits as follows:

> …(A)ny person who, **during and in relation** to any crime of violence or drug trafficking crime…for which the person may be prosecuted in a court of the United States, **uses or carries** a firearm, ("use" offense)
>
> or
>
> who, **in furtherance** of any such crime, **possesses** a firearm, shall, in addition to the punishment for such crime of violence or drug trafficking crime (receive an additional penalty). ("possession" offense)

---

[7] *See United States v. Combs,* 369 F.3d 925 (6th Cir. 2004);*United States v. Lott,* 310 F.3d 1231 (10th Cir. 2002) and *United States v. Timmons,* 283 F. 3d 1246 (11th Cir. 2002). Movant incorporates the reasoning in his arguments from grounds I and III *supra* as if the same were set forth herein.

[8]    Had the government framed Count 4 to read "(Movant) did possess firearms in furtherance of drug trafficking crimes and did use, carry, brandish and discharge firearms during and in relation to drug trafficking crimes, " then at least the government would have charged Movant with federal crimes, albeit two separate and distinct federal crimes. The government admits as much by the way they separated "use" and "possession" when they framed Count 3, (possession offense).

18 U.S.C. § 924 (c) (emphasis added) (cited from *United States v. Combs*, 369 F. 3d at 930).

The Statutory text, legislative history, and requisite proof argue for the Movant's perspective that 18 U.S.C. § 924(c) criminalizes two separate offenses – (1) using or carrying a firearm during and in relation to a drug trafficking crime, and (2) possessing a firearm in furtherance of a drug trafficking crime. *Combs*, pp. 931-933.

Analogous to *Combs*, in the matter at bar, both the government and the district court confused the elements of the two offenses criminalized by 18 U.S.C. § 924 (c) throughout Movant's proceedings. Admittedly, any attempt to unwind the mismatched elements of the statutory prongs in the indictment, the jury instructions (or lack thereof) and the conviction, exposes the hopelessly "jumbled mess" that resulted. *See United States v. Pleasant*, 125 F.Supp.2d 173, 183 (E.D. Va. 2000).

## COUNT 4 – SUFFICIENCY OF THE INDICTMENT

Movant's indictment on Count 4 charged him with "possess(ing) … firearms … during and in relation to" drug trafficking crimes – utilizing one element from each of the two distinct § 924(c) offenses. Indicting Movant based on the conduct from the § 924(c) "possession" offense in conjunction[9] with the standard of participation (during and in relation) from the other "use" offense results in a failure to charge Movant with any codified federal crime. Indistinguishable from *Combs*, the court's jury instructions for Count

---

[9]    "And", "or" are conjunctions. "And" was used in Movant's indictment to connect "possession" to "during and in relation".

4 tracked the indictment error, likewise intermixing elements of the two different crimes.

The court's jury instructions, moreover, omitted and did <u>not</u> define the element "during and in relation to" standard of participation.[10]

Because Movant's indictment on Count 4 cannot be reasonably construed to have charged him with a crime under federal law, his conviction on Count 4 should be vacated and the indictment dismissed for failure to charge an offense.

Trial and appellate counsel's deficient performance in this matter was tragically unreasonable which prejudiced Movant – caused him to be convicted on a charge not codified as a federal crime.

## V.    COUNT 4 IS DUPLICITOUS.  THIS VIOLATED MOVANT'S SIXTH AMENDMENT RIGHT TO A UNANIMOUS JURY VERDICT

Assuming *arguendo* Count 4 charged Movant with a codified federal crime, then, the government charged Movant with separate and distinct crimes which leaves uncertainty as to whether Movant's conviction on the score, was based on a unanimous jury decision.

Count 4 charged Movant with possessing, using, carrying, brandishing, and discharging a firearm in furtherance of drug trafficking and during and in relation to drug trafficking.

---

[10]    Had an instruction been given, it would have said, "the 'during and in relation to' element requires that the firearm furthered the purpose or effect of the crime and its presence or involvement was not the result of coincidence." *Smith v. United States,* 508 U.S. 223, 238 (1993).

Duplicity is the joining in a single count of two or more distinct and separate offenses." *United States v. Starks,* 515 F.2d 112, 116 (3rd Cir. 1975). It is charging more than one crime in a single count. *United States v. Morse,* 785 F.2d 771, 774 (9th Cir.), *cert. denied,* 476 U.S. 1186 (1986). In the matter at bar, Count 4 – possession of a firearm under 18 U.S.C. § 924 (c) combined with use and carrying of firearms under 18 U.S.C. § 924 (c) – is duplicitous because it charges two separate and distinct crimes. *See United States v. Savoires,* 430 F.3d 376, 377 (6th Cir. 2005). The danger posed by duplicity is the inescapable possibility of a no unanimous jury verdict in contravention of the sixth amendment. Trial counsel did not object to Count 4 on the ground of duplicity. Appellate counsel, moreover, did not follow up on appeal. When the dust settles, there remains uncertainty as to whether Movant's conviction on Count 4 was unanimous either as to "possession" offense, or "use" offense. There remains no way to determine whether the jury unanimously convicted Movant on the possession offense or the use offense; the former requiring a higher standard of participation than the latter. *See United States v. Combs,* 369 F 3d 925, 933 (6th Cir. 2004). Therefore, it cannot be demonstrated that Movant was not prejudiced.

Accordingly, Movant is entitled to have his conviction and sentence on Count 4 vacated.

## VI. THE TWO § 924(C)(1) COUNTS, COUNTS 3 & 4, ARE BASED ON A SINGLE "UNIT OF PROSECUTION" THEREFORE THE MULTIPLE § 924 (C)(1) CONVICTIONS ARE IMPROPER

The Double Jeopardy Clause of the Fifth Amendment states that no person shall "be subject for the same offense to be twice put in jeopardy of

life or limb." United States Constitution Amendment V. "The Double Jeopardy Clause protects, among other things, against multiple punishments for the same offense." *North Carolina v. Pearce,* 395 U.S. 711, 717 (1969).

In the matter at bar, Movant's sentences, for his convictions under Counts 3 and 4, violated the Double Jeopardy Clause because he received multiple sentences based upon the same criminal conduct. On Count 3, he received a sentence of 5 years' incarceration. On Count 4, he received a sentence of 25 years' incarceration. These sentences were "multiple punishments" because they were imposed to run consecutively to each other. Accordingly, for the reasons set forth herein, one of these multiplicities sentences must be vacated.

The indictment, on its face, charged Movant *inter alia* with Count 1 conspiracy to possess, use, carry, brandish, and discharge firearms in furtherance of drug trafficking (the drug conspiracy charged in Count 5) in violation of 18 U.S.C § 924 (o); Count 3 charged that Movant violated the firearm possession statute in relation to a drug trafficking crime (the drug conspiracy charged in Count 5) and in doing so, violated 18 U.S.C. § 924 (c)(1). Finally, Count 4 charged Movant with possessing, using, carrying, brandishing, and discharging a firearm in relation to a drug trafficking crime (the drug conspiracy charged in Count 5), again in violation of 18 U.S.C. § 924 (c)(1). In short, Counts 3 and 4 charged violations of § 924 (c)(1) in connection with Count 5.

The drug trafficking crime referred to in Count 3 and as charged in Count 5, alleged a violation of 21 U.S.C. § 846. That statute provided in part that "it shall be unlawful for any person knowingly or intentionally" to

conspire to manufacture, distribute, ... with the intent to manufacture ... 50 grams or more of cocaine base ...." 21 U.S.C. § 846.

The drug trafficking crime referred to in Count 4, was also Count 5.[11]

At the conclusion of the trial, during its charge to the jury, the District Court gave instructions on how to determine whether Movant was guilty of Counts 3 and 4. The District Court stated:

> "With respect to the (Movant), you may find him guilty if you find the government has proven beyond a reasonable doubt that he either carried or used a firearm during and in relation to a drug trafficking offense or that he possessed a firearm in furtherance of a drug trafficking offense."

TT. at p. 1157.

*          *          *

> "Count 4 of the indictment charges (Movant) with the same offense on another occasion ..."

Id.

In light of the foregoing, Movant's protection against Double Jeopardy was violated as the district court's instruction allowed him to be

---

[11] Count 5, the drug conspiracy predicate offense, ran from a date unknown to the Grand jury and continued through on or about July 21, 2000. Movant was convicted of two § 924(c) counts, 3 and 4, based upon his alleged possession or use of the same firearm on two different dates during the course of this single ongoing conspiracy.

convicted for two offenses - - requiring consecutive sentences - - which were based upon the same conduct.

In *United States v. Lindsay,* 985 F.2d 666 (2nd Cir. 1993), this court addressed the issue as to whether a defendant could be subject to multiple § 924 (c) violations based upon the use of multiple firearms during the commission of a single predicate offense.[12] In *Lindsay,* the Second Circuit analyzed whether the "allowable unit of prosecution" under § 924 (c) focused on the predicate offense or the individual firearms. After carefully scrutinizing the language of § 924(c), as well as its legislative history, the Court found, "this firearms statute … is ambiguous as to the appropriate unit of prosecution." *Id.* at 675. Further, the Court found "since congress failed to specify the firearm as the appropriate unit of prosecution under § 924 (c), we invoke the rule of lenity and conclude that a defendant who uses multiple firearms in relation to a single (predicate offense) may be charged with only one violation of § 924 (c)." *Id.* at 676 (emphasis added). Thus the Court concluded that "only where the defendant commits multiple (predicate crimes) and the government can link firearms to those crimes, may the government prosecute for multiple violations of § 924(c). Where the government links multiple firearms to a single crime, only one § 924 (c) violation occurs." *Id.* at 674.

Other Circuits are in accord with *Lindsay* and have held only one § 924 (c) conviction can be attached to any single, ongoing predicate crime even though multiple §924 (c) offenses were alleged to have occurred on

---

[12]    In *Lindsay* the predicate offense was a drug trafficking conspiracy which ran from 1983 to 1988. He was convicted of seven counts of 924 (c) based upon his use of seven different firearms during the course of conspiracy.

different dates. *See United States v. Anderson,* 59 F.3d 1323 (D.C. Cir. 1995)(en banc)(vacating five § 924(c) convictions occurring on four separate dated during a four month period where predicate offense as a drug conspiracy); *United States v. Hamilton,* 953 F.2d 1344, 1356 (11th Cir. 1992)(vacating three § 924 (c) convictions occurring on three separate dates during a ten month period where the predicate offense was a drug conspiracy running for the entire period).

In *Anderson,* the D.C. Circuit expressly agreed with *Lindsay* and held, "we agree with the Second Circuit that, at a minimum, the statute is quite ambiguous with respect to the issue before us. Accordingly, we hold that only one § 924(c) violation may be charged in relation to one predicate crime." 59 F.3d at 1334.

In the matter at bar, Movant's two § 924 (c) convictions are predicated upon the same "unit of prosecution." They are both based upon a violation of the same statute, 21 U.S.C. § 846.

The circumstances in the matter at bar are distinguishable and more egregious than the Second Circuit's ruling in *United States v. Wallace,* 447 F.3d 184, 186 (2nd Cir. 2006). In *Wallace,* the defendant was convicted of two § 924 (c) offenses. Each count charged a different predicate offense. One count charged drug trafficking conspiracy, in violation of 21 U.S.C. § 846, as the predicate offense. The other count charged commission of a drive by shooting during a major drug offense, in violation of 18 U.S.C. § 36(b), as the predicate offense.[13] In vacating one of these convictions, the

---

[13] Both offenses also charged murder (of the same person) during the commission of the offenses in violation of § 924(j)(1).

27

court found that -- even though the predicate offenses were based on different statutes -- they were both based upon the same unit of prosecution." 447 F.3d at 188.  In determining whether this conduct constituted the same "unit of prosecution", *Wallace* relied upon the court's earlier ruling in *United States v. Finley*, 245 F. 3rd 199 (2nd Cir. 2001).  *Wallace* held "§924(c) does not clearly manifest an intention to punish defendant twice for continuous possession of a firearm in furtherance of simultaneous predicate offenses consisting of virtually the same conduct."  447 F3d at 188, *quoting Finley* 245 F.3d at 207.

In *Finley*, the defendant engaged in a drug sale to an undercover officer.  Upon his arrest, shortly after the sale, a drug stash and shotgun were recovered.  The defendant was convicted of two violations of § 924(c).  The predicate for one of the §924(c) offenses was possession of the shotgun during the drug sale.  The predicate for the other offense was possession of the shotgun during possession of the drug stash.  Upon vacating one of the two § 924(c) convictions, the Second Circuit found that even though two separate predicate offenses (drug sale and drug possession) were attached to the § 924(c) counts, "the predicate offenses were simultaneous or nearly so, they consisted of virtually the same conduct with the same criminal motivation and one of them (possession of a drug with intent to distribute) was a continuing offense."  245 F.3d at 207.

The Second Circuit's analysis, and its reasoning in *Finley* and *Wallace* should be adopted by this Court and applied to the matter at bar. Counts 3 and 4 occurred within the same time frame of the drug conspiracy alleged in Count 5.

As in *Finley,* if this Court allows the multiple § 924(c) convictions to stand, it would have an unintended *Draconian* affect. 245 F.3d at 208. In *Finley,* the Second Circuit noted – if the convictions were allowed to stand – then an armed drug dealer could be prosecuted for two §924(c) offenses if he sold only a portion of his stash and was then later arrested with a gun and remainder of his stash. Yet, if the armed dealer sold the entire stash in a single transaction, he would only be subject to one § 924(c) offense. *Id.*

In the matter at bar, allowing Movant's § 924(c) convictions to stand could produce a similar *Draconian* affect. For example, a citizen who possesses a firearm on or about July 12, 2000, and again possesses or uses a firearm between July 18, 2000, and July 12, 2000, during the commission of a drug trafficking conspiracy   the single predicate offense   which ran from on a date unknown to the Grand Jury, and continuing through on or about July 21, 2000, can be charged with two different § 924(c) counts based upon his/her use of the same firearm during the course of the lone conspiracy. As found by the Second Circuit, this was not the intent of Congress. *Id.* Accordingly, one of Movant's § 924(c) convictions must be vacated.

Trial counsel neither objected nor did Appellate Counsel follow-up and address this double jeopardy claim on appeal. There is no coherent strategy in not preserving a claim at trial and thenforfeiting a nonfrivolous claim on appeal that can reduce your client's sentence by 25 years.*United States v. Syme,* 276 F.3d 131, 158 (3rd Cir. 2002) (it is a miscarriage of justice to give a person an illegal sentence that increases his punishment, just as it is to convict an innocent person). Counsel's performance fell below an objective standard of reasonableness and counsel's deficient performance prejudiced the Movant resulting in an unreliable or fundamentally unfair

29

outcome in the proceeding. *Glover v. United States*, 531 U.S. 198, 204 (2001)(Counsel's failure to object to application of guidelines that increased sentence, was ineffective assistance; United *States v. Mannino*, 212 F.3d 835 (3rd Cir. 2000) (Failing to raise sentencing issue denied effective assistance). Failure to raise an issue on appeal with a reasonable probability of prevailing has been found to be ineffective assistance of counsel. *Compare Flores v. Demskie*, 215 F3d 293 (2nd Cir. 2000); *Jackson v. Leonardo*, 162 F3d 81, 86-87 (2nd Cir. 1998)(reversing dismissal of habeas petition where appellate counsel failed to raise straightforward double jeopardy claim.

**VII.    TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO REQUEST A CURATIVE INSTRUCTION AT THE TIME HIS SECOND MOTION FOR MISTRIAL WAS MADE AND DURING THE COURT'S CHARGE TO THE JURY. APPELLATE COUNSEL WAS INEFFECTIVE FOR NOT CLAIMING THAT THE TRIAL COURT ABUSED HER DISCRETION IN NEITHER GRANTING THE MOTIONS FOR MISTRIAL NOR GRANTING MOVANT'S MOTION FOR A NEW TRIAL**

A mistrial was twice argued on behalf of Movant Ahmed Walker. First when the 3 co-defendants pled guilty after four days of trial, and were removed from the case, and second, when a witness, Dennis Rittle, twice made unsolicited responses to questions stating that Movant had been shot. Movant's contention focuses on the latter.

A seven-day trial began on February 20, 2002. Defendants, Christopher Ames, Eric Sanchez, Angel Sanchez, and Movant were initially tried together.

On February 21, 2002, a Motion in Limine was argued to exclude any evidence that a co-defendant drove Movant to the hospital after Movant had been shot. *See* TT. at pp. 502-511; to wit:

MR. O'CONNELL: I believe Detective Barrett is going to testify among other things to a search conducted on a car that was driven by my client (Eric Sanchez) on July 20th of the year 2000; is that correct? *Id.* at 502.

AUSA FAWCETT: That's correct. *Id.*

MR. O'CONNEL: The reason my client was in custody or in the company of Detective Barrett that day was because he was driving (Movant) to the hospital after (Movant) was shot in an episode that is not a subject of any of the government's charges or evidence of which has not yet been brought up, nor I don't think they intend to bring it up. *Id.* at pp. 502-503.

I just want to make sure that that episode is not brought up at his point through the back door, so to speak, as a prelude to getting into the search of my client's car. *Id.*

AUSA FAWCETT: ... There is evidence that (Movant) was the victim of a shooting on July 20th. Eric Sanchez drove (Movant) to the hospital ... *Id.* at p. 503.

\*          \*          \*

AUSA FAWCETT: ... I think it is important to our case to establish a connection between (Movant) and Eric Sanchez during the

time period of the shooting ... not the shooting of the hand, the shooting at Lebanon Village. *Id.* at 505.

*        *        *

AUSA FAWCETT: ... When (Movant) was shot in the hand, he wants (Sanchez) to take him to the hospital. I think that establishes a connection between the two of them. *Id.*

THE COURT: Establishes what? *Id*

AUSA FAWCETT: That establishes a close relationship between the two of them which I think is relevant to the government's case. *Id.*

*        *        *

MR. O'CONNELL: I think it's prejudicial ... Just to show that (Sanchez and Movant) knew each other or were associated is one thing. That is sort of mildly relevant. But it is totally outweighed by the fact that (Sanchez) is taking him to the hospital after a shooting which - - *Id.* at pp. 510-511.

THE COURT: I am going to sustain his objection. Take this Officer out and try to tell him what he is not to mention.... *Id.* at p. 511.

Although objections were sustained, and witnesses were prohibited from mentioning that Movant was shot, a government witness, Dennis Rittle, despite prohibitions against such testimony, twice stated, on

direct, that Movant had been shot. *See* TT. at pp. 912-913. The following colloquy took place:

> MR. MCGOWAN: …. Mr. Walker (the Movant) wants me to make a motion for a mistrial because of the reference to his being shot, by the prior government witness. *See* TT. at p. 934.

> THE COURT: I was waiting for that. *Id.*

*          *          *

Judge Rambo set aside the February 25, 2002, motion for a mistrial for consideration post trial. TT. at p. 935. Judge Rambo previously ruled that the information that Movant was in the hospital after being shot, was to be excluded as irrelevant and highly prejudicial, and because it had no connection to the trial charges. Moreover, such information is highly prejudicial in that it allowed, without further explanation, for inferences that Movant was shot in connection with dealing drugs, or some other illegal activity. Doc. No. 333 at p. 23. Further, evidence that the testimony of the government's crucial witness, Dennis Rittle, was prejudicial is evidenced by the erroneous conclusions contained in the PSI findings presented under the "offense conduct" section, paragraph 5. If the PSI investigator could gain the misperception that Movant was shot in the hand in relation to the July 18, 2000, incident, surely at least on juror would come to the same erroneous, highly prejudicial conclusion. Surely, the previously ruled inadmissible statements and insinuated admissions provided to the jurors prejudiced Movant and led the jurors to a verdict that was against the weight of the evidence.

A.   Trial counsel was ineffective for failing to request curative instructions, and government exhibits be stricken from the record at the time his second motion for mistrial was made and during the Court's charge to the jury.

---

During opening statements, co-defendant Ames' counsel, Sam Stretton, said "that his client met (Movant) while incarcerated … (That on July 20[th], 21st) (Movant) was shot … the police had gotten a search warrant based on the fact that they saw blood from where (Movant) was shot leading to the apartment … they found drugs, gun … (Ames) was just there as a result of (Movant) having been shot … (Ames) will tell you that he doesn't sell drugs, for (Movant) …" TT. at pp. 18-27.

Four Days into the trial, Christopher Ames pled guilty along with Eric and Angel Sanchez. Sam Stretton's highly prejudicial comments about Movant made in his opening statement lingered unabated amongst the jurors throughout the rest of the Movant's trial. Trial counsel never requested a curative instruction. An effective counsel would have realized his client was entitled to a curative instruction. Trial counsel should have requested a curative instruction, to wit:

> "The comments made by attorney Sam Stretton in his opening statement must be entirely disregarded by you. The reasons are not a matter for your concern."

Moreover, on the fourth day of trial, when the three co-defendants decided to plead guilty, trial counsel failed to request that the government exhibits submitted as evidence against the three co-defendants for the jury's consideration, be stricken from the record, because of prejudicial spillover,

*i.e.,* that "evidence admissible against one defendant is prejudicial to all defendants." In the matter at bar, the evidence that was admissible against three co-defendants, prejudiced Movant. Although the district court abused her discretion in not granting the mistrial, counsel compounded the prejudice made by a bad decision, by not requesting that the evidence submitted over the past four days against three co-defendants, be stricken from the record. *See* Exhibit C, Government's Amended List of Exhibits. Trial Counsel also should have requested a curative instruction on that score too.

Lastly, after Movant's counsel filed a motion for a new trial, the government in its opposition brief, relied heavily on the fact that Movant's trial counsel failed to request the Court to give a curative jury instruction in regards to Dennis Rittle's testimony, specifically when Rittle twice told the jury that Movant was shot. Doc. No. 339 at p. 25. The Court, in its Memorandum and Order, dittoed the government's position. Doc. No. 344 at p. 5. Clearly, the government and the Court join in and support Movant's contention that effective counsel would have requested a curative instruction.

Movant's claim of ineffective assistance of trial counsel simply requires that he demonstrate two things: deficient performance by trial counsel, and prejudice from trial counsel's deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To satisfy the performance prong, Movant must demonstrate that the representation he received "fell below an objective standard of reasonableness." *Id.* at 688. This objective reasonableness must be determined on the basis of "the facts of the particular case, viewed as of the time of counsel's conduct. *Id.* at 690. Although an attorney is "strongly presumed to have rendered adequate

assistance," the performance prong is satisfied if the representation at issue falls "outside the wide range of professional competent assistance." *Id.* Movant has the burden of proving, by a preponderance of the evidence that 'counsel made error(s) so serious that counsel was not functioning as 'counsel' guaranteed him by the Sixth Amendment" Id. at 687. "Unless Movant receives the effective assistance of counsel, a serious risk of injustice infects the trial itself." *United States v. Chronic,* 466 U.S. 648, 656 (1984).

To satisfy the prejudice prong, Movant has to demonstrate "a reasonable probability that, but for counsel's unprofessional error(s), the result of the proceeding would have been different." *Id.* at 695. Accordingly, the prejudice determination is necessarily affected by the quantity and quality of other evidence against a Movant. In particular, a verdict or conclusion only weakly supported by the record is more likely to have been affected by error(s) than one with overwhelming record support." *Id.* at 696. Movant is contending that (1) the district court abused her discretion in not granting a mistrial; (2) trial counsel should have (a) moved to have the evidence submitted by the government against the three co-defendants who pled guilty after four days of trial stricken from the record and (b) requested a curative instruction addressing that evidence submitted to the jury; and (3) trial counsel should have requested a curative instruction regarding Dennis Rittle's testimony about Movant being shot. This requires Movant to demonstrate " a reasonable probability that, absent the error(s), the fact finder would have had a reasonable doubt respecting guilt. [14] *Id.* at

---

[14]    The phrase "reasonable probability", despite its language, should not be confused with "probable" or "more likely that not" *Strickler v. Green,* 527 U.S. 263, 289-91 (1991); *Kyles v. Whitley,* 514 U.S. 419, 434 (1995); *Nix v. Whiteside,* 475 U.S. 157, 175

695. This is a lesser standard than preponderance of the evidence, and accordingly, Movant "need <u>not</u> show that counsel's deficient conduct more likely than not altered the outcome in the case." *Id.* at 693. In a trial such as this one, where the result depended on the government establishing a close relationship between the three co-defendants and Movant, and, the prejudicial testimony of the government's crucial witness, Dennis Rittle, went unchecked, Movant believes there is a reasonable probability that the result of the proceeding would have been different. *Hamblin v. Mitchell*, 354 F.3d 482, 493 (6th Cir. 2003)("(T) he prejudice prong is satisfied if there is a reasonable probability that at least **one juror** would have struck a different balance.") Accordingly, based on the discussion *supra*, "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

B.   Appellate Counsel was ineffective for not claiming that the trial court abused her discretion in neither granting either of the motions for mistrial nor granting Movant's motion for a new trial.

---

Due Process requires effective assistance of counsel. *Evitts v. Lucey*, 469 U.S. 387, 396 (1985)(due process requires effective assistance of counsel during first appeal as of right). The Sixth Amendment provides that "[i] n all criminal prosecutions, the accused shall enjoy the right … to have

---

(1986) ("a defendant need not establish that the attorney's deficient performance more likely that not altered the outcome in order to establish prejudice under *Strickland*"); *Strickland v. Washington*, 466 U.S. at 694 ("The result of a proceeding can be rendered unreliable, and hence the proceeding itself unfair, even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome.") Rather, the phrase "unreasonable probability" seems to describe a fairly low standard of probability". *Strickler v. Greene*, 527 U.S. at 291; *cf. id.* at 297-301 (Souter, J., concurring & dissenting)(arguing that any difference between "reasonable probability: and "reasonable possibility" is slight).

assistance of counsel for his defense. U.S. Const. Amend. VI; *McMann v. Richardson,* 397 U.S. 759, 771 n. 14 (1970)(6th Amendment right to counsel is right to effective assistance of counsel).

The same standard is used to evaluate the effectiveness of both trial and appellate counsel. *See Smith v. Murray,* 477 U.S. 527, 536 (1986). The *Strickland* standard is applicable both on direct appeal and in a collateral attack. *See Williams,* 529 U.S. at 435. In a case for habeas relief governed by AEDPA, "it matters only that the *Strickland* performance and prejudice test has been 'clearly established' -- not that a particular theory of ineffective assistance derived from *Strickland* has been clearly established." *Sellan v. Kuhlman,* 261 F.3d 303, 309 (2nd Cir. 2001).

Ineffectiveness is not demonstrated merely by identifying a substantive issue not raised in an appeal brief. *See Jones v. Barnes,* 463 U.S. 745, 754, n. 7 (noting that appellate counsel may be selective in raising non-frivolous issues). A closer question is presented, however, if a defendant can show that counsel "omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." *Mayo v. Henderson,* 13 F.3d 528, 533 (2nd Cir. 1994). In that light, the failure to raise an issue on appeal with a reasonable probability of prevailing has been found to be ineffective assistance of counsel. *Mayo,* 13 F.3d at 535-36 (affirming grant of habeas for failure to raise meritorious state law claim).

In the matter at bar, the Court's Rule 33 analysis moreso resembles a Rule 29 analysis. The Court may have said the words "weight of the evidence", however; her Memorandum and Order describe the evidence as legally sufficient. Doc. No. 344 at p. 4. The Court's memorandum and

order does not intimate that it considered Attorney Sam Stretton's prejudicial remarks against Movant in his opening statement nor the array of government exhibits submitted against the three co-defendants that were left in play, after the three co-defendants pled guilty, for "weight and credibility" determinations made solely by the jury against Movant.

The same analysis described above attaches with greater force to the Court's decision not to grant the first and second mistrial motions. The Court should never have put off defendant's motion for mistrial to post-trial. This abuse of discretion allowed too much time for "prejudice" to fester and metastasize. Like any other malignancy, the prejudice should have been removed immediately from the case. This would have stopped the prejudice from spreading throughout the case and from being considered by the triers of fact for the remaining three days of trial.

Accordingly, appellate counsel should have raised these meritorious claims on Movant's appeal of right. In that counsel didn't, Movant was denied due process and his right to effective assistance of counsel.

VIII. **TRIAL COUNSEL WAS INEFFECTIVE FOR REQUESTING TO STIPULATE TO THE ADMISSION OF TESTIMONY ABOUT TWO YEAR OLD JUSTINA PEREZ WHO WAS SHOT ON JULY 18, 2000, AND FOR FAILING TO REQUEST A LIMITING INSTRUCTION. APPELLATE COUNSEL WAS INEFFECTIVE FOR NOT APPEALING THAT THE COURT ABUSED HER DISCRETION IN ALLOWING SAID TESTIMONY AND IN NOT ADMINISTERING AN   APPROPRIATE LIMITING INSTRUCTION.**

In considering whether to admit other-act evidence, the trial court must determine whether the evidence is relevant to the issue under Fed.R.Evid. 401 and 402. In addition, even if relevant, such evidence under Fed.R.Evid. 403, "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury. *United States v. Gordon*, 987 F.2d 902, 908 (2nd Cir. 1993). "Similarity, being a matter of relevancy, is judged by the degree in which the prior act approaches near identity with the elements of the offense charged." *Gordon*, 987 F.2d at 908. (citation omitted)(emphasis added). "Unfair prejudice" refers to "the capacity of some concededly relevant evidence to lure the fact finder into declaring guilt on a ground different from proof specific to the offense charged." *Old Chief v. United States*, 519 U.S. 172, 180 (1997). In other words, unfairly prejudicial evidence is that having "an undue tendency to suggest decision on an improper bases, commonly, though not necessarily, an emotional one." *Id.* (citation and internal quotation marks omitted). The probative value of evidence against a defendant is low where the evidence does not go to an element of the charge. *See United States v. Ellis*, 147 F3d 1131, 1135, (9th Cir. 1998).

In the matter at bar, Movant was not charged with any crime of violence. He was, however, charged with possession, using, carrying, brandishing and discharging firearms in perpetrating a drug trafficking crime. 18 U.S.C. § 924(c)(1)(2003). Nevertheless, the prosecution, starting with day one of the trial, sought testimony that would strike an indelible emotional chord with the jury. Evidence that would have absolutely no relevancy to the elements of the charged crimes. Once the bell of prejudice was rung, there was no undoing it.

On the first day of the trial, Iris Perez gave heart-wrenching testimony that she was the mother of Justina Perez who was two years old at the time of the Lebanon Village shooting. The following colloquy exchanged between the initiating prosecutor, AUSA Fawcett and Iris Perez:

A:[15] I heard a gunshot. TT. at p. 257.

*          *          *

A: (Justina) was already shot. *Id.* at p. 259.

*          *          *

A: She was just bleeding. *Id.*

Q:[16] From where was she bleeding? *Id.*

A: From her lower part of her let. *Id.*

MR. MCGOWAN: On behalf of (Movant), we stipulate that her two-year-old daughter (Justina) was struck in the back of the leg with a bullet that day. *Id.*

AUSA FAWCETT: ... I think it is relevant, and I am not going to stipulate. *Id.*

THE COURT:    All Right. *Id.*

Q: You said she was bleeding from the lower part of her leg? *Id.*

A: Yes. *Id.*

---

[15]    "A" refers to answer(s) by Iris Perez.
[16]    "Q" refers to question(s) by AUSA Fawcett.

Q:    Was she upset? Was she crying? *Id.*

     \*         \*         \*

Q:  What happened after you saw that she was bleeding from her lower leg? *Id.* At p. 260

A:  I went crazy. *Id.*

Q:  Did somebody call an ambulance? *Id.*

A.  I guess. *Id.*

Q:  Did an ambulance come? *Id.*

A:  Yeah. *Id.*

Q:  When the ambulance came, was somebody put in the ambulance? *Id.*

A:  Yes, me and (Justina). *Id*

Q:  This is your daughter Justina; is that correct? *Id.*

A.  Yes. *Id.*

Q:  Where did you and Justina go? *Id.*

A:  Outside on the front porch, and they took us in the ambulance. *Id.*

Q:  Where did the ambulance take you and Justina? *Id*

A:  To the hospital. *Id.*

Q: Do you remember what hospital that was? *Id.*

A: Hershey. *Id.*

Q: Was Justina admitted to Hershey Hospital? Did she stay there? *Id.*

A: Yes. *Id.*

Q: How long did she stay there? *Id.*

A. Like a day. *Id.*

Q: Okay. She was released after approximately a day. *Id.*

A: Yes. *Id.* at p. 261

Q: Did she have to go back into the hospital at a later time? *Id.*

A: Yes, she did. She had to go back to remove the bullet. *Id.*

Q: Okay. Approximately how long after the shooting did she have to go back in to have the bullet removed? *Id.*

MR. MCGOWAN: Your Honor, I **object** to relevance. *Id.*

THE COURT: You said this had some relevance. I want to know what. You don't need to respond. *Id.*

NOTE: AUSA Fawcett never did explain the relevancy of Ms. Perez's lengthy testimony about her two-year-old daughter Justina being shot. AUSA Fawcett questioned Ms. Perez further about the shooting. TT. at pp. 262, 277, 372, 373.

As a logical matter, the fact that Justina was shot does not go to an element of the crimes charged. This necessarily makes its probative value low. *United States v. Ellis,* 147 F.3d 1131, 1135 (9th Cir. 1998). The risk that a jury will convict for crimes other than those charged – or that, uncertain of guilt, it will convict anyway because a bad person deserves punishment – creates a prejudicial effect that outweighs ordinary relevance." *See* the reasoning in *Old Chief v. United States,* 519 U.S. 172, 181 (1997). Movant was not charged with shooting Justina Perez. AUSA Fawcett never explained to the Court the relevancy of Ms. Perez's testimony about the shooting. Mr. McGowan should never have requested to stipulate that Ms. Perez's two year old daughter Justina was struck in the back of the leg with a bullet because the "shooting" was not an element of proof. *In re Diet Drugs Prods Liability Litigation,* 369 F.3d 293, 315 (3rd Cir. 2004). Mr. McGowan did object to the relevancy of the testimony, however, he failed to request a limiting instruction. And, the district court abused her discretion in allowing this extensive prejudicial testimony. *United States v. Hitt* 981 F.2d 422, 424 (9th Cir. 1992)("Where the evidence is of very slight (if any) probative value, its an abuse of discretion to admit it if there's even a modest likelihood of unfair prejudice or a small risk of misleading the jury.").

The description of a two year old, innocent, little girl being shot in the leg … bleeding … crying … being rushed to Hershey Hospital in an ambulance very well could have triggered an emotional response from the jury members, who were likely to be sympathetic to the little two year old girl and consequently want to assign blame and punish the man who caused the shooting. Moreover, AUSA Fawcett's closing argument drove home to

the jury the connection, implicit from the testimony, between the alleged actions of Movant and the shooting of Justina:

AUSA FAWCETT:          ... (T)he connection between the forty caliber and the bullet in Justina's leg and (Movant) is an important connection to make ... TT. at p. 1067.

In summary, there is at least a "modest likelihood of unfair prejudice." *Hitt,* 981 F.2d at 424. The evidence about the shooting had "an undue tendency to suggest decision on an improper basis." *Old Chief,* 519 U.S. at 180 (citation and internal quotation marks omitted). The likelihood of unfair prejudice was high enough to outweigh the minimal probative value of the evidence. The district court abused her discretion under Fed.R. Evid. 403.

A.     Trial Counsel was ineffective for requesting to stipulate to the admission of testimony about two year old Justina Perez who was shot on July 18, 2000, and, for failing to request a limiting instruction.

Although trial counsel rightfully objected to the relevancy of the "shooting", he failed to further pursue the objection. Moreover, whether or not the Court abused its discretion in allowing the "shooting" evidence does not excuse counsel from failing to request a limiting instruction. For the myriad of reasons stated earlier, there is no valid strategic reason for trial counsel to have chosen not to request a limiting instruction. Assuming, *arguendo,* but certainly not conceding that the "shooting" testimony was admissible, it does not decide the question of whether a limiting instruction would still have been requested by counsel, and that counsel's failure to seek a limiting instruction in this instance was substandard performance. By asking for a stipulation, trial counsel equated inadmissible testimony with an

element of proof. This is not the law and counsel should be versed with the law. Counsel's actions were objectively unreasonable.

Movant was prejudiced as a result therefrom, because there is a reasonable probability that at least **one juror,** most likely a mother with children, was likely to be sympathetic to the little two year old girl and consequently wanted to assign blame and punish Movant for the shooting. Accordingly, based on the discussion *supra,* "there is a reasonable probability that, but for trial counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington,* 466 U.S. 668, 694 (1984).

B.    Appellate Counsel was ineffective for not appealing that the Court abused her discretion in allowing said testimony and in not administering an appropriate limiting instruction.

It is suggested that limiting instruction be given both at the time extrinsic evidence is introduced and again in the final instructions to guard against undue prejudice to the accused and to limit such evidence to tis proper purpose. *See United States v. Rivera,* 837 F.2d 906, 913 (10th Cir. 1988)(where evidence is admitted pursuant to Rule 403 the trial judge <u>must</u> give limiting instruction both at the time evidence is admitted and in the general charge to the jury to minimize the risk of prejudice), *reversed on other grounds,* 900 F.2d 1462 (10th Cir. 1990); Fed.R.Evid.105.

The likelihood of unfair prejudice was high enough to outweigh the minimal probative value of the "shooting" evidence; therefore its admission was an abuse of discretion under Fed.R.Evid. 403.

As previously detailed in ground 7(B) *supra,* and for reasons discussed earlier, appellate counsel should have raised this meritorious claim