on Movant's appeal of right. In that counsel did not, Movant was denied due process and his right to effective assistance of counsel.

### IX.    TRIAL COUNSEL WAS INEFFECTIVE BY FAILING TO INVESTIGATE AND PRESENT WITNESSES FAVORABLE TO MOVANT'S DEFENSE

Movant was charged with various narcotics and firearms offenses. Two of the government's witnesses, Robertito Irazarry and Behah Ali Sills, gave scathing albeit dubious testimony at trial that, for the most part, appeared to be the linchpin of the government's case against Movant.

In retrospect, in plenty of time prior to trial, Movant wrote several letters urging counsel to investigate, and also to interview Maria Rivera and Eric Sanchez. Initially, the letters were prompted by Movant's review of redacted DEA and ATF reports. The same reports reviewed by trial counsel. *See* Exhibit D, Affidavit of Ahmed Walker, ¶3. The letters, unfortunately, fell on deaf ears and went unanswered. Instead, had counsel followed up on the letters and investigated, he would have learned that the testimony given by Irazarry and Sills was false, and likely suborned by the government.

### TESTIMONY OF IRAZARRY AND SILLS

**Irazarry testified:**

(1) that Movant sold him drugs on five different occasions during the summer of 2000. TT. at 819;

        *             *             *

(2) that on one occasion when he was picking up drugs from Movant at Movant's girlfriend's home, he saw a gun on the table in the kitchen. TT. at 821.

47

\*                    \*                    \*

(3) that Movant's girlfriend, Tomika Howard, moved the gun into another room.  TT. at 822; and

\*                    \*                    \*

(4) that Movant told him the reason for the Lebanon Village shooting "was over drug territory" and that Movant told him that he fired a weapon.  TT. at 823.

\*                    \*                    \*

**Sills Testified:**

(5)  that Movant told him that the Lebanon Village shooting "happened over an argument … about drug territory."  TT. at 924; and

\*                    \*                    \*

(6)  that he witnessed Movant selling drugs on Leman Street. TT. at 925.

### HAD COUNSEL INVESTIGATED, HE WOULD HAVE:

(A) discovered, through court order, that Movant could have absolutely no contact with Ms. Tomica Howard during the summer of 2000.  This information contradicts the testimony of Irazarry and could have been used to effectively cross-examine him.  See ¶ 1-4 (inclusive) *supra; see also* Exhibit D, Attachment Five;

(B) discovered that Movant was charged in 1999 with assault on his girlfriend's son Rory. *See* Exhibit D, Attachment Two ¶2. Movant's girlfriend name is Tomica Howard;

(C) discovered that Movant was in ISOLATION in County lock-up during the timeframe of the alleged conversations between Movant and Sills. Had counsel investigated, he would have been able to effectively cross-examine Sills. Effective cross-examination would have seriously impeached the testimony given by sills as annotated above in ¶ 5 and 6 *supra; see also* Exhibit D, Attachment Two ¶ 8-11 (inclusive); and

(D) discovered that there was no agreement to sell drugs, between Eric Sanchez and Movant. And, that Eric Sanchez was willing to attest to this as a witness testifying on behalf of Movant. *See* Exhibit D, Attachment Three.

Attachments one, four, five and six to Exhibit D, were available to the prosecution prior to trial, which, lends support to Movant's additional claim that the prosecution either suborned false testimony from Irazarry and Sills (which ably could make trial counsel ineffective) or learned during their respective testimonies that they testified falsely and failed to promptly bring this to the attention of the Court (which would constitute fraud upon the court).

## TRIAL COUNSEL'S INEFFECTIVENESS

### Cross-Examination

A "primary interest" protected by the Confrontation Clause is the right of cross-examination. *Douglas v. Alabama,* 390 U.S. 415, 418 (1965). "Cross-examination is the principal means by which the believability of a witness and the truth of this testimony are tested." *Davis v. Alaska,* 415 U.S.

308, 316 (1974). Indeed, cross –examination is the "greatest legal engine ever invented for the discovery of truth." *California v. Green*, 399 U.S. 149, 158 (1970).

### Prosecutorial Misconduct

It is serious misconduct for a prosecutor to obtain a conviction through the knowing use of false evidence. *See United States v. Wallach*, 935 F.2d 445, 473 (2nd Cir. 1991)(Altimari, J., concurring)(knowing use of false testimony is "perhaps the most grievous accusation that can be leveled against a prosecutor"). The use of false evidence is improper whether the prosecutor affirmatively elicits such evidence, *See Miller v. Pate*, 386 U.S. 1, 7 (1967) or merely "allows it to go uncorrected when it appears," *Napue v. Illinois*, 360 U.S. 264, 269 (1959).

### Investigation

The Supreme Court and the Third Circuit have held that the failure to investigate potential defense witnesses is constitutionally deficient where that failure is based upon an incomplete investigation where counsel's limitation of the investigation was unreasonable. *See United States v. Gray*, 878 F.2d 702, 710 (3rd Cir. 1989)(citing *Strickland*, 466 U.S. at 690-91).

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a performance and prejudice test by which to evaluate the claim that counsel in a criminal case has been ineffective. In order to have a conviction reversed, the defendant must demonstrate (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that the poor performance prejudiced the outcome of the proceeding. *See Strickland*, 466 U.S. at 687-88. Turning to the former, the failure to call witnesses may not be insulated from constitutional standards simply by labeling it "strategic"; rather, the decision must be "sound" and "reasonable"

50

under the facts of the case. *See, e.g., United States v. Fennell*, 53 F.3d 1296, 1304 (D.C. Cir. 1995) (stating that a hearing would be necessary to assess whether counsel's decisions and strategies were reasonable).

In the matter at bar, trial counsel failed to investigate potential defense witnesses, Maria Rivera and Eric Sanchez. Both the Supreme Court and the Third Circuit have held that the failure to investigate potential defense witnesses is constitutionally deficient where that failure is based upon an incomplete investigation where counsel's limitation of the investigation was unreasonable. *See United States v. Gray*, 878 F.2d 702, 710 (3rd Cir. 1989) (citing *Strickland*, 466 U.S. at 690-91); *See also Workman v. Tate*, 957F.2d 1339, 1345 (6th Cir. 1992) ("Where counsel fails to investigate and interview promising witnesses, and therefore have no reason to believe they would not be valuable in securing defendant's release, counsel's inaction constitutes negligence, not trial strategy"; *United States v. Kauffman*, 109 F.3d 186, 190 (3rd Cir. 1997) (stating that there was no strategy involved where counsel's "failure to investigate or research the … issue at all resulted in a cursory, uninformed judgment call …").

As discussed earlier, had counsel interviewed Rivera and Sanchez, he would have seriously impinged the testimony of Irazarry and Sills. *Bryant v. Scott*, 28 F3d 1411, 1419 (5th Cir. 1994) (counsel ineffective for failing to investigate and interview witnesses, and noting that while counsel's cross-examination of the government's witnesses "was effective, that is not to say it could not have been improved by prior investigation.") *United States v. Baynes*, 687 F2d 659, 667-68 (3rd Cir. 1982) ("competent cross-examination does not take the place of affirmative defense built upon thorough investigation and preparation"). Moreover, counsel would have mounted a serious challenge to the prosecution's narcotic's conspiracy case against

Movant by showing that a conspiracy did not exist; that there was no agreement entered into; that drugs were sold independently to which Sanchez in his affidavit concedes. *See* Exhibit D, Attachment C.

The second prong of *Strickland* focuses on the "reasonable probability" of prejudice, that is, whether "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Movant was prejudiced. However, reliance on affidavits in disposing of a petition for a writ of habeas corpus without the taking of testimony, is improper. *Walker v. Johnston*, 312 U.S. 275 (1941). In *Walker*, the Court stated that judicial inquiry into the "very truth and substance of the causes" of the defendant's detention "involves the reception of testimony." *Walker*, 312 U.S. at 285-86. *See also United States v. Levy*, 377 F.3d 259, 265 (2nd Cir. 2004) (Generally, in the context of ineffective assistance claims, attorney affidavits cannot be said to be completely unbiased – attorney's understandably have an interest in maintaining their reputations and avoiding civil liability); *United States v. Crawford*, 161 F.3d 4, 1998 WL 610870 (4th Cir., Sept. 3, 1998) ("a district court may not credit an attorney's affidavit over a petitioner's verified papers without conducting an evidentiary hearing."). As the record stands, it does not conclusively show that Movant is entitled to no relief. Therefore, at minimum, Movant has the right to an evidentiary hearing to determine whether prejudice resulted from counsel's deficient performance.

**X.    APPELLATE COUNSEL WAS INEFFECTIVE FOR NOT CONTENDING ON APPEAL THAT THE DISTRICT COURT ABUSED HER DISCRETION IN COUNTING MOVANT'S DELINQUENCY ADJUDICATION IN HIS CRIMINAL HISTORY CALCULATION.**

Movant's Criminal History Category was calculated to be a Category II based on a 1997 juvenile arrest and conviction. He was adjudicated Delinquent and sentenced to serve 6-18 months in custody in a limited secure residential facility.

Movant objected both times he was sentenced to the use of this offense in determining his Criminal History Category. As part of Movant's first appeal, this Court affirmed the inclusion of the 1997 juvenile conviction in determining Movant's Criminal History Category. Despite this, it is respectfully suggested that the use of this enhancement violated Movant's rights under the Fifth and Sixth Amendments and the Supreme Court's holding in *Shepard v. United States,* 544 U.S. 13 (2005).

In the matter at bar, it is important to note that no evidence of his juvenile conviction, to include any documentation whatsoever, was submitted to the Court as part of the sentencing process. Before addressing *"Shepard"* and "Standard of Proof", Movant respectfully reminds the Court that the Law-of-the-Case doctrine does not apply where the decision was clearly erroneous and would work a manifest injustice. *Shultz v. Onan Corporation,* 737 F.2d 339, 345 (3rd Cir. 1984). "Under law of the case doctrine, as now most commonly understood, it is not improper for a court to depart from a prior holding if convinced that it its clearly erroneous and would work a manifest injustice." *Arizona v. California,* 460 U.S. 605, 619 n. 8 (1983).

This Court held in Movant's first appeal that the inclusion of Movant's juvenile conviction in his criminal history determination was "not unreasonable". *United States v. Walker,* 136 Fed. Apps. 524, 529 (3rd Cir.

53

2005). Given the argument submitted below it is respectfully suggested that this holding cannot stand.

### A. *Shepard v. United States*

     *Shepard* involved the determination of facts <u>about</u> a prior conviction. Specifically, the question was whether, in characterizing predicate state court convictions for enhancement purposes under the Armed Career Criminal Act, 18 U.S.C. § 924 (e), a sentencing court can look beyond the defendant's guilty plea to police reports or complaint applications. The Court answered that question in the negative. *See also United States v. Palmer*, 68 F.3d 52, 55-56 (2nd Cir. 1995) (relying on a description of the prior offense in a <u>current</u> presentence report is appropriate). In this case, the Court violated the Supreme Court's holding in *Shepard* by considering criminal history matters it should not have considered. Movant's juvenile conviction should not have been counted against him. His sentence is unreasonable.

### B. <u>Standard of Proof</u>

     The requirement of proof beyond a reasonable doubt under the Fifth Amendment Due Process Clause protects against factual error whenever a potential loss of liberty is at stake. *In re Winship*, 397 U.S. 358, 363-64, 368 (1970). As W*inship* itself involved judicial fact finding in a juvenile delinquency proceeding, this is so regardless of the identity of the fact finder and whether or not the finding results in "conviction" of a "crime". Facts to which the reasonable doubt standard applies are not just those that go to guilt or innocence, but those that increase punishment. *Mullaney v. Wilbur*, 421 U.S. 684, 697-99 (1975).

     The Supreme Court reaffirmed these principles in *Apprendi v. New Jersey*, 530 U.S. 466 (2000). "Since *Winship*, we have made clear beyond

peradventure that *Winship's* due process and associated jury protections extend, to some degree, 'to determinations that (go) not to a defendant's guilt or innocence, but simply to the length of his sentence.' This was a primary lesson of *Mullaney.* [17]*Apprendi,* 530 U.S. at 484. See also *Jones v. United States,* 526 U.S. 227 (1999) at 240-43 and n. 6; *Cunningham v. California* 127 S. Ct. 856 (2007) at 863-64 (referring to independent right to proof beyond a reasonable doubt and tracing origins of recent Sixth Amendment jurisprudence to doctrinal discussions of *Winship* and *Mullaney* in *Jones*).

Though the Supreme Court has considered the Fifth Amendment right to proof beyond a reasonable doubt in tandem with the Sixth Amendment jury trial right in recent cases, *Apprendi,* 530 U.S. at 478, it remains clear that the Fifth Amendment due process right remains distinct, *id* at 476-77, and applies equally to judicial fact finding. *See Schriro v. Summerlin,* 542 U.S. 348, 358 (2004) (despite the absence of jury fact finding, judge's use of the reasonable doubt standard assured that accuracy was not seriously diminished). Thus, *United States v. Booker,* 543 U.S. 220 (2005)'s resolution of the Sixth Amendment issue, which concerned the reservation of control in the people against governmental power, did not address what standard of proof a <u>judge</u> must use under the Fifth Amendment to find facts that expose a defendant to additional loss of liberty. *Texas v. Cobb,* 532 U.S. 162, 169 (2001) ("Constitutional rights are not defined by inferences from opinions which did not address the question at issue").

---

[17]    The Court distinguished *McMillan v. Pennsylvania,* 477 U.S. 79 (1986) as involving a finding that resulted in a mandatory minimum sentence but that did not expose the defendant to additional punishment, within a range in which judicial discretion was otherwise entirely unfettered. *See Apprendi,* 530 U.S. at 486; *Jones,* 526 U.S. at 242.

Fact finding under the advisory guidelines has a determinate, numerical impact on the guideline range, which in turn drives the length of the ultimate sentence and exposes the defendant to additional loss of liberty within the meaning of *Winship, Mullaney,* and *Apprende.* The judge must "calculate" the guideline range "correctly," *Gall v. United States,* 128 S. Ct. 586 (2007) at 596, *i.e.* she must find the aggravating facts and assign them the required number of points. The judge must then use this "calculation" as the "starting point and the initial benchmark," *id.,* and must justify any "deviation" from it with a "justification (that) is sufficiently compelling to support the degree of the variance." *Id.* at 597. This fact finding necessarily drives sentence length because the guideline range is the only § 3553(a) factor with a number affixed to it and is the benchmark from which both sentencing and appellate review proceed. *Gall,* 128 S. Ct. at 595. Guideline fact finding thus exposes the defendant to loss of liberty, and is therefore required to be conducted based on proof beyond a reasonable doubt under *Winship, Mullaney,* and *Apprendi.*

Appellate counsel should have properly argued this issue on appeal because there was a reasonable probability of prevailing. Movant was prejudiced as a result therefrom because his sentence was increased. *See Glover v. United States,* 531 U.S. 198, 204 (2001) (Any increase in a defendant's potential sentence may be enough to establish prejudice). Appellate Counsel provided Movant with ineffective assistance counsel. Moreover, even though counsel did not raise the issue, this court has the power to cut through procedural bars to correct a manifest injustice.

Accordingly, because the Court conducted its fact-finding in violation of *Shepard* and/or under a preponderance of evidence standards, Movant's

56

Fifth Amendment right was violated.  Movant's sentence remains
unreasonable.

## XI.    TRIAL COUNSEL WAS INEFFECTIVE AT TRIAL AND AT SENTENCING BECAUSE THE COURT WAS NOT MADE AWARE OF MOVANT'S MENTAL HEALTH HISTORY

Criminal defendants may not be convicted or forced to stand trial
unless they are mentally competent.  *See Pate v. Robinson,* 383 U.S. 375,
378 (1996) (failure to conduct hearing violated due process where evidence
created sufficient doubt about defendant's competency).  Moreover, if a
defendant has been considered competent, that defendant is not necessarily
precluded "from submitting mental health evidence for the purpose of
rebutting the prosecution's proof of the *mens rea* element of a specific intent
crime." *United States v. Dupre,* 462 F.3d 131, 138 (2nd Cir. (2006).

### Competency to Stand Trial

18 U.S.C. § 4241 sets out procedure to determine mental competency
to stand trial.  It allows the prosecutor or defense counsel to file a motion for
a competency hearing.  It also requires the court to grant the motion, or
"order such a hearing on its own motion, if there is reasonable cause to
believe that the defendant may presently be suffering from a mental disease
or defect rendering him mentally incompetent ..." 18 U.S.C. § 4241(a).

The Supreme Court has recognized the absence of "fixed or
immutable signs which invariably indicate the need for further inquiry to
determine fitness to proceed." *Drope v. Missouri,* 420 U.S. 162, 180 (1975).
Evidence of irrational behavior, odd demeanor and prior medical opinion are
all relevant. *See Drope,* 420 U.S. at 180 (due process violation in failing to

probe competency based on … psychiatric information); *United States v. Auen*, 846 F2d 872, 877 (2nd Cir. 1988) (remanding for hearing where defendant's bizarre behavior and statements suggested incompetency).

## MOVANT'S EXTENSIVE MEDICAL PSYCHIATRIC HISTORY

According to Movant's presentence Investigation Report ("PSR"), specifically, under Offender Characteristics, it was described that Movant has an extensive and serious mental health history. *See* PSR, ¶ 52, 55-57, 59. In 1992, while at the Pleasantville Diagnostic Center, located in New York, Movant was found to be in the low average range of intellectual functioning (IQ:87). Movant's evaluation further unveiled that he had emotional factors that interfered with his cognitive functions. *Id.* at ¶56. Movant was diagnosed as having a personality disorder (not otherwise specified) with a borderline sadistic and anti-social personality features. *Id.* Movant was further diagnosed as having a conduct disorder and an impulse control disorder. *Id.* at ¶ 57. He was classified as emotionally disturbed and was in a special education self-contained classroom in the 9th grade. *Id. at* ¶ 59. Movant has been treated with medications such as mellaril, lusteril (sp), thorazine, ritalin, and lithium. *Id.* at ¶57; *see also* Exhibit E, Prison Evaluation, dated January 4, 2000.

## TRIAL COUNSEL DID NOT REASONABLY INVESTIGATE MOVANT'S EXTENSIVE MEDICAL PSYCHIATRIC HISTORY

Trial counsel clearly did not reasonably investigate Movant's extensive medical psychiatric history, the record supports no investigation was conducted. Consequently, counsel did not present to the Court during pretrial, trial, or during sentencing, any evidence, documented or otherwise,

of Movant's extended psychiatric history. Logically, if counsel were to allege that he conducted investigation, then his investigation was unreasonable. Subsequently, making a fully informed decision(s) with respect to pretrial, trial and sentencing strategy was impossible. *See Wiggins v. Smith*, 539 U.S. 510, 527-28 (2003) (trial counsel's <u>awareness</u> of Wiggins' troubled childhood would have prompted a reasonable competent attorney to investigate further). *See also Porter v. Singletary*, 14 F.3d 554, 557 (11th Cir. 1994) (An attorney has a duty to conduct a reasonable investigation of the defendant's background, for <u>possible</u> mitigating evidence).

In the matter at bar, trial counsel was aware that Movant had a medical psychiatric history, yet decided not to investigate it. Counsel's performance was deficient, objectively unreasonable because had he investigated further into Movant's psychiatric history, he would have been effectively enabled to (1) mount a serious challenge to the *mens rea* element of the specific intent crimes as charged by the grand jury, and (2) vigorously argue that Movant's sentence should be reduced because of extensive medical psychiatric history. The advisory Sentencing Guidelines are only one of seven equally important factors the Court must consider in determining a sentence that is "sufficient, but not greater than necessary", to comply with the purposes of sentencing set forth in 18 U.S.C. § 3553(a)(2). For instance, a mental disorder may be grounds for a lower sentence, either through a departure for extraordinary mental or emotional problems as suggested by U.S.S.G. § 5H1.3 or by taking into account the factors listed in 18 U.S.C. § 3553(a). *United States v. Ngatia*, 477 F.3d 496, 501 (7th Cir. 2007) (the factors under § 3553(a) include the nature and circumstances of

the offense, the (medical psychiatric) history and characteristics of the defendant).

In the instant case, due process was violated. Prejudice should be presumed when effective assistance of counsel was denied during pretrial, trial and sentencing, all critical stages of the proceeding. *Strickland,* 466 U.S. at 692. However, if prejudice is not presumed, the Movant must establish a "reasonable probability" that, but for counsel's unprofessional errors. The result of the trial and/or sentencing proceedings would have been different. *See Strickland,* 466 U.S. at 692. The Supreme Court has rejected the proposition that a defendant must prove more likely than not that the outcome would have been altered. *See id., see also Woodford v. Viscotti,* 537 U.S. 19, 22-23 (2002). In the case *sub judice,* there is a reasonable possibility that Movant would have been found not competent to proceed to trial and /or his sentence would have been adjusted favorable. *See Glover v. United States,* 531 U.S. 198, 202-24 (2001). In *Glover,* the court explained that the outcome-based prejudice inquiry set forth in *Strickland* should be applied in most cases. *See id.* at 203. The court reversed the Seventh Circuit's determination that a six month to 21 month increase in petitioner's sentence, allegedly caused by the defective performance of defendant's counsel, could not be considered prejudicial because the increase was not sufficiently significant to render the defendant's trial fundamentally unfair. *See id.* The Court stated, "Authority does not suggest that a minimal amount of additional time in prison cannot constitute prejudice. Quite the contrary, our jurisprudence suggests that any amount of actual jail time has Sixth Amendment significance." *Id.*

Under the circumstances, in this particular case, Movant has ably demonstrated that trial counsel's performance was deficient and that Movant was prejudiced therefrom.

## XII. TRIAL COUNSEL WAS INEFFECTIVE FOR SUGGESTING A DEFENSE THAT WAS NOT LEGALLY VIABLE

When requesting a particular jury instruction, a defendant has the burden of showing that the requested charge accurately states the law. *See, e.g., United States v. Paccione,* 949 F.2d 1183, 1200 (2nd Cir. 1991). A determination by the district court that there is no foundation for the charge must be upheld in the absence of an abuse of discretion. *See United States v. Hurtado,* 47 F.3d 577, 585, (2nd Cir., 1995).

In the instant case, there are numerous problems discussed below that either individually and/or cumulatively support counsel's deficient performance and the prejudice derived therefrom.

### CONCESSION OF GUILT IN THE CLOSING ARGUMENT

Trial counsel, during closing, conceded that Movant sold cocaine in Lebanon, and, under the guise of self defense, conceded Movant's guilt to discharge of firearms. Movant submits excerpts from counsel's closing and the charge of the court:

Trial Counsel: "(Y)eah, (Movant) sold cocaine in Lebanon." TT. at 1104.

\*          \*          \*

Court:         "Now there have been some suggestion that self-defense
                might apply in this case. I am instructing you that if you

find beyond a reasonable doubt that (Movant) possessed
a firearm and that he possessed a firearm to further drug
trafficking, self-defense, and that claim does not apply."
TT. at 1161-62.

## CONCESSION THAT MOVANT SOLD COCAINE IN LEBANON

There is general agreement in the case law and the rules of
professional responsibility, that the authority to make decisions regarding
the conduct of a criminal case is divided between lawyer and client. *Jones v.
Barnes,* 463 U.S. 745, 751 (1983). However, certain decisions are deemed
"fundamental" and reserved to the client. Among the "fundamental"
decisions is the right to plead guilty or stand trial. *Brookhart v. Janis,* 384
U.S. 1,6 (1966), Model Rules of Profession Conduct, Rule 1.2(a).

During his closing argument, trial counsel made a statement that
Movant was a drug dealer, but neither a member of drug conspiracies nor
did he aid and abet them. TT. at 1104.

Counsel's closing was the functional equivalent of a plea of guilty to
several counts of the indictment. The record does not indicate the
admissions were made with the client's consent. In fact, Movant never
consented to counsel's admissions. *Wiley v. Souders,* 647 F2d 642,648 (6th
Cir. 1981)("an attorney may not admit his client's guilt which is contrary to
his client's earlier entered plea of not guilty unless the defendant
unequivocally understands the consequences of the admissions."); *Francis v.
Spraggins,* 720 F2d 1190 (11th Cir. 1983) (counsel ineffective for stating in
closing argument that defendant was guilty, although client maintained
innocence.) In the case at bar, the record does not indicate that Movant, the

client, knowingly, intentionally, and voluntarily authorized the closing argument. *Wiley* states, [I] n those rare cases where counsel advises his client that the latter's guilt should be admitted, the client's knowing consent to such trial strategy must appear outside the presence of the jury on the trial record in the manner consistent with *Boykin v. Alabama*, 395 U.S. 238 (1969)." *Id.* at 650. Trial counsel's decision to take a position contrary to the not guilty plea triggers a presumption to prejudice. *United States v. Swanson*, 943 F.2d 1070, 1074 (9th Cir. 1991); *Brown v. Rice,* 693 F.Supp. 381, 396 (WDNC 1988).

## UNDER THE GUISE OF SELF DEFENSE, TRIAL COUNSEL CONCEDED MOVANT'S GUILT TO DISCHARGE OF FIREARMS

For the sake of brevity, and for the same reasons stated above, counsel's conduct was deficient and Movant was prejudiced therefrom. Moreover, it can be argued that the Court *sua sponte* directed a verdict for the government by suggesting that self defense might apply. And the only way self-defense would apply is to first assume Movant discharged firearms.

## XIII. TRIAL COUNSEL WAS INEFFECTIVE FOR NOT SUBMITTING, UNDER Fed. R. Crim. P. 29 and 33, THAT THE EVIDENCE WAS INSUFFICIENT TO SUPPORT A FINDING OF GUILT ON COUNTS 3, 4, AND 6 ON THE GOVERNMENT'S THEORY OF AIDING AND ABETTING. APPELLATE COUNSEL WAS INEFFECTIVE FOR NOT CHALLENGING THE DISTRICT COURT'S DISCRETION ON GIVING AN AIDING AND ABETTING INSTRUCTION.

A defendant may not constitutionally be convicted of a criminal offense except by proof that establishes quilt beyond a reasonable doubt. *See In re Winship,* 397 U.S. 358, 368 (1970). At trial, defendants challenge the legal sufficiency of the evidence, the proof, in moving for a

judgment of acquittal pursuant to Fed. R. Crim. P. 29. A "mere modicum" of evidence is not sufficient to support a finding of guilt beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 320 (1979). Instead, there must be substantial evidence to support the verdict. *Glasser v. United States,* 315 U.S. 60, 80 (1942). A motion for judgment of acquittal may be granted "after the evidence on either side is closed if the evidence is insufficient to sustain a conviction, for the crime charged. Fed. R. Crim. P. 29(a). The defendant typically makes the motion at the end of prosecution case and again at the end of the defense case, though the court may also grant the relief on it own motion. *See, e.g., United States v. Calderone,* 917 F.2d 717, 718 (2nd Cir. 1990) (granting Rule 29 motion for seven defendants). A rule 29 motion also may be made or renewed within seven days after the jury returns a verdict of guilty or is discharged, "whichever is later [.]" Fed. R. Crim. P. 29(c)(1). In contrast to a challenge to the legal sufficiency of the evidence under Fed. R. Crim. P.29, a motion for a new trial under Fed. R. Crim. P. 33 permits the Court to evaluate the weight of the evidence and the credibility of witnesses. *United States v. Sanchez,* 969 F.2d 1409, 1414 (2nd Cir. 1992).

In the matter at bar, trial counsel provided ineffective assistance when he failed to move for a judgment of acquittal pursuant to Rule 29 and/or a new trial under Rule 33.

**THE EVIDENCE WAS INSUFFICIENT TO SUPPORT A FINDING OF GUILT ON COUNTS 3, 4 AND 6 ON THE GOVERNMENT'S THEORY OF AIDING AND ABETTING**

Counts 3, 4, and 6, in part, state "Christopher Ames, Eric Sanchez and [Movant], aided and abetted by each other … [a]ll in violation of Title 18, United States Code, … Section 2.

Whether or not to give an aiding and abetting instruction, is a matter within the discretion of the trial court, provided there is evidence sufficient to support a finding of guilt on the theory. *See. e.g., (Larry D.) Hawthorne v. United States,* 829 A.2d 948, 952 (D.C. 2003); *Edwards v. United States,* 767 A.2d 241, 251). That means, at a minimum, that there must be evidence to support that someone else acted as a principal, as "[o]ne cannot aid and abet himself." *Brooks v. United States,* 599 A.2d 1094, 1099 (D.C. 1991) (quoting *United States v. Martin,* 747 F.2d 1404, 1407 (11th Cir. 1985)). It is not enough that two or more persons acted in concert; there must be a principal actor … the prosecution must establish that "someone ha[s] that status. *Gayden v. United States,* 584 A.2d 578, 582 (D.C. 1990) (quoting *United States v. Staten,* 189 U.S. App. D.C. 100, 108, 581, F2d 878, 887 (1978) (interpreting federal aiding and abetting statute, 18 U.S.C. § 2(a))). Otherwise, there is a risk that the jury might convict without the necessary preliminary finding that a "crime was committed by someone, " who was assisted by the defendant. Noting that "there must be evidence that someone other than the defendant was the principal whom the defendant aided and abetted. But to convict for aiding and abetting, the logic is inescapable that there must be another person who acted as the principal.

In the matter at bar, the prosecution never identified the principal whom the Movant was alleged to have aided and abetted.

Not only was there insufficient evidence to support a finding of guilt on the aiding and abetting theory, the Court, in addition, abused its discretion in giving the aiding and abetting instruction. The bottom line – insufficient evidence calls for vacation of the convictions on counts 3, 4, and 6. Counsel's deficient performance in not moving for judgment of acquittal and/or motion for a new trial based on the above analysis prejudiced Movant by increasing his punishment.

## APPELLATE COUNSEL WAS INEFFECTIVE FOR NOT CHALLENGING THE DISTRICT COURT'S DISCRETION ON GIVING AN AIDING AND ABETTING INSTRUCTION

For reasons stated earlier, the trial clearly supports that a principal was never established. This leaves defendants, to include Movant, at most, acting in concert with other alleged aiders and abettors. The jury, therefore, convicted Movant without the necessary preliminary finding that a "crime was committed by someone", the principal, who as assisted by Movant. Without a unanimous verdict as to which theory of liability Movant was convicted of, the Court abused its discretion in giving the aiding and abetting instruction, because the evidence was insufficient to support such an instruction. Appellate counsel should have addressed this non-frivolous claim on appeal. Unfortunately, he did not and Movant was prejudiced as his conviction and sentences on Counts 3, 4, and 6 were otherwise affirmed.

## XIV. COUNSEL'S CUMULATIVE ERRORS VIOLATED MOVANT'S FIFTH AMENDMENT DUE PROCESS RIGHT AND SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL

The Third Circuit has held that even where no single error by counsel amounts to ineffective assistance, the cumulative effect of counsel's errors may require habeas corpus relief. *See United States v. ex. rel. Sullivan v. Cuyler,* 631 F.2d 14, 17 (3rd Cir. 1980); *see also Strickland v. Washington,* 466 U.S. at 695-96 (discussing prejudice in terms of multiple errors); *Crisp v. Duckworth,* 743 F.2d 580, 583 (7th Cir. 1984) ("even if individual acts or omissions are not so grievous as to merit a finding of incompetence or of prejudice from incompetence, their cumulative effect may be substantial enough to meet the *Strickland* test."), *cert. denied,* 469 U.S. 1226 (1985).

While each of trial and appellate counsel's errors were unreasonable, the totality of the errors without question rendered counsel's performance as a whole constitutionally ineffective. Counsel's errors, flaws in the indictment, and, the jury instructions, as well as many other flaws that were painstakingly described throughout this brief, were not brought to the attention of the jury, nor to the Court. Thus counsel's performance as a whole was objectively unreasonable. As discussed above, the cumulative effect of these errors prejudiced Movant and must surely "undermine confidence in the outcome" of this case. *Strickland,* 466 U.S. at 694.[18]

## AN EVIDENTIARY HEARING IS NECESSARY AND WOULD BE USEFUL TO THE COURT

---

[18]    *See also United States v. Russel,* 2002 U.S. App. LEXIS 9538 (4TH Cir. 5-20-02)(vacating denial of motion pursuant to 28 U.S.C. § 2255 and remanding on claim of cumulative error of counsel); *Killian v. Pool,* 282 F.3d 1204; 2002 U.S. App. LEXIS 3887 (9TH Cir. 2001); *Johnson v. Newland,* 1999 U.S. Dist LEXIS 427 1994); *Harris By and Through Ramseyer v. Blodgett,* 853 F.Supp. 1239 (W.D. Wash. 1994); *Harris v. Wood,* 64 F.3d 1432 (9th Cir. 1995); *Mak v. Blodgett,* 970 F.2d 614; 1992 U.S. App. LEXIS 15964 (9TH Cir. 1992).

In the instant case as set forth in the § 2255 motion, and the foregoing arguments, Movant has pleaded, presented evidence and argued applicable law to demonstrate that his convictions and sentences are violative of his rights secured under the Fourth, Fifth, Sixth, and Fourteenth Amendments. Movant, after all, is not required to prove his case in the § 2255 motion papers. *See Blackledge v. Allison,* 431 U.S. 63, 80-81 (1977). Indeed, numerous courts have noted that ineffective assistance of counsel claims normally can not be resolved without a hearing. *E.g., United States v. Gaviria,* 116 F.3d 1498, 1512 (D.C. Cir. 1997) ("ineffective assistance of counsel claims usually require an evidentiary hearing"); *Virgin Islands v. Weatherwax,* 20 F3d 572, 573 (3rd Cir. 1994) (petitioner entitled to evidentiary hearing on ineffective assistance of counsel claim where facts viewed in light most favorable to petitioner would entitle him to relief); *United States v. Walls,* 80 F.3d 238, 243 (7th Cir 1996) ("The record from the trial court is almost never sufficient to reveal an attorney's ineffectiveness"); *United States v. Nahodil,* 36 F.3d 323, 327 (3rd Cir. 1994) [Same holding as *Virgin Islands v. Weatherwax, supra.*]; *Stoia v. United States,* 33 F.3d 766, 768 (7th Cir. 1994)(Same); *Shaw v. United States,* 24 F. 3d 1040, 1043 (8th Cir. 1994)(Same); *Nichols v. United States,* 75 F.3d 1137, 1145-46 (7th Cir. 1996) (petitioner entitled to evidentiary hearing on claim of ineffective assistance of counsel when record inconclusive on issue); *United States v. Witherspoon,* 231 F. 3d 923 (4th Cir. 2000)(petitioner entitled to evidentiary hearing when motion presented colorable claim and unclear whether counter affidavit disputed all of defendant's allegations); *Guy v. Cockrell,* 343 F.3d 348 (5th Cir. 2003)(disputed issues of material fact require evidentiary hearing.)

Based on all of the foregoing, Movant respectfully requests this Honorable Court to order an evidentiary hearing.

## CONCLUSION

For all the foregoing reasons set forth herein, Movant Ahmed Walker asks this Court to grant his § 2255 motion and vacate his convictions and sentences. And, for such other and further relief as this Court may deem just and proper.

Respectfully submitted,

Ahmed Walker
Reg. No. 10837-067
US Penitentiary Allenwood
P.O. Box 3000
White Deer, PA 17887

Movant, *pro se*

Dated: 7-9-08

Certified Mail 7006 2150 0004 7644 5443

## PROOF OF SERVICE

I HEREBY CERTIFY that the original Memorandum of Law in support of Movant's Motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C § 2255 was given to prison authorities on the _9th_ day of _July_ 2008, for certified mailing to the United States District Court for the Middle District of Pennsylvania, at the below address:

Office of the Clerk
United States District Court
Middle District of Pennsylvania
U.S. Courthouse
228 Walnut Street
P.O. Box 983
Harrisburg, PA  17108

Certified Mail 7006 2150 0004 7644 5443

Ahmed Walker

Witnessed by:

J. KAMINSKI
Unit Management Specialist
USP Allenwood Case Manager
Authorized to Administer Oaths

J. Kaminski, Case Manager, Authorized by the Act of July 7, 1955, as amended to administer oaths (18 USC 4004)