# ADDENDUM

# EXHIBIT A

Commonwealth of Pennsylvania



EXHIBIT

A

# AFFIDAVIT OF PROBABLE CAUSE

## COUNTY OF LEBANON

| Docket Number (Issuing Authority): | Police Incident Number: 00-07-0939 | Warrant Control Number: |
|---|---|---|

**PROBABLE CAUSE BELIEF IS BASED UPON THE FOLLOWING FACTS AND CIRCUMSTANCES:**

That the Affiant does hereby request that the Issuing Authority grant a request for a search warrant based upon the following information. That the subject, Ahmed Walker was involved in an incident on July 18, 2000 around 4:00PM involving a shooting in the area of Lebanon Village Lebanon, PA. That it is believed that the subject, Ahmed Walker did at the time of the incident at Lebanon Village possess and discharge a firearm. Ahmed Walker was subsequently arrested for the stated incident. Several witnesses did identify Walker as being in the area of the shooting just moments before the shooting began and that a juvenile witness does identify Walker as being one of the subjects who did fire a handgun during the stated incident. Walker also did admit to Lt. Kauffman his presence at Lebanon Village during the shooting

That on July 21, 2000, at about 10:22PM, the subject, Ahmed Walker was shot by an unknown person on North 9th Street in the area of Church Street. That subject Ahmed Walker was struck by one of the bullets in the hand. That as a result of being struck by a bullet, the hand did bleed. That a trail of blood from the wound suffered by Ahmed Walker was followed to the location of 315 rear North 9th Street, the residence of Ahmed Walker. The landlord of 315 N. St. Apt. #3, Keith Donnachie, did contact your affiant at approximately 1200 hrs. 07-21-00 and stated, Ahmed Walker does reside at said address.

That the Affiant having knowledge that the subject, Ahmed Walker, was in possession of a firearm on July 18, 2000 and it is believed that he was in possession of a weapon on July 21, 2000 during which he was shot and wounded and fled to his apartment prior to seeking medical treatment at the Good Samaritan Hospital.

That your affiant is a Detective with the Lebanon City Police Department and that 315 N. 9th St. Apt. #3 is within my jurisdiction.

I, THE AFFIANT, BEING DULY SWORN ACCORDING TO LAW, DEPOSE AND SAY THAT THE FACTS SET FORTH IN THE AFFIDAVIT ARE TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE, INFORMATION AND BELIEF.

_____     7-21-00     _____     July 21, 2000 (SEAL)
Affiant Signature            Date         Issuing Authority Signature    Date

Page ___ of ___ Pages

| Commonwealth of Pennsylvania |  | APPLICATION FOR **SEARCH WARRANT** AND AUTHORIZATION |
|---|---|---|

**COUNTY OF LEBANON**

| Docket Number (Issuing Authority): | Police Incident Number: 00-07-0939 | Warrant Control Number: 1 |
|---|---|---|

| Det. Todd H. Breiner | Lebanon Police Department 400 S. 8th St. Lebanon, PA | (717)272-6611 | July 21, 2000 |
|---|---|---|---|
| AFFIANT NAME | AGENCY | PHONE NUMBER | DATE OF APPLICATION |

IDENTIFY ITEMS TO BE SEARCHED FOR AND SEIZED (Be as specific as possible):
Any and all handguns, pistols, revolvers, semi-automatic or automatic weapons. Any and all ammunitions or ammunition holders for handguns, pistols, revolvers, semi-automatic or automatic weapons. Any and all articles of clothing or other wearing apparel and papers or documents that may pertain to the incident.

SPECIFIC DESCRIPTION OF PREMISES AND/OR PERSON TO BE SEARCHED (Street and No., Apt. No., Vehicle, Safe Deposit Box, etc.):
An orange brick three (3) story semi-detached apartment house with an address of 315 and 317 North 9th Street. The apartment to be searched is apartment number 3 at 315 North 9th Street. The entrance to apartment number 3 is in the rear of 315 North 9th Street. The entry door to apartment number 3 is dark brown in color. Any location within or outside of apartment number 3 that would be accessible to the subject. Any and all persons present at 315 North 9th Street apartment number 3.

NAME OF OWNER, OCCUPANT OR POSSESSOR OF SAID PREMISES TO BE SEARCHED (If proper name is unknown, give alias and/or description):
Ahmed Leonard Walker date of birth June 23, 1981

| VIOLATION OF (Describe conduct or specify statute): Recklessly Endangering Another Person, Aggravated Assault. Criminal Conspiracy. Criminal Attempt to Commit Homicide | DATE(S) OF VIOLATION: 07-18-00 |
|---|---|

☐ *Warrant Application Approved by District Attorney – DA File No.* _____
(If DA approval required per Pa.R.Crim.P. 2002A with assigned File No. per Pa.R.Crim.P. 107)
☐ *Additional Pages Attached (Other than Affidavit of Probable Cause)*
☐ *Probable Cause Affidavit(s) MUST be attached (unless sealed below)  Total number of pages:* _____

TOTAL NUMBER OF PAGES IS SUM OF ALL APPLICATION, PROBABLE CAUSE AND CONTINUATION PAGES EVEN IF ANY OF THE PAGES ARE SEALED
The below named Affiant, being duly sworn (or affirmed) before the Issuing Authority according to law, deposes and says that there is probable cause to believe that certain property is evidence of or the fruit of a crime or is contraband or is unlawfully possessed or is otherwise subject to seizure, and is located at the particular premises or in the possession of the particular person as described above.

| Signature of Affiant | Lebanon City P.D. Agency or Address if private Affiant | 37 Badge Number |
|---|---|---|

Sworn to and subscribed before me this 21ST day of July 2000 Mag. Dist. No. 52-3-05

| Signature of Issuing Authority | 325 So. Railroad St. Palmyra, PA 17078 (SEAL) Office Address |
|---|---|

**SEARCH WARRANT**
TO LAW ENFORCEMENT OFFICER:

WHEREAS, facts have been sworn to or affirmed before me by written affidavit(s) attached hereto from which I have found probable cause, I do authorize you to search the premises or person described, and to seize, secure, inventory and make return according to the Pennsylvania Rules of Criminal Procedure.

☒ This Warrant shall be served as soon as practicable and shall be served only between the hours of 6AM to 10PM but in no event later than:*
☐ This Warrant shall be served as soon as practicable and may be served any time during the day or night but in no event later than: **
10 P. M. o'clock July 21ST 2000

* The issuing authority should specify a date not later than two (2) days after issuance. Pa.R.Crim.P. 2005(d).
** If the issuing authority finds reasonable cause for issuing a nighttime warrant on the basis of additional reasonable cause set forth in the accompanying affidavit(s) and wishes to issue a nighttime warrant, then this block shall be checked. Pa.R.Crim.P. 2006(g).

Issued under my hand this 21ST day of July 2000 at 6:45 P. M. o'clock.

| Signature of Issuing Authority | 52-3-05 Mag. Dist. or Judicial Dist. No. | Jan. 2, 2006 (SEAL) Date Commission Expires: |
|---|---|---|

Title of Issuing Authority: ☒ District Justice  ☐ Common Pleas Judge  ☐ _____

☐ For good cause stated in the affidavits(s) the Search Warrant Affidavit(s) are sealed for _____ days by my certification and signature. (Pa.R.Crim.P. 2011)

(Date)  (SEAL)

Court of Common Pleas or Appellate Court Justice or Judge)

TO BE COMPLETED BY THE ISSUING AUTHORITY

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA    :    CRIMINAL NO.   1:CR-00-300

       v.           :

CHRISTOPHER AMES       :

FILED
HARRISBURG, PA
MAR 1 4 2001
MARY E. D'ANDREA, CLERK
Per_____
           Deputy Clerk

## MEMORANDUM

On November 1, 2000, Defendant, Christopher Ames, was indicted with charges of, *inter alia*, possessing with intent to deliver a controlled substance, in violation of 21 U.S.C. § 841(a)(1).  Before the court are the following motions submitted by Defendant on February 9, 2001: (1) motion to suppress any evidence relating to the search and seizure of the premises known as 315 North 9th Street, Apartment 3 in Lebanon, Pennsylvania; (2) motion for suppression of all statements; and (3) motion to suppress any and all identifications of the Defendant and photo line-up identifications.  Following the submission of briefs by the parties, the court conducted a suppression hearing on March 1, 2001.  The motions are now ripe for disposition.

## I.    Findings of Fact

On or about the morning of July 21, 2000, two police officers, Detectives Collins and Barrett, were affiants to an affidavit of probable cause for an arrest

warrant for an individual named Ahmed Walker. (Supp. Hear. Gov. Ex. ("Gov.") 1.)
A district justice in Lebanon County, Pennsylvania, signed the arrest warrant for
Walker for the shooting of a two year old girl caught in the cross fire of a shoot-out in
Lebanon Village on July 18, 2000. Walker was arrested on the morning of July 21,
2000. Prior to the arrest, Walker was shot in the hand by an unknown person at
approximately 10:22 p.m. on July 20, 2000 on North Ninth Street in Lebanon,
Pennsylvania.

On July 21, 2000, Lebanon City Detective Todd Breiner, applied for and
obtained a search warrant for apartment 3, at 315 North 9th Street, Lebanon,
Pennsylvania, (the "Apartment") a residence leased by Walker. (Gov. 2.) Detective
Breiner was the affiant for the affidavit of probable cause supporting the warrant
which sought authorization to search the Apartment for weapons and other evidence
related to the July 18, 2000 shooting. (Id. at 2.) Detective Breiner had the search
warrant application and affidavit of probable cause reviewed by Assistant District
Attorney ("A.D.A.") David Arnold before bringing it to District Justice Lee Lehman
to be signed. A.D.A. Arnold advised Detective Breiner to adjust the affidavit in at
least two respects which Detective Breiner did. The A.D.A. subsequently reviewed
and approved the affidavit before District Justice Lehman signed the search warrant
at 5:45 p.m. on July 21, 2000.

At approximately 6:28 p.m. on July 21, 2000, Detective Breiner and
other police officers executed the search warrant and gained entry to the Apartment
with help of the landlord who unlocked the door. Inside, police found Defendant, but
no other persons. After telling the police that his name was Andrew Crespo,

2

Defendant was detained while the police initially cleared the apartment. Following an attempt to confirm "Crespo's" identity, he was released. During the Apartment search, the police found crack cocaine in a pair of blue jeans lying on the floor near where Defendant was standing when the police entered, as well as additional quantities of crack cocaine located in other areas.

On July 22, 2000, Detective Collins displayed a photographic array containing a picture of Defendant to Iris Perez, Otis Osario, and Syreeta Coneth. The display consisted of eight pictures of young males who had the same general physical appearance as Defendant. (Gov. 4.) The only noticeable difference is that the photograph of Defendant is the only one where the subject is not wearing a shirt. Based on the photographic array, Perez and Osario identified Defendant as being involved in the July 18 shooting, and Coneth identified Defendant as "Toon." Through further investigation, Detective Collins was able to ascertain that Defendant's name is Christopher Ames.

On July 26, 2000, Defendant was arrested and charged with possessing with intent to deliver the crack cocaine found in the Apartment on July 21, 2000. Detective Collins testified that soon after the arrest, Collins read to Defendant his *Miranda* rights from a "Lebanon Police Department" form, checking them off as he read them. (Gov. 5.) Detective Collins also hand wrote "Chris Ames" on the top of the form with the *Miranda* warnings and "Read did not sign" on the line where a defendant would normally sign indicating waiver of the *Miranda* rights. Detective Collins signed the form as did another detective as a witness. Detective Collins testified that, although Defendant did not sign the form indicating his waiver,

Defendant did verbally indicate that he understood his *Miranda* rights, waived those rights, and agreed to make a statement. At the suppression hearing, Defendant testified, contradicting Detective Collins by claiming that he was never informed of his *Miranda* rights at the time of the arrest. He testified that he had been informed of his *Miranda* rights several times in the past during prior arrests, but that he would not have made any statements to Detective Collins if he had been read his rights on July 26, 2000. Defendant told Detective Collins the following: that he had been living with Ahmed at the Apartment for a few weeks, he was the person present during the execution of the search warrant on July 21, 2000, he sold drugs to pay the rent, and he was at Lebanon Village at the time of the July 18, 2000 shooting. (Supp. Hear. Def. Ex. ("Def.") 5 at 8-9.)

## II.    Conclusions of Law

In the instant motions, Defendant argues that probable cause was lacking for issuance of the search warrant. He further argues that his oral statements were not voluntarily given because he was not read his *Miranda* warnings. Defendant also argues that the photographic array was unnecessarily suggestive. Accordingly, Defendant asks the court to suppress all physical evidence, oral statements, and identifications based upon the alleged independent police violations. In the alternative, Defendant asks that these three categories of evidence be suppressed because they were all gathered as a result of the execution of the alleged invalid search warrant of July 21, 2000. The court will first discuss the sufficiency of the

search warrant. Next, the court will consider Defendant's objection to the identifications made on the basis of the photographic array. Finally, the court will discuss the oral statements made by Defendant.

## A. Search Warrant

Defendant argues that the affidavit proffered by Detective Breiner is not sufficient to establish probable cause for the search warrant. Defendant presents two arguments that he believes warrant suppression: first, many of the statements in the affidavit do not indicate the basis of knowledge of the affiant, and if they do, there is no corroboration; and second, the affidavit contains two misstatements as to the date of the second shooting. In response, the United States of America ("Government") argues that the affidavit was enough to establish probable cause, even with the misstatement, and alternatively, the physical evidence should not be suppressed because the police acted in good faith in relying on the search warrant, even if it later is found to lack probable cause.

### 1. Probable Cause

Defendant's first argument presents a more difficult issue than the second. The affidavit does indeed make a number of statements that offer absolutely no basis of the affiant's purported knowledge. While many of the statements cannot be credited based on the face of the affidavit, some of the most critical are supported. In the first paragraph, the affidavit states, "Ahmed Walker was . . . arrested for [discharging a firearm in the July 18, 2000] incident." (Gov. 2.) In support the affidavit states, "[s]everal witnesses did identify Walker as being in the area of the

5

[July 18, 2000] shooting just moments before the shooting began and that a juvenile witness does identify Walker as being one of the subjects who did fire a handgun during the stated incident. Walker also did admit to Lt. Kauffman his presence at Lebanon Village during the shooting." (*Id.*) Accordingly, the first paragraph presents a foundation for the affiant's knowledge concerning the first shooting on July 18, 2000. In contrast, the second and third paragraphs of the affidavit offer only conclusive factual statements without any indication of how the knowledge concerning the second shooting on July 20, 2000, was gained.[1] The only statement in those paragraphs which adds credible information useful to the search warrant reads, "[t]he landlord of 315 N.th St. Apt. #3, Keith Donnachie, did contact your affiant at approximately 1200 hrs. 07-21-00 and stated, Ahmed Walker does reside at said address." (*Id.*)

Defendant argues that even the affidavit's statements which describe the basis of their information are insufficient because they are not corroborated. He asserts that references to "several witnesses" who identified Walker as being at the July 18, 2000 shooting and a "juvenile witness" who identified Walker as firing a gun at that shooting, do not support probable cause without corroboration. While the affidavit does not name the witnesses to the July 18, 2000 shooting, there is no indication that the witnesses are confidential informants or anonymous tipsters.

---

[1] At the suppression hearing, Detective Breiner testified that much of this knowledge came from his own first-hand observations; however, there is no way to garner this information from the face of the affidavit.

6

The Sixth Circuit, as well as other courts,[2] has discussed the difference between an anonymous tip and a citizen informant's tip. In *United States v. Pasquarille*, 20 F.3d 682 (6th Cir. 1994), the court held that the police had probable cause to believe that the defendant's van contained evidence of a crime such that an officer's warrantless search of the van did not violate the Fourth Amendment. Probable cause was established from an informant's tip, even when the informant did not give his name, but only identified himself as a transporter of prisoners. The informant told police that he had personally observed the defendant attempting to sell drugs and described the defendant's vehicle and license plate. The court stated:

> Although the name of the informant was not obtained, the record reveals that the informant identified himself or herself as a transporter of prisoners who had just observed an individual attempting to sell drugs at a truck stop off Interstate 24. The fact that the informant identified himself or herself and that he or she personally observed the attempted sale distinguishes this tip from that in <u>Gates</u> wherein the Court found that an anonymous tip from someone who provided no personal knowledge for the information provided was, standing alone, insufficient to provide a basis for probable cause to believe that contraband would be found in the car and home of the defendant.

*Id.* at 687 (citation omitted).

In *Pasquarille*, the Sixth Circuit also discussed its prior *per curiam* opinion of *United States v. Ingram*, No. 92-5367, 1993 WL 5914 (6th Cir. Jan. 13,

---

[2] The Supreme Court in *Illinois v. Gates*, 462 U.S. 213 (1983), also demonstrates the higher level of credibility of a citizen informant. Other circuits' decisions have reflected the presumed credibility of citizen informants. *See, e.g., United States v. Blount*, 123 F.3d 831, 837 (5th Cir. 1997) ("The officers had no reason to disbelieve Ms. Cooksey, or to question her motives or credibility. Cooksey was not an anonymous tipster or a paid informant."); *United States v. Phillips*, 727 F.2d 392, 397 (5th Cir. 1984) ("[W]hen an average citizen tenders information to the police, the police should be permitted to assume that they are dealing with a credible person in the absence of special circumstances suggesting that such might not be the case." (citations and quotations omitted)).

1993) (unpublished) (*per curiam*), cert. denied, 510 U.S. 969 (1993), in which the court concluded that the affidavit, based on an anonymous tip, presented to prove probable cause was insufficient. However, as *Pasquarille* explained:

> The court in *Ingram* stated that had the "citizen informant" been an identified bystander or a victim-eyewitness, a presumption of reliability would have been accorded the statements of the informant without independent corroboration. However, because the "citizen informant" was an anonymous tipster, we held that independent corroboration in addition to the verification of public information was required to provide probable cause. The facts in this case are readily distinguishable from *Ingram*. Here, the informant was identified and was an eyewitness to the alleged crime. Thus, because the informant's account was based on firsthand observations as opposed to "idle rumor or irresponsible conjecture," we presume that the statements are reliable.

Id. at 689 (citations omitted). Thus, the Sixth Circuit recognizes that the issue of credibility is very different in the case of an anonymous tipster as compared with a citizen informant.[3] *See also United States v. Peveler*, 68 F.3d 475, 1995 WL 620961, at *4 (6th Cir. 1995) (unpublished opinion) (finding probable cause for search warrant and distinguishing anonymous tip cases).

In the case *sub judice*, Detective Breiner's affidavit does not name the "several witnesses" or the "juvenile witness" who identified Walker based on the July 18, 2000 shooting. Furthermore, the affidavit fails to offer significant details or any other corroboration to support the credibility of the witnesses. However, there is no indication that any of the witnesses were confidential informants or anonymous tipsters who would be presumptively less reliable than a citizen informant. Moreover, the affidavit does state that Walker had been arrested for the July 18, 2000

---

[3] Other courts recognize this distinction as well. *See supra* n.1.

8

shooting, thus indicating that a probable cause determination for Walker's arrest had already been made. While the affidavit is sorely lacking in many respects, it likely presents enough information to support probable cause. In a close case, a court should defer to the magistrate's finding of probable cause. *U.S. v. Hodge*, 89 F. Supp.2d 668, 678 (D.V.I. 2000); *see also Gates* 462 U.S. at 236; *United States v. Ventresca*, 380 U.S. 102 (1965)) ("[T]he resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants."). Nevertheless, the court need not find as a matter of law that the affidavit is sufficient to support probable cause, because in the following section the court finds that the physical evidence should not be suppressed because the police acted in good faith in relying on the search warrant.

## 2. **Good Faith**

It is well settled that when police rely in good faith on a validly issued warrant, the defendant is not entitled to suppression by application of the exclusionary rule. *See United States v. Leon*, 468 U.S. 897, 922 n.23 (1984) (confining the good faith inquiry to "whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization"); *United States v. Williams*, 3 F.3d 69, 73-74 (3d Cir. 1993). This good faith exception to the general rule that evidence seized without probable cause should be suppressed is based on the premise that the suppression remedy is designed to deter unlawful police conduct. *Leon*, 468 U.S. at 897; *Williams*, 3 F.3d at 73. "[W]hen an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and has acted within its scope, suppression of the fruits of the search . . .

will serve only marginal deterrent purposes which do not justify the substantial costs of exclusion." *Williams*, 3 F.3d at 73 (quoting *Leon*, 468 U.S. at 922) (internal quotations omitted). Therefore, a "warrant issued by a magistrate normally suffices to establish that a law enforcement officer has acted in good faith in conducting the search." *Williams*, 3 F.3d at 73 (quoting *Leon*, 468 U.S. at 922) (internal quotations omitted).

There are four situations in which the *Leon* good faith exception does not apply: (1) where the magistrate issued the warrant in reliance on a deliberately or recklessly false affidavit; (2) where the magistrate abandoned his judicial role and failed to perform his neutral and detached function; (3) where the warrant was based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) where the warrant was so facially deficient that it failed to particularize the place to be searched or the things to be seized. *Leon*, 468 U.S. at 923; *United States v. American Investors of Pittsburgh, Inc.*, 879 F.2d 1087 (3d Cir. 1989). Defendant has not presented evidence which demonstrates that any of the four exceptions may apply. While there was a misstatement as to one of the dates in the affidavit, as discussed in Section II(A)(3), *infra*, the affidavit was not deliberately or recklessly false so as to implicate the first exception. No evidence whatsoever was introduced to place the second exception at issue. While Defendant appears to rely on the third exception, as the court discussed in Section II(A)(1), *supra*, the affidavit presents a close case as to whether probable cause is sufficiently established and is not "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." Finally, the Fourth exception is not met

10

because the warrant does particularize the place to be searched and the things to be seized. (Gov. 2.)

Detective Breiner testified at the suppression hearing[4] that he had the search warrant application and affidavit of probable cause reviewed by A.D.A. David Arnold before bringing it to District Justice Lee Lehman to be signed. A.D.A. Arnold advised Detective Breiner to adjust the affidavit in at least two respects which Detective Breiner did. Detective Breiner further testified that he brought the affidavit to the A.D.A. a second time who reviewed and approved it before District Justice Lehman signed the search warrant. In conjunction with the affidavit being a very close case as to whether the affidavit supported a finding of probable cause, these facts establish that the search of the Apartment was conducted in good faith.

---

[4] Defendant objects to the court considering any evidence beyond the four corners of the affidavit in determining whether the good faith exception to the exclusion rule applies. However, this court agrees that "[a]lthough we may not look to facts outside of the affidavit to determine probable cause, *Whiteley v. Warden*, 401 U .S. 560, 565 n.8 (1971), when assessing good faith we can and must look to the totality of the circumstances *including what [the affiant executing the warrant] knew but did not include in his affidavit.*" *U.S. v. Word*, No. IP 99-106-CR H/F, 2000 WL 724041, at *12 (S.D. Ind. May 31, 2000), *aff'd*, 2001 WL 13133 (7th Cir. Jan. 2, 2001) (emphasis in original); *see also United States v. Dickerson*, 975 F.2d 1245 (7th Cir.1992) (permitting the court to look outside the four corners of the affidavit to assess whether officers executing a facially deficient warrant acted in good faith); *United States v. Owens*, 848 F.2d 462, 466 (4th Cir.1988) (executing officers acted in good faith by relying on information known outside the four corners of warrant and affidavit to identify the place authorized to be searched); *United States v. Gahagan*, 865 F.2d 1490, 1498 (6th Cir.1989) (officers reasonably relied upon defective warrant in part because of information known to the executing officers); *United States v. Burke*, 784 F.2d 1090, 1093 (11th Cir.1986) (upholding search conducted with defective warrant because affiant was present during the search and pointed out error for executing officers); *United States v. Turner*, 770 F.2d 1508, 1511 (9th Cir.1985) (upholding search where warrant contained inaccurate street number in part because the "warrant was executed by an officer who had participated in applying for the warrant and who personally knew which premises were intended to be searched"); *United States v. Clement*, 747 F.2d 460, 461 (8th Cir.1984) (upholding search in which warrant contained incorrect apartment number in part because the executing officer knew, through his investigation, the number of the correct apartment). *But see United States v. Hove*, 848 F.2d 137, 140 (9th Cir.1988) ("*Leon* does not extend, however, to allow the consideration of facts known only to an officer and not presented to a magistrate").

Accordingly, the court will not suppress the physical evidence found at the Apartment.

### 3. Misstatement in Affidavit

Defendant correctly indicates that the affidavit states that the second shooting, of Walker, occurred on July 21, 2000, at 10:22 p.m., when it actually occurred on July 20, 2000. Defendant argues that this misstatement is significant because the search warrant was issued at 5:45 p.m. on July 21, 2000, which was prior to the time that the affidavit stated that the shooting occurred. While this mistaken date could be perplexing, the fact that the stated date created an impossible scenario could only be viewed by the district justice who issued the warrant as a mistake. Any other interpretation would be nonsensical.

At the suppression hearing, Detective Breiner testified that the inclusion of the date of July 21, 2000, was an unintentional typographical error and not a statement made to confuse or mislead the district justice. An inaccurate statement in an affidavit invalidates that affidavit only if the statement was both material to the determination of probable cause and made "knowingly and intentionally, or with reckless disregard for the truth." *United States v. Warren*, 42 F.3d 647, 653 (D.C. Cir. 1994). Because affidavits are "normally drafted by nonlawyers in the midst and haste of a criminal investigation," "hypertechnical reading[s]" must be rejected. *Id.* (quoting *United States v. Ventresca*, 380 U.S. 102, 108 (1965)). *See also United States v. Anderson*, 851 F.2d 384, 390 (D.C. Cir. 1988) (technical defects under Rule 41 do not call for exclusion of the evidence produced by the search). Accordingly, the court finds that the misstatements as to the date of the second shooting do not require suppression of the physical evidence found at the Apartment.

12

## B. Photographic Array Identifications

Defendant argues that the photographic array was unnecessarily suggestive. Defendant first asserts that a photograph of Defendant was circulated in the newspapers which may have affected the witnesses' identifications. However, uncontradicted testimony at the suppression hearing proved that the photograph was not submitted to the newspapers until after the identifications were made by the witnesses. Therefore, Defendant's first argument is without merit. Defendant next argues that the photographic array is not reliable because Defendant's photograph stands apart from the other seven photographs. Defendant asserts that he is the only Caucasian while the other subjects are Hispanic, his hair is shorter than some of the subjects, and he is the only subject not wearing a shirt. With regard to the first objection, testimony at the suppression hearing demonstrated that Defendant uses many Hispanic aliases and the police believed he was Hispanic based on his appearance. The court finds that when viewed in comparison with the other subjects in the photographic array, neither Defendant's skin color nor his ethnicity are noticeably different. Defendant's objection as to hair length is also without merit based upon a review of the photographic array.

Defendant's objection that he is not wearing a shirt while the subjects in the other photographs are, is easily apparent when the photographic array is reviewed. This, however, does not end the inquiry. In *Reese v. Fulcomer*, the Third Circuit explained that "the primary question is whether the suspect's picture is so different from the rest that it suggests culpability." 946 F.2d 247, 260 (3d Cir. 1991) (citing *United States v. Maldonado-Rivera*, 922 F.2d 934, 974 (2d Cir. 1990)). While Defendant's photograph is different from the rest, the court does not find that it

13

suggests culpability on his part. Even if the absence of Defendant's shirt was unnecessarily suggestive, "a degree of suggestiveness does not in itself require exclusion of the evidence." *United States v. Dowling*, 855 F.2d 114, 117 (3d Cir. 1988), *aff'd*, 493 U.S. 342 (1990). This is because "[a] pretrial identification procedure violates due process, and requires exclusion of the testimony based on that procedure, if it is 'so impermissibly suggestive as to give rise to a very substantial likelihood of misidentification.' " *Burkett v. Fulcomer*, 951 F.2d 1431, 1448 (3d Cir. 1991) (quoting *Simmons v. United States*, 390 U.S. 377, 384 (1968)). Even if the identification procedure was unnecessarily suggestive, the issue is "whether its corrupting influence outweighs the reliability of the identification testimony." *Burkett*, at 1448.

In the case at bar, it had only been a matter of days since the witnesses had observed Defendant on July 18, 2000. Furthermore, there has been no testimony that puts the reliability of the identifications in question or suggests that any possible corrupting influence of the photographic array outweighs the reliability of the identifications. After hearing the testimony of Detective Collins stating how the photographic array was put together and shown to the witnesses, as well as the court's own review of the color photographs in the array, the court finds that the array was not impermissibly suggestive.

### C. Oral Statements

Defendant argues that the oral statements made by him were obtained in the absence of *Miranda* warnings and should therefore be suppressed. In *Miranda v. Arizona*, the Supreme Court recognized that "without proper safeguards the process of in-custody interrogation of persons suspected or accused of crime contains

14

inherently compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely." 384 U.S. 436, 467 (1966). To safeguard the uncounseled individual's Fifth Amendment privilege against self-incrimination, the *Miranda* Court held that suspects interrogated while in police custody must be told that they have a right to remain silent, that anything they say may be used against them in court, and that they are entitled to the presence of an attorney, either retained or appointed, at the interrogation. *Id.* at 444.

   Neither Defendant nor the Government dispute that Defendant was in custody or that he was interrogated by Detective Collins at the time of his arrest on July 26, 2000. What is disputed is whether Defendant was informed of his *Miranda* warnings. At the suppression hearing, Defendant testified that no one read him his rights, and that he would not have given any statement if he had been read his rights. Detective Collins testified that he did administer the *Miranda* warnings to Defendant and that Defendant orally waived his rights and agreed to give a statement. Specifically, Detective Collins testified that soon after the arrest, he read to Defendant his *Miranda* rights from a "Lebanon Police Department" form, checking them off as he read them. (Gov. 5.) Detective Collins also hand wrote "Chris Ames" on the top of the form and "Read did not sign" on the line where a defendant would normally sign indicating waiver of the *Miranda* rights. Detective Collins signed the form as did another police officer as a witness. Detective Collins testified that, although Defendant did not sign the form indicating his waiver, Defendant did verbally indicate that he understood his *Miranda* rights, waived those rights, and made a statement.

The contradictory testimony requires the court to make a credibility determination. At the suppression hearing, the Government produced the form with the *Miranda* warnings which was signed by Detective Collins and another officer. (Gov. 5.) Counsel for Defendant indicated to the court that Defendant had not been provided with the form until the morning of the suppression hearing. While the court does admonish the Government to make every effort to avoid any appearance of impropriety, the court does not have reason to find that the form was improperly fabricated. Therefore, the form is useful to corroborate Detective Collins's testimony that he did read *Miranda* warnings to Defendant. Furthermore, although Defendant stated that he would not have made a statement if he was read his rights on July 26, 2000, he also testified that he had been informed of his *Miranda* warnings several times in the past during other arrests and he was aware of his rights at the time of his arrest on July 26, 2000. This paradoxical statement diminishes Defendant's credibility. Therefore, the court finds that Defendant was administered his *Miranda* rights, and accordingly, his motion to suppress his statement will be denied.

SYLVIA H. RAMBO
United States District Judge

Dated: March  14 , 2001.

16

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA        :        CRIMINAL NO.  1:CR-00-300

            v.        :

CHRISTOPHER AMES        :

FILED
HARRISBURG, PA
MAR 14 2001
MARY E. D'ANDREA, CLERK
Per_____
Deputy Clerk

O R D E R

    In accordance with the accompanying memorandum of law, **IT IS HEREBY ORDERED THAT**:

    (1) Defendant's motion to suppress any evidence relating to the search and seizure of the premises known as 315 North 9th Street, Apartment 3 in Lebanon, Pennsylvania, is **DENIED**.

    (2) Defendant's motion for suppression of all statements is **DENIED**.

    (3) Defendant's motion to suppress any and all identifications of the Defendant and photo line-up identifications is **DENIED**.

    (4) Jury selection in the captioned action is <u>rescheduled</u> from March 20, 2001, to Wednesday, April 4, 2001, at 9:30 a.m. in the chambers of Courtroom No. 3, Eighth Floor, Federal Building, Third and Walnut Streets, Harrisburg, Pennsylvania.

SYLVIA H. RAMBO
United States District Judge

Dated: March  14 , 2001.

# EXHIBIT C

* EVIDENCE THAT DID NOT INVOLVE...
+ EVIDENCE INVOLVING DISMISSED COUNT
NONADMISSIBLE.

GOVERNMENT'S AMENDED LIST OF EXHIBITS

UNITED STATES OF AMERICA v. CHRISTOPHER AMES,
ERIC SANCHEZ, AHMED WALKER & ANGEL SANCHEZ

CR. NOS. 1:CR-00-300-01-02-03-04

DATE: FEBRUARY 20, 2002

JUDGE SYLVIA H. RAMBO

MIDDLE DISTRICT OF PENNSYLVANIA

| PLTF | DEF | DESCRIPTION OF OBJECT OR ITEM | IDENTIFIED | EVIDENCE | RULING | WITNESS ON STAND |
|---|---|---|---|---|---|---|
| 1 | | 8 x 10 photographs from 7/18/00 shooting at Lebanon Village: | | | | |
| 1A | | 177 Lebanon Village, facing north | | | | |
| 1B | | 177 Lebanon Village, facing east | | | | |
| 1C | | Front 177 Lebanon Village, outer entrance walkway to front porch | | | | |
| 1D | | Front 177 Lebanon Village, edge of outer entrance walkway to front porch | | | | |
| 1E | | Front 177 Lebanon Village, grass area beneath tree | | | | |
| 1F | | Front 177 Lebanon Village, grass area | | | | |

GOVERNMENT'S AMENDED LIST OF EXHIBITS

UNITED STATES OF AMERICA v. CHRISTOPHER AMES,
ERIC SANCHEZ, AHMED WALKER & ANGEL SANCHEZ

CR. NOS. 1:CR-00-300-01-02-03-04

DATE: FEBRUARY 20, 2002

JUDGE SYLVIA H. RAMBO

MIDDLE DISTRICT OF PENNSYLVANIA

| PLTF | DEF | DESCRIPTION OF OBJECT OR ITEM | IDENTIFIED | EVIDENCE | RULING | WITNESS ON STAND |
|------|-----|-------------------------------|------------|----------|--------|------------------|
| 1G | | 131 Lebanon Village, facing west | | | | |
| 1H | | 135 Lebanon Village, facing west | | | | |
| 1I | | 135 Lebanon Village, facing west | | | | |
| 1J | | 135 Lebanon Village | | | | |
| 1K | | 129 Lebanon Village | | | | |
| 1L | | 131 Lebanon Village, living-room sofa, east wall | | | | |
| 1M | | 131 Lebanon Village, living-room sofa | | | | |
| 1N | | 131 Lebanon Village, living-room floor between sofa and baby swing | | | | |

# GOVERNMENT'S AMENDED LIST OF EXHIBITS

UNITED STATES OF AMERICA v. CHRISTOPHER AMES,
ERIC SANCHEZ, AHMED WALKER & ANGEL SANCHEZ

CR. NOS. 1:CR-00-300-01-02-03-04

JUDGE SYLVIA H. RAMBO

MIDDLE DISTRICT OF PENNSYLVANIA

DATE: FEBRUARY 20, 2002

| PLTF | DEF | DESCRIPTION OF OBJECT OR ITEM | IDENTIFIED | EVIDENCE | RULING | WITNESS ON STAND |
|---|---|---|---|---|---|---|
| 10 | ✳ | 131 Lebanon Village, living-room floor between sofa and baby swing | | | | |
| 1P | | 131 Lebanon Village, living-room floor between sofa and baby swing | | | | |
| 2 | | Photo line up shown to Yesenia Guillen, Otis Osario, Iris Perez, Syreeta Coneth and Heather Lisenby | | | | |
| 3 | | Brown envelope containing PSP Items N-12 thru N-19, N-36 | | | | |
| 4 | | PSP Lab report H0102079-B | | | | |
| 5 | ✳ | | | | | |
| 5A | ✳ | 8 X 10 photograph of 1989 Pontiac 6000 Pa. Registration #CE34560 | | | | |

GOVERNMENT'S AMENDED LIST OF EXHIBITS

UNITED STATES OF AMERICA v. CHRISTOPHER AMES,
ERIC SANCHEZ, AHMED WALKER & ANGEL SANCHEZ

CR. NOS. 1:CR-00-300-01-02-03-04

JUDGE SYLVIA H. RAMBO

MIDDLE DISTRICT OF PENNSYLVANIA

DATE: FEBRUARY 20, 2002

| PL/TF DEF | | DESCRIPTION OF OBJECT OR ITEM | IDENTIFIED | EVIDENCE | RULING | WITNESS ON STAND |
|---|---|---|---|---|---|---|
| 5B | ✱ | Latent print # F2 in situ on 1989 Pontiac 6000 sedan, Pa. registration #CEB4560 | | | | |
| 5C | ✱ | One latent fingerprint lift PSP Item 1.17 | | | | |
| 6 | ✱ | Known fingerprint of Christopher Ames | | | | |
| 7 | ✱ | PSP lab report 901-02881-1 | | | | |
| 8 | ✱ | Lab report HC102079-C (atomic absorption tests on Otis Osario, Jose Miranda, Jason Gerena) | | | | |
| 9 | | Justina Perez's medical records | | | | |
| 10 | | MP8 video cassette tape of parking area of Lebanon Village | | | | |

GOVERNMENT'S AMENDED LIST OF EXHIBITS

UNITED STATES OF AMERICA v. CHRISTOPHER AMES,
ERIC SANCHEZ, AHMED WALKER & ANGEL SANCHEZ,

CR. NOS. 1:CR-00-300-01-02-03-04

JUDGE SYLVIA H. RAMBO

MIDDLE DISTRICT OF PENNSYLVANIA

DATE: FEBRUARY 20, 2002

| PLTF | DEF | DESCRIPTION OF OBJECT OR ITEM | IDENTIFIED | EVIDENCE | RULING | WITNESS ON STAND |
|---|---|---|---|---|---|---|
| 11 | ✳ | Small black Tonita balance | | | | |
| | | NO EXHIBIT 12 | | | | |
| | | NO EXHIBIT 13 | | | | |
| 14 | ✳ | Ralph Lauren polo jeans with belt | | | | |
| 15 | ✳ | One sealed manilla envelope containing:<br>a) one plastic bag containing off white powder<br>b) 15 colorless plastic ziplock bags containing off white chunky substance<br>c) 20 red plastic ziplock bags containing off white powder<br>d) 25 green plastic ziplock bags containing off white powder | | | | |

GOVERNMENT'S AMENDED LIST OF EXHIBITS

UNITED STATES OF AMERICA v. CHRISTOPHER AMES,
ERIC SANCHEZ, AHMED WALKER & ANGEL SANCHEZ

CR. NOS. 1:CR-00-300-01-02-03-04

JUDGE SYLVIA H. RAMBO

MIDDLE DISTRICT OF PENNSYLVANIA

DATE: FEBRUARY 20, 2002

| PLTF | DEF | DESCRIPTION OF OBJECT OR ITEM | IDENTIFIED | EVIDENCE | RULING | WITNESS ON STAND |
|---|---|---|---|---|---|---|
| 16 | ✳ | Lab report H0005697-C | | | | |
| 17 | | Federal .9mm Luger cartridge cases: <br> a) PSP Item N-1 <br> b) PSP Item N-2 <br> c) PSP Item N-3 <br> d) PSP Item N-4 <br> e) PSP Item N-5 <br> f) PSP Item N-6 <br> g) PSP Item N-7 <br> h) PSP Item N-8 <br> i) PSP Item N-9 | | | | |
| 18 | | Winchester .9mm Luger cartridge cases: <br> a) PSP Item N-22 <br> b) PSP Item N-23 | | | | |
| 19 | | PSP Lab report H0101577-B | | | | |

GOVERNMENT'S AMENDED LIST OF EXHIBITS

UNITED STATES OF AMERICA v. CHRISTOPHER AMES,
ERIC SANCHEZ, AHMED WALKER & ANGEL SANCHEZ

CR. NOS. 1:CR-00-300-01-02-03-04

DATE: FEBRUARY 20, 2002

JUDGE SYLVIA H. RAMBO

MIDDLE DISTRICT OF PENNSYLVANIA

| PLTF DEF | DESCRIPTION OF OBJECT OR ITEM | IDENTIFIED | EVIDENCE | RULING | WITNESS ON STAND |
|---|---|---|---|---|---|
| 20 | One ziplock plastic bag with two ziplock plastic bags containing off white chunky material | | | | |
| 21 | Lab Report H99G8791-C | | | | |
| 22 | One plastic bag containing white powder | | | | |
| 23 | Lab Report H9906520-C | | | | |
| 24 | Photographs<br>a) Christopher Ames<br>b) Eric Sanchez<br>c) Juan Espinosa | | | | |
| 25 | 8 X 10 photographs from 3-13-2000 shooting on Federal Street | | | | |
| 25A | 1100 block Federal Street, facing west. | | | | |

GOVERNMENT'S AMENDED LIST OF EXHIBITS

UNITED STATES OF AMERICA v. CHRISTOPHER AMES,
ERIC SANCHEZ, AHMED WALKER & ANGEL SANCHEZ

CR. NOS. 1:CR-00-300-01-02-03-04

DATE: FEBRUARY 20, 2002

JUDGE SYLVIA H. RAMBO

MIDDLE DISTRICT OF PENNSYLVANIA

| PLTF | DEF | DESCRIPTION OF OBJECT OR ITEM | IDENTIFIED | EVIDENCE | RULING | WITNESS ON STAND |
|------|-----|-------------------------------|------------|----------|--------|------------------|
| 25B | | 1100 block Federal Street, facing west | | | | |
| 25C | | 1100 block Federal Street, facing east | | | | |
| 25D | | 1100 block Federal Street, south side parking lot, facing south | | | | |
| 25E | | 1100 block Federal Street, south side parking lot, facing south west | | | | |
| 25F | | 1100 block Federal Street, south side parking lot, facing south east | | | | |
| 25G | | 1114 Federal Street | | | | |
| 25H | | 1114 Federal Street, bathroom | | | | |

GOVERNMENT'S AMENDED LIST OF EXHIBITS

UNITED STATES OF AMERICA v. CHRISTOPHER AMES,
ERIC SANCHEZ, AHMED WALKER & ANGEL SANCHEZ

CR. NOS. 1:CR-00-300-01-02-03-04

JUDGE SYLVIA H. RAMBO

MIDDLE DISTRICT OF PENNSYLVANIA

DATE: FEBRUARY 20, 2002

| PL'TF | DEF | DESCRIPTION OF OBJECT OR ITEM | IDENTIFIED | EVIDENCE | RULING | WITNESS ON STAND |
|---|---|---|---|---|---|---|
| 25I | # | 1100 block Federal Street, LPD items 13 & 14 | | | | |
| 25J | # | 1100 block Federal Street, LPD item 15 | | | | |
| 25K | # | 1100 block Federal Street, LPD item 16 | | | | |
| 25L | # | 1100 block Federal Street, LPD item 17 | | | | |
| 25M | # | 1100 block Federal Street, LPD item 18 | | | | |
| 25N | # | 1100 block Federal Street, LPD item 19 | | | | |
| 25O | # | 1100 block Federal Street, LPD item 20 | | | | |
| 25P | # | 1100 block Federal Street, LPD items 21, 22 | | | | |

GOVERNMENT'S AMENDED LIST OF EXHIBITS

UNITED STATES OF AMERICA v. CHRISTOPHER AMES,
ERIC SANCHEZ, AHMED WALKER & ANGEL SANCHEZ

CR. NOS. 1:CR-00-300-01-02-03-04

JUDGE SYLVIA H. RAMBO

MIDDLE DISTRICT OF PENNSYLVANIA

DATE: FEBRUARY 20, 2002

| PLTF | DEF | DESCRIPTION OF OBJECT OR ITEM | IDENTIFIED | EVIDENCE | RULING | WITNESS ON STAND |
|------|-----|-------------------------------|------------|----------|--------|------------------|
| 25Q | ⌗ | 1100 block Federal Street, LPD item 28 | | | | |
| 25R | ⌗ | 1143 Federal Street | | | | |
| 25S | ⌗ | 1143 Federal Street bathroom | | | | |
| 25T | ⌗ | 1143 Federal Street bathroom | | | | |
| 25J | ⌗ | Bullet hole number one, passenger side, top of windshield near roof line, 1994 purple Chevrolet Cavalier CP, Pa. Registration #APD3144 | | | | |
| 25V | ⌗ | Bullet holes/damage (path of #1), passenger side visor and head/lines area, 1994 purple Chevrolet Cavalier CP, Pa. Registration #APD3144 | | | | |

GOVERNMENT'S AMENDED LIST OF EXHIBITS

UNITED STATES OF AMERICA v. CHRISTOPHER AMES,
ERIC SANCHEZ, AHMED WALKER & ANGEL SANCHEZ

CR. NOS. 1:CR-00-300-01-02-03-04

DATE: FEBRUARY 20, 2002

JUDGE SYLVIA H. RAMBO

MIDDLE DISTRICT OF PENNSYLVANIA

| PLT/F DEF | DESCRIPTION OF OBJECT OR ITEM | IDENTIFIED | EVIDENCE | RULING | WITNESS ON STAND |
|---|---|---|---|---|---|
| 25W # | Bullet hole #2, bottom center of windshield from outside, 1994 purple Chevrolet Cavalier CP, Pa. Registration #APD3144 | | | | |
| 25X # | Bullet hole #2, bottom center of windshield, from inside, 1994 purple Chevrolet Cavalier CP, Pa. Registration #APD3144 | | | | |
| 25Y # | Bullet hole (path of #2), upper center of rear seat, 1994 purple Chevrolet Cavalier CP, Pa. Registration #APD3144 | | | | |

GOVERNMENT'S AMENDED LIST OF EXHIBITS

UNITED STATES OF AMERICA v. CHRISTOPHER AMES,
ERIC SANCHEZ, AHMED WALKER & ANGEL SANCHEZ

CR. NOS. 1:CR-00-300-01-02-03-04

DATE: FEBRUARY 20, 2002

JUDGE SYLVIA H. RAMBO

MIDDLE DISTRICT OF PENNSYLVANIA

| PL'TF DEF | DESCRIPTION OF OBJECT OR ITEM | IDENTIFIED | EVIDENCE | RULING | WITNESS ON STAND |
|---|---|---|---|---|---|
| 26 | Shyda Gun Shop Bills of Sale dated 7/12/2000, ATF Form 4473, Customer Safety Awareness Form, PSP Record of Sale | | | | |
| 27 | 2 cardboard sheets of 5/8 x 5/8 ziplock bags, 1 blue in color, 1 green in color | | | | |
| 28 | Consent to search form signed by Eric Sanchez | | | | |
| 29 | Diagram of Lebanon Village area | | | | |
| 30 | Miranda form signed by Eric Sanchez | | | | |
| 31 | Rent-A-Center agreement | | | | |
| 32 | Rent-A-Center agreement | | | | |

GOVERNMENT'S AMENDED LIST OF EXHIBITS

UNITED STATES OF AMERICA v. CHRISTOPHER AMES,
ERIC SANCHEZ, AHMED WALKER & ANGEL SANCHEZ

CR. NOS. 1:CR-00-300-01-02-03-04

DATE: FEBRUARY 20, 2002

JUDGE SYLVIA H. RAMBO

MIDDLE DISTRICT OF PENNSYLVANIA

| PL'TF | DEF | DESCRIPTION OF OBJECT OR ITEM | IDENTIFIED | EVIDENCE | RULING | WITNESS ON STAND |
|---|---|---|---|---|---|---|
| 34 | | NO EXHIBIT 33 | | | | |
| 34 | | Todd Neumyer curriculum vitae | | | | |
| 35 | | Brown manila envelope containing keltec 9mm, 1 magazine, and two envelopes containing laboratory ammunition | | | | |
| 36 | | Brown manila envelope containing Smith and Wesson double action revolver and laboratory ammunition | | | | |
| 37 | | Brown envelope containing item T-14 | | | | |
| 38 | | Brown envelope containing items N-1 thru N-5 | | | | |
| 39 | | Brown envelope containing item T-2 | | | | |

**GOVERNMENT'S AMENDED LIST OF EXHIBITS**

UNITED STATES OF AMERICA v. CHRISTOPHER AMES,
ERIC SANCHEZ, AHMED WALKER & ANGEL SANCHEZ

CR. NOS. 1:CR-00-300-01-02-03-04

DATE: FEBRUARY 20, 2002

JUDGE SYLVIA H. RAMBO

MIDDLE DISTRICT OF PENNSYLVANIA

| PL'T'F | DEF | DESCRIPTION OF OBJECT OR ITEM | IDENTIFIED | EVIDENCE | RULING | WITNESS ON STAND |
|---|---|---|---|---|---|---|
| 40 | | Brown envelope containing Items N-6 thru N-11 | | | | |
| 41 | | Brown envelope containing Items T-1, T-4, T-5, T-10 | | | | |
| 42 | | Brown envelope containing Items N-27, N-28, N-29, N-30, and N-35 | | | | |
| 43 | | Brown envelope containing Items T-7 and T-11 | | | | |
| 44 | | Brown envelope containing Items N-20 thru N-26 | | | | |
| 45 | | Brown envelope containing Items T-3 and T-15 | | | | |
| 46 | | Brown envelope containing Items N-31 - N-34 | | | | |
| 47 | | Gray with yellow trim shirt | | | | |

GOVERNMENT'S AMENDED LIST OF EXHIBITS

UNITED STATES OF AMERICA v. CHRISTOPHER AMES,
ERIC SANCHEZ, AHMED WALKER & ANGEL SANCHEZ

CR. NOS. 1:CR-00-300-01-02-03-04

DATE: FEBRUARY 20, 2002

JUDGE SYLVIA H. RAMBO

MIDDLE DISTRICT OF PENNSYLVANIA

| PL.TF | DEF | DESCRIPTION OF OBJECT OR ITEM | IDENTIFIED | EVIDENCE | RULING | WITNESS ON STAND |
|-------|-----|-------------------------------|------------|----------|--------|------------------|
| 48 | | Diagram showing locations of cartridges and bullets in Lebanon Village | | | | |
| 49 | | Lebanon City Police Integration Summary | | | | |
| 50 | | Brown envelope containing item T-9 | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

# EXHIBIT D

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,          :          Civil No. : _____
                                   :
                Respondent,        :          Underlying Criminal No.:
                                   :
        v.                         :          1-CR-00-300
                                   :
AHMED WALKER,                      :          (Rambo, J.)
                                   :
                Movant.            :
                                   :

### AFFIDAVIT

STATE OF PENNSYLVANIA )
                      )    SS.:
COUNTY OF UNION       )

I, Ahmed Walker, being duly sworn and under penalties of
perjury, do hereby state as follows:

(1) I am the Movant in the above captioned case and as such,
am familiar with the facts and circumstances of this case.

(2) I was appointed counsel, Terrence McGowan, to represent
me in the above underlying criminal action.

(3) Following Mr. McGowan's appointment, there came a time
when I wrote him several letters in which amongst other things, I
requested that he investigate and interview potential witnesses.
The witnesses names are Maria Rivera and Eric Sanchez.  My
requests followed my review of redacted DEA and ATF reports.

(4) Specifically, in a DEA report dated 4-18-01, an interview
was conducted by Special Agent Mark Andrasi and Officer Marty
Barett with a confidential informant (CI).  The focus of the in-
terview was drug trafficking during the summer months of 2000 to
2001 in Lebanon, Pennsylvania.

(5) During this interview, the CI gave a sworn statement that "he purchased crack cocaine and "wow" brand Heroin from me on ten-twelve occasions." See Attachment One, DEA Report, prepared 04/24/01; and Attachment Four.

(6) The CI also stated that I stored drugs and guns at the residence of my girlfriend Tomika Howard.  Id.

(7) The CI was later identified as Robertito Irazarry.

(8) In the summer of 1999, I was arrested for the assault on my girlfriend's son Rory.  See Attachment Two, affidavit of Maria Rivera, ¶ 2.

(9) While in jail, I was in Isolation from other prisoners. When I was released from jail in January, 2000, I lived with my god mother, Maria Rivera at 442 Pershing Avenue, Lebanon, Penn. until May, 2000, when I moved into a place of my own.

(10) After I was charged with assault on Rory, Rory's mother Tomika, understandably would have nothing to do with me.  In fact, by Court Order, I was to have no contact with Tomika or any member of her family.  I did not violate the Court's Order.  See Attachment Five.

(11) Attachment Three is an affidavit submitted by Eric Sanchez (A) corroborating Maria River's attestation, (B) admitting that I had no dealings with Tomika Howard following the assault on her son Rory.  See Attachment Three.

2

Further your affiant sayeth not.

Dated: 7-9-08

Ahmed Walker
Reg. No. 10837-067
U.S. Penitentiary Allenwood
P.O. Box 3000
White Deer, PA 17887

Sworn to before me

This 9 day of July, 2008.

J. KAMINSKI
Correctional Treatment Specialist

USP Allenwood Case Manager
Authorized to Administer Oaths

J. Kaminski, Case Manager,
Authorized by the Act of July 7,
1955, as amended to administer
oaths (18 USC 4004)

3

# ATTACHMENT ONE

U.S. Department of Justice
Drug Enforcement Administration

### REPORT OF INVESTIGATION

Page 1 of 4

| 1. Program Code R/- | 2. Cross File | Related Files | 3. File No. CW-01-0005 | 4. G-DEP Identifier WCCEL |
|---|---|---|---|---|
| 5. By: SA Mark D. Andrasi At Harrisburg RO | | | 6. File Title AMES, Christopher | |
| 7. ☐ Closed ☐ Requested Action Completed ☐ Action Requested By: | | | 8. Date Prepared 04/24/01 | |

9. Other Officers: Officer Marty Barett Lebanon City Police Department

10. Report Re: Interview of ▮▮▮▮▮▮▮▮▮▮

---

## DETAILS

1. On 18 April 2001 ▮▮▮▮▮▮▮▮▮▮▮▮▮ was interviewed relative to his knowledge of drug trafficking in Lebanon, Pennsylvania. Present during the interview were SA Mark Andrasi and Officer Marty Barett.

2. ▮▮▮▮▮▮ stated that he is a life-long resident of Lebanon, PA. and a user of crack cocaine. ▮▮▮▮▮▮ stated that he acquired the crack cocaine from a variety of sources.

3. ▮▮▮▮▮▮ stated that he had purchased $40 of crack cocaine from Bayeh SILLS nearly every day for approximately a two month period. ▮▮▮▮▮▮ said that he purchased ½ ounce of crack cocaine and approximately 1 ounce of marijuana from SILLS around New Years day of 2001.

4. ▮▮▮▮▮▮ said that he learned from ▮▮▮▮▮▮▮▮▮▮▮▮▮▮, that SILLS is partners in the crack cocaine distribution business with Chelsee YOCUM and that SILLS acquires the crack cocaine which he distributes in Lebanon from a source of supply in Philadelphia, PA. ▮▮▮▮▮▮ said that he purchased 1/16 ounce quantities of crack cocaine from YOCUM on two or three occasions during the summer of 2000. ▮▮▮▮▮▮ said that he would go to YOCUM's apartment in the Brookside apartment complex to acquire the crack cocaine from her. ▮▮▮▮▮▮ recalled while at this residence on one occasion seeing a 9mm handgun in YOCUM's bedroom. ▮▮▮▮▮▮ said that SILLS told him that he and YOCUM had fired several

| 11. Distribution: Division District Other NDAS/SARI | 12. Signature (Agent) SA Mark D. Andrasi | 13. Date 6.11.01 |
|---|---|---|
| | 14. Approved (Name and Title) Richard A. Ford RAC | 15. Date |

DEA Form - 6
(Jul. 1996)
    MDA

**DEA SENSITIVE**
Drug Enforcement Administration

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

Previous edition dated 8/94 may be used.

U.S. Department of Justice
Drug Enforcement Administration

## REPORT OF INVESTIGATION

*(Continuation)*

| 1. File No. | 2. G-DEP Identifier |
|---|---|
| CW-01-0005 | WCC01 |

3. File Title
AMES, Christopher

4.
Page 2 of 4

6. Date Prepared
04/24/01

5. Program Code
N/A

---

shots into the air on New Years eve of 2001 near 9th Street in Lebanon,
PA.

5. ▇▇▇▇▇ said that the following individuals are associated with and
distribute crack cocaine on behalf of SILLS and YOCUM: Dawn CORNELIOUS,
Nafeece SILLS, Terrence IRVIN, Hector CASTRO, Chris BARRETT@ Dutch and
@ Sony. ▇▇▇▇▇ said that he also observed YOCUM with Eric SANCHEZ and
Ahmed WALKER. ▇▇▇▇▇ said that in the summer of 2000 he observed
SILLS giving a sandwich bag full of crack cocaine to CORNELIOUS.
▇▇▇▇▇ said that he purchased $40 bags of crack cocaine from
CORNELIOUS on approximately 6 occasions.

6. ▇▇▇▇▇ stated that on one occasion he went to the basement of SILLS
residence to acquire crack cocaine. According to ▇▇▇▇▇, on this
occasion he entered the basement of the residence where he was
confronted by IRVIN ▇▇▇▇▇ said that IRVIN pointed a long barrel
shotgun at him and said that he was just messing around with him.
▇▇▇▇▇ said that he then purchased $60 worth of crack cocaine from
IRVIN. ▇▇▇▇▇ said that also present during this occasion were @Sony,
Nafeece SILLS and Bayeh SILLS. ▇▇▇▇▇ said that he observed Nafeece
SILLS with a .22 caliber pistol and Bayeh SILLS with a chrome 9mm
handgun.

7. ▇▇▇▇▇ said that he also purchased crack cocaine and "Wow" brand
heroin from Ahmed Walker on 10-12 occasions. ▇▇▇▇▇ said that he paid
WALKER $20 for 4 bags of heroin and $20 for three bags of crack
cocaine. According to ▇▇▇▇▇, WALKER distributed crack cocaine for
Eric SANCHEZ. ▇▇▇▇▇ said that he has know SANCHEZ for approximately
2 years and has purchased bags of heroin and crack cocaine from him. Julio
▇▇▇▇▇ said that he was also present when SANCHEZ gave ▇▇▇▇▇
¼ ounce quantities of crack cocaine on 5-6 different
occasions. ▇▇▇▇▇ said that ERIC SANCHEZ and ▇▇▇ are being supplied
with crack cocaine by Angel SANCHEZ. ▇▇▇▇▇ said that he observed
Angel SANCHEZ give ▇▇▇ 40-$20 bags of crack cocaine on 3 occasions.
According to ▇▇▇▇▇, WALKER stored drugs and guns at the residence of
his girlfriend, Tamika HOWARD. ▇▇▇▇▇ said that he purchased $20 bags
of crack cocaine from HOWARD. ▇▇▇▇▇ said that he observed a safe at

**DEA SENSITIVE**
Drug Enforcement Administration

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

Previous edition dated 8/94 may be used.

DEA Form  - 6a
(Jul. 1996)

U.S. Department of Justice
Drug Enforcement Administration

## REPORT OF INVESTIGATION

*(Continuation)*

| | |
|---|---|
| 1. File No. CW-01-0005 | 2. G-DEP Identifier WCC31 |
| 3. File Title AMES, Christopher | |

| | |
|---|---|
| 4. Page 3 of 4 | 6. Date Prepared 04/24/01 |
| 5. Program Code N/A | |

HOWARD's residence which contained several ounces of crack cocaine. According to ▮▮▮▮▮▮, this safe was located in HOWARD's baby's room.

8. During his relationship with WALKER and SANCHEZ, ▮▮▮▮▮▮ said that WALKER told him that he was involved in the shooting at Lebanon village and actually fired some shots there. According to ▮▮▮▮▮▮, SANCHEZ told him that the shooting at Lebanon Village was caused by Earl ROBINSON wanting to take full control of all drug distribution in Lebanon Village. ▮▮▮▮▮▮ said that ROBINSON fired the first shot at Lebanon Village. ▮▮▮▮▮▮ also said that he heard that ANGEL SANCHEZ and @NA were also at the Lebanon Village shooting incident.

# ATTACHMENT TWO

County of Lebanon    )
                         ) ss:                             Page 1 of 2
State of Pennsylvania  )

### AFFIDAVIT OF MARIA RIVERA

    I, Maria Rivera, being duly sworn and depose says:

1. I am over the age of eighteen, and make this affidavit at the request of my God-son Mr. Ahmed Walker.

2. Ahmed was arrested in the summer of 1999 for the alleged assault of his then girlfriend's son, Rory.

3. When Ahmed was released from jail in January of 2000, he came to live with me at 442 Pershing Avenue, Lebanon, PA  17042 until he moved into a place of his own around May of 2000.

4. While living with me, I insisted that Ahmed attend parenting classes at Jubilee Ministries, and seek employment. Ahmed followed my suggestions and completed the course in parenting, after filing several job sapplications he finally landed a job at Hershey Laundry located in Hershey, PA. However, due to Ahmed having to appear at court for the alleged assault, transportation and health reasons, he was not able to continue working at Hershey Laundry.

5. It was common knowledge that Ms. Tomica Howard disliked Ahmed after he was charged with allegedly assaulting her son, Rory, and their relationship had completely dissolved due to this event.

6. In fact, Ms. Howard was known to have expressed her dislike for Ahmed after the alleged assault had taken place.

7. During the federal trial of Ahmed and my sons, Eric and Angel Sanchez i was approached by Ahmed's attorney, Mr. Terrence McGowan, for the purpose of requesting that I speak to Ahmend about accepting a plea offer from the government, just as I had spoke to my sons.

_Maria Rivera_
Ms. Maria Rivera, affiant

County of Lebanon        )
                         ) ss:                                    Page 2 of 2
State of Pennsylvania    )

## AFFIDAVIT OF MARIA RIVERA

8. While Ahmed was locked up in the Lebanon county prison, I went to visit him as much as I could on the day he had visits on Wednesdays, which was reserved for detainees inprotective custody and administrative custody status.

9. For a short period in the latter part of 2000, I recall being able to visit both Ahmed and my son Eric at the same time, before Ahmed was placed in administrative detention due to some type of behavioral problems.

10. Ahmed normally called my house in the early morning hours about between 12:00am to 1:00am, after he was in administrative segregation and this lasted for most of his time at Lebanon County prison.

11. I was never questioned or interviewed by any attorney in this matter concerning the criminal charges that my sons or Ahmed faced, or concerning anyinformation that I may have possessed that may have assisted in their defense.

Ms. Maria Rivera, Affiant

Sworn to and Subscribed before me

on this 25 day of _____, 2008

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Julie A. Hevorling, Notary Public
City Of Lebanon, Lebanon County
My Commission Expires Sept. 8, 2010
Member, Pennsylvania Association of Notaries

NOTARY PUBLIC

# ATTACHMENT THREE

## AFFIDAVIT OF ERIC SANCHEZ

State of

County of

I, Eric Sanchez, being duly sworn, depose and says:

1. I am the person whose name and signature appears on this affidavit; and am over the age of 18.

2. I was convicted in the United States District Court for the Middle District of Pennsylvania, by way of a guilty plea in criminal case number 1:00-CR-300 (SHR).

3. Prior to entering a guilty plea, I was on trial with several other individuals for alleging violating federal drug and weapon offense, and chose to plead guilty mid-trial.

4. Following my acceptance of the government;s plea offer, I then informed one of my co-defendants (Mr. Ahmed Walker) that I was willing to testify on his behalf concerning the fact that him and I were not involved in any federal drug offenses together.

5. My willingness to testify on Mr. Wlaker's behalf would have concerned the fact that I was an independent drug dealer, even though him and I sometimes dealt with similar customers, as certain individuals alleged in the indictment.

6. Thus, I neither conspired, agreed nor associated, for the purpose of distributing drugs along with Mr. Walker as alleged in the indictment No. 1:00-CR-300.

7. During the periods charged in the federal indictment, which alleged that Mr. Walker and I (along with other individuals) conspired to possess with intent to distribute "Crack Cocaine, Heroin, Powder Cocaine and Marijuana" is simply not true.

8. In fact, I independently sold drugs during the periods charged in the indictment, and my acts were for the sole personal gain and benefit of myself.

9. Specifically, on October 28, 1999, in Lebanon, Pennsylvania, I independently was involved in a controlled buy concerning two (2) bags of crack cocaine to a confidential informant (CI) at a Car wash.

10. Additionally, on July 21, 2000, I allowed law enforcement officers to conduct a search of a rental car in my possession. And, subsequent to this search, officers obtained (1) black Tanita Scales with drug residue and (2) cardboard sheets with green and blue zip lock baggies on them.

_Eric Sanchez_
Mr. Eric Sanchez, Affiant

Page 1 of 2

## AFFIDAVIT OF ERIC SANCHEZ

11. The incidents in paragraphs 9 and 10 above, had nothing to do with Mr. Walker, and to my knowledge during the October 28, 1999 controlled buy Mr. Walker had been locked up in the Lebanon County Prison. Moreover, the items found during the search had absolutely no connection to Mr. Walker whatsoever.

12. My testimony on Mr. Walker's behalf would have included my personal knowledge that Walker had absolutely no dealings with Ms. Tomica Howard, as alleged by one of the government witnesses. Since, any dealings between Mr. Walker and Ms. Howard ended in mid-1999 following Walker's arrest for his alleged assault of Ms. Howard's son, Rory Fisher.

13. I am of aware of the aforementioned information in paragraph 12 because Mr. Walker was living with my mother, Ms. Maria Rivera, following his release from the Lebanon County Prison in January of 2000.

14. My mother, Ms. rivera, is Mr. Walker's God-Mother, and he lived with her until in or about May, 2000, when he obtained his own apartment.

15. Although, Mr. Walker informed me that his attorney would be speaking with me concerning the testimony I was willing to give on behlaf of Mr. Walker, no attonrey or investigator spoke with me thereafter, nor was I questioned or called to testify concerning the matters stated herein.

16. In fact, following my acceptance of the government's plea offer, I was immediately taken from the federal courthouse and returned to the Daulphia County prison.

17. I make this affidavit based on my personal knowledge and belief concerning the matters stated herein, and make it of my own free will, without coercion, force or threat, and what is stated herein is true and correct.

_Eric Sanchez_
Mr. Eric Sanchez, Affiant

Sworn to and Subscribed before
me on this _____ day of _____, 2007.

"AUTHORIZED BY THE ACT OF JULY 27, 1955, TO ADMINISTER OATHS (18 USC 4004)".

_Vince Benton_
CORRECTIONAL TREATMENT SPECIALIST

9/5/07
DATE

_____
NOTARY PUBLIC

Page 2 of 2

# ATTACHMENT FOUR



# U.S. Department of Justice

*United States Attorney's Office*
*Middle District of Pennsylvania*

MCC:CHF:pak

*Federal Building. Suite 220*
*P.O. Box 11754*
*228 Walnut Street*                    *717-221-4482*
*Harrisburg, Pennsylvania 17108-1754    FAX 717-221-4582*

June 13, 2001

Attorney Terry J. McGowan
218 Pine St.
Harrisburg, PA 17101

     RE: **U.S. v. Ahmed Walker**

Dear Attorney McGowan,

     I am enclosing the following items for discovery:

          1)   Your client's pending Lebanon County charges;

          2)   Lebanon receipt/inventory and police report
related to a search at Syreeta Coneth's residence on March 14,
2000;

          3)   Officer Fisher's three page report concerning the
shooting in the area of 9th and Church Streets on July 20, 2000;

          4)   Lt. Pappas' one page supplement regarding the
same;

          5)   Officer Baylor's three page supplement regarding
the same;

          6)   Det. Breiner's five page report concerning threats
to William Diaz;

          7)   Det. Bord's two page forensic report dated March
6, 2001;

          8)   11 pages of reports concerning the alleged theft
of Barb Schutz's car, including her statement;

          9)   Three pages of documents concerning your client's
arrest on July 27, 1999;

Page 2
June 13, 2001

10)   Det. Bord's three page forensic report dated March 6, 2001;

11)   85 pages of Justina Perez's medical records;

12)   Syreeta Coneth's taped statement;

13)   Det. Barrett's 13 page report concerning the Federal Street shooting;

14)   Det. Collins' 14 page report concerning the same;

15)   Officer Baylor's two page report, an unreadable sergeant's one page report, Officer Marley's two page report, Officer Gaidor's one page report, and the dispatch log concerning the same;

16)   10 pages of documents concerning the March 14, 2000, search at Syreeta Coneth's;

17)   Pennsylvania State Police lab report H01-0285-1 dated May 3, 2001;

18)   Pennsylvania State Police lab report H01-03322-1 dated May 7, 2001;

19)   Pennsylvania State Police report H01-2079-C;

20)   Det. Bord's six page forensics report dated April 10, 2001;

21)   27 pages of property records from incident 839;

22)   Four pages of property records and documents from incident 1020;

23)   Receipt inventory from search conducted July 19, 2000;

24)   Lab report H0005696-C;

25)   One page property record of incident 07-863;

26)   Det. Collins 12 page report concerning incident 07-0839;

Page 3
June 13, 2001

27) Lt. Kauffman's one page report concerning the same;

28) Det. Breiner's four page report concerning the same;

29) Det. Edgar's two page report concerning the same;

30) Sgt. Wright's two page report concerning the same;

31) Officer Eggert's one page report concerning the same;

32) Officer Baylor's one page report concerning the same;

33) Officer Sheaf's one page report concerning the same;

34) Lt. Kauffman's one page concerning the same;

35) Officer Baylor's 12 page report concerning the same;

36) Det. Barrett's six page report concerning the same;

37) Jessina Guillen's 17 page statement;

38) 21 pages of documents concerning the July 21, 2000, search of your client's residence;

39) Agent Culp's two page report dated October 16, 2000;

40) Agent Culp's five page report dated November 17, 2000;

41) Agent Culp's three page report and one page written statement dated January 31, 2001;

42) Agent Andrasi's one page report dated January 23, 2001; and

Page 4
June 13, 2001

    Dennis Rittle stated that he traded a 40 Caliber Glock to
Eric Sanchez in return for several $20 bags of crack.  He stated
he initially sold marijuana in pound quantities for Ahmed Walker,
then he began selling a couple of ounces per day of powder
cocaine for Walker.  Later, he began obtaining numerous $20 rocks
of crack cocaine from Walker between two and four times per day.
He observed Walker selling additional quantities of drugs and
knew that Christopher Ames and Eric Sanchez were also selling
with Walker.  He observed Christopher Ames selling heroin.  He
purchased crack cocaine from Christopher Ames.

    Agent Andrasi's report concerning his interview with a
government witness will be received in this office before Friday
and I expect to receive the ballistics report by that time as
well.  I will forward these reports to you as soon as they are
received by me.

    Photographs and physical evidence can be viewed upon
request.

                              Very truly yours,

                              MARTIN C. CARLSON
                              United States Attorney


                              *Christy W. Fawcett*
                              CHRISTY H. FAWCETT
                              Assistant U.S. Attorney


Enclosures

# ATTACHMENT FIVE

IN THE COURT OF COMMON PLEAS OF LEBANON COUNTY, PENNSYLVANIA

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | CRIMINAL DIVISION |
| vs. | Action No. 1999-11158 |
| AHMED L. WALKER | OTN - E 354287-3 |
| | Docket Entries __1 through__ __12__ |

10/04/99 DOCKET TRANSCRIPT; CRIMINAL COMPLAINT; FILED.
282/0000


11/22/99 MOTION TO MODIFY BAIL, FILED.
287/0079
                              CHUCK WASHBURN

11/22/99 RULE TO SHOW CAUSE DTD 12/06/1999, FILED.
287/0079 RULE RETURNABLE:12/22/1999, IN C.R.#1
                              /S/ ROBERT J. EBY, P.J.

12/07/99 CERTIFICATE OF SERVICE BY CLERK OF COURTS OFFICE, FILED.
287/0079


12/22/99 ORDER DTD 12/22/1999, THE MOTION TO MODIFY BAIL IS GRANTED, BAIL IS
288/0422 HEREINAFTER SET AT $50,000., WITH THE SPECIFIC PROVISION THAT THE DEF.
         SHALL HAVE ABSOLUTELY NO       /S/ ROBERT J. EBY, P.J.

12/22/99 CONTACT W/THE ALLEGED VICTIM OF THE SUBJECT OFFENSE OR ANY MEMBER OF
288/0422 THE ALLEGED VICTIM'S FAMILY, FILED.
                              /S/ ROBERT J. EBY, P.J.

12/22/99 CERTIFICATE OF SERVICE BY CLERK OF COURTS OFFICE, FILED.
288/0422


12/30/99 DISTRICT ATTORNEY'S INFORMATION FILED.
289/0000
                              DAVID J. ARNOLD

 1/05/00 WAIVER OF ARRAIGNMENT FILED.
289/0309
                              PROSE

12/21/99 LETTER FROM DISTRICT ATTORNEY BRADFORD H. CHARLES;RE:ADDITIONAL COSTS
291/0144 $8.95, FILED.


 1/21/00 CERTIFICATION OF BAIL AND DISCHARGE FILED.
291/0386


 1/27/00 REQ. FOR CONT. & WAIVER OF RULE 1100 RIGHTS & RIGHT TO A SPEEDY TRIAL,
291/0516 ORDER DTD 01/27/2000, CONT. TO TRIAL TERM 05/01/2000; CALL OF THE LIST
         SCH. FOR 04/20/2000, FILED.    /S/SAMUEL A. KLINE, J.

# ATTACHMENT SIX

IN THE COURT OF COMMON PLEAS OF LEBANON COUNTY, PENNSYLVANIA

COMMONWEALTH OF PENNSYLVANIA | CRIMINAL DIVISION

vs. | Action No. 1999-11158

AHMED L. WALKER | OTN - E 354287-3
| Docket Entries  25 through  36

4/17/00 ORDER DTD 04/12/2000, THE COMPLAINANT HAVING FAILED TO APPEAR, THE
299/0501 PET. TO REVOKE BAIL IS DISMISSED, FILED.
                              /S/ ROBERT J. EBY, P.J.

4/19/00 CERTIFICATE OF SERVICE BY CLERK OF COURTS OFFICE, FILED.
299/0501


5/09/00 REQ. FOR CONT. & WAIVER OF RULE 1100 RIGHTS & RIGHT TO A SPEEDY TRIAL,
302/0195 ORDER DTD 05/10/2000, CONT. TO TRIAL TERM 06/05/2000; CALL OF THE LIST
         SCH. FOR 05/25/2000, FILED.    /S/ ROBERT J. EBY, P.J.

5/25/00 REQ. FOR CONT. & WAIVER OF RULE 1100 RIGHTS & RIGHT TO A SPEEDY TRIAL,
303/0833 ORDER DTD 05/25/2000, CONT. TO TRIAL TERM 07/03/2000; CALL OF THE LIST
         SCH. FOR 06/22/2000, FILED.    /S/BRADFORD H. CHARLES, J

6/22/00 REQ. FOR CONT. & WAIVER OF RULE 1100 RIGHTS & RIGHT TO A SPEEDY TRIAL,
306/0529 ORDER DTD 06/22/2000, CONT. TO TRIAL TERM 09/05/2000; CALL OF THE LIST
         SCH. FOR 08/24/2000, FILED.    /S/SAMUEL A. KLINE, J.

7/21/00 COMM'S. PET. TO REVOKE BAIL STATUS, FILED.
309/0372
                              ELIZABETH JUDD

7/21/00 RULE TO SHOW CAUSE DTD 07/24/2000, FILED.
309/0372 RULE RETURNABLE: 08/02/2000 IN C.R.#1
                              /S/ ROBERT J. EBY, P.J.

7/25/00 CERTIFICATE OF SERVICE BY CLERK OF COURTS OFFICE, FILED.
309/0372


8/04/00 COMM'S. MOT. TO REVOKE BAIL ORDER DTD 08/02/2000, DEF. VIOL. 1 OF THE
311/0170 SPECIFIC COND. NAMELY HE DID NOT REMAIN ARREST FREE THE MOT. TO REVOKE
         BAIL IS GRANTED, BAIL IS

8/04/00 REINSTATED IN THE AMOUNT OF $150,000, THE DEF. SHALL NOT BE ELIGIBEL
311/0170 FOR 10% CASH BAIL, FILED.
                              /S/SAMUEL A. KLINE, J.

8/04/00 CERTIFICATE OF SERVICE BY CLERK OF COURTS OFFICE, FILED.
311/0170


11/07/00 ORDER DTD 11/06/2000, THE CASE IS CONT. TILL 11/22/2000 CALL OF THE
323/0093 LIST, W/ TRIAL TO COMMENCE ON 12/04/2000 ALL TIME TO RUN AGAINST DEF.,
         FILED.                       /S/SAMUEL A. KLINE, J.

# EXHIBIT E





# LEBANON COUNTY MENTAL HEALTH/MENTAL RETARDATION PROGRAM

WILLIAM G. CARPENTER
ROSE MARIE SWANGER
JO ELLEN LITZ
*County Commissioners*

JAMIE A. WOLGEMUTH
*County Administrator*

220 East Lehman Street
Lebanon, PA 17046-3930
Phone: 717-274-3415
Fax: 717-274-0317

WILLIAM F. MENTZER, JR.
*Administrator*

PRISON EVALUATION

NAME: Ahmed Walker

DATE OF BIRTH: June 23, 1980

SOCIAL SECURITY NO. 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

DATE: January 4, 2000

This is an 18-year-old single male who comes from New York but
has lived in the Pennsylvania area recently.  He was admitted to
the prison July 27, 1999 with charges of simple assault,
aggravated assault, reckless endangerment of another person,
endangering welfare of children and possession of cocaine.

The patient has a fairly extensive medical psychiatric history,
having been placed in group homes as a youngster and also
hospitalized and treated with many medications.  He says there is
a possibility of him having hyperactive disorder and that label
was used and he has been treated with medications that he
mentions of Thorazine, Ritalin, Lithium and many others.  He had
indicated at one point that he was practically on every
medication.  He has been more on his own lately out on the street
but got into trouble with these drug charges and other charges.

The patient denies the use of alcohol.  He says that he smokes
marijuana but denies the use of other drugs such as amphetamines,
heroin or cocaine.  He only went to grade 11 in school and much
of his schooling of course apparently came through the group
while he was placed in group homes from age 9 onward.

The patient says he was always hyperactive and says lately this
has changed dramatically.  He describes now not feeling
particularly depressed but says he has no particular energy, no
interest in things, doesn't want to get up during the day and
just does not feel his usual self.  He denies the actual symptoms
or feelings of depression and he admitted that he did not have
any suicidal feelings and never did.  He also says he has some
black outs that he described were very short-lived, perhaps a few
seconds where his thinking goes off and he seems not quite aware
of his environment, but he apparently does not black out or faint
or have a seizure of any type.  He says he has never been

Ahmed Walker - Prison Evaluation
January 4, 2000
Page 2

described as having seizures.  He does have trouble with anger
management but not lately.  He says that this happened before,
but here he does feel tense at times but much more apathetic than
usual.  He described some history of feeling sometimes he would
get angry if someone bumped into him like playing basketball.  He
might have one of these very brief lapses or blackouts where he
felt angry, but apparently did not blow up or hurt anyone.  It
doesn't seem that he really has any history of headaches.

On examination he is a pleasant well-spoken man who seems quite
intelligent but does get a little off on some of his explanations
of things as if his concentration were not focused enough and he
couldn't quite keep the train of thought to go into detail
explaining it, although he does a reasonably good job.  His mood
is not particularly depressed or manic in any way and he smiles
appropriately and he seems to have no thought disorder with any
delusions or any hallucinations.  He in fact described himself as
very manipulative and he also indicated he thought he might need
to see if he was insane or sane, but readily admitted that he was
sane when we spoke to him about that.  There is no indication
that he has any suicidality and he does not appear to be of any
particular danger to others at this time.

DIAGNOSIS: Possible Attention Deficit Disorder by history
           History of Substance Abuse, primarily marijuana

The patient is on no medications at this time and would prefer
not to be on them.  He has asked us to get his medical records
and we can send away for those.  We advised him to contact us if
he has any problems with depression, anger or any sleep
disturbance so that we might use medication if we need to.

Richard Carlson, M.D.
Staff Psychiatrist

CR:mbm



Dear PA

MAILED FROM
U.S. PENITENTIARY

Office of the Clerk
U.S. District Court for the
Middle District of PA
U.S. Courthouse
P.o. Box 983
Harrisburg, PA 17108

PRIORITY MAIL
UNITED STATES POSTAL SERVICE
Visit us at usps.com
Label 107R, January 2006

7006 2150 0004 7644 5443

U.S. POSTAGE
$1.00