# UNITED STATES DISTRICT COURT

# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| | : | |
| UNITED STATES OF AMERICA, | : | Civil No. : _____ |
| Respondent, | : | |
| v. | : | Underlying case No.: |
| AHMED WALKER | : | 1:CR-00-300 |
| Movant, | : | (Rambo, J.) |
| | : | |

---

## MOVANT AHMED WALKER'S MEMORANDUM OF LAW WITH ADDENDUM IN SUPPORT OF HIS MOTION UNDER §2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY.

---

**FILED**
HARRISBURG, PA

AUG 1 8 2008

MARY E. D'ANDREA, CLERK
Per _____ Deputy Clerk

Ahmed Walker
Reg. No. 10837-067
United States Penitentiary Allenwood
P.O. Box 3000
White Deer, PA 17887

Movant, *pro se*

# ARGUMENT

## I.    THE COURT COMMITTED LEGAL ERROR IN GIVING ITS JURY INSTRUCTIONS AND IN DOING SO, CONSTRUCTIVELY AMENDED COUNT 3 OF THE INDICTMENT

In the matter at bar, the Grand Jury, in a second superseding indictment, charged Movant, *inter alia*, with Count 3; to wit possession of a firearm in furtherance of drug trafficking; and Count 4; to wit:  possessing, using, carrying, brandishing, and discharging a firearm in furtherance of drug trafficking and during and in relation to drug trafficking.  The petit jury was not given access to the second superseding indictment.  Instead, the jury relied solely on the court's jury instructions as to what constituted counts 3 and 4.

On February 26, 2002, day 5 of the trial, Judge Rambo instructed the jury. As to counts 3 and 4, Judge Rambo charged as follows:

Now Count 3 of the second superseding indictment charges Ahmed Walker (movant) with carrying <u>or</u> using a firearm during and in relation to a drug trafficking crime <u>or</u> possessing a firearm in the furtherance of drug trafficking on July 12, 2000. *See* trial transcript ("TT.") at p. 1156.

*        *        *

Count 4 of the indictment charges Ahmed Walker with the same offense (as Count 3 only) on another occasion…..   In each of "<u>these</u> counts," (Movant) is charged with either committing the offense himself or aiding and abetting another in committing the offense.  TT. at p. 1157 (emphasis added).

\*   \*   \*

With respect to the (movant), you may find him guilty if you find the government has proven beyond a reasonable doubt that he either <u>carried or used</u> a firearm during and in relation to a drug trafficking offense <u>or</u> that he <u>possessed</u> a firearm in furtherance of a drug trafficking offense. *Id.*

\*   \*   \*

Now there are two legal theories under which (Movant), either as a principal or as an aider and abettor, can be found guilty… TT. at p. 1158.

\*   \*   \*

The first is that (Movant) carried or used a firearm during and in relation to a drug trafficking offense. *Id.*

\*   \*   \*

The second theory under which (Movant) may be found guilty of the offense charged in Counts 3 and 4 of the indictment is the theory that (Movant) possessed a firearm in furtherance of drug trafficking. TT. at p. 1160.

An indictment is constructively amended when the district court's jury instructions effectively "amend(s) the indictment by broadening the possible bases for conviction from that which appeared in the indictment." *United States v. Lee*, 359 F.3d 194, 208 (3rd Cir. 2004). The Third Circuit has held that a constructive amendment is an exceptional category of error because it violates a basic right of criminal defendants, the grand jury guarantee of the Fifth Amendment. *United States v. Syme*, 276 F.3d 131, 154 (3rd Cir. 2002) (applying *United States v. Adams*, 252 F. 3d 276 (3rd Cir. 2001). "A constructive amendment to the indictment constitutes 'a *per se* violation of the Fifth Amendment's grand jury clause'." *Id.* at 148 (quoting *United*

*States v. Castro* 776 F.2d 1118, 1121-22 (3rd Cir. 1985). A constructive amendment of the charges against a defendant deprives the defendant of his/her "substantial right to be tried only on charges presented in an indictment returned by a grand jury." *United States v. Syme*, 276 F.3d 131, 149 (3rd Cir. 2002)(citation omitted). Thus, where a trial court constructively amends by a jury instruction, the Third Circuit's plain error analysis presumes prejudice. *Id.*

Here, the jury instructions informed the jury that Movant could be convicted on the basis of conduct that was not charged in the indictment, of which he had no notice. The trial court not only misrepresented Count 3 altogether, but gave specific instructions that Movant could be found guilty of the misrepresentation, *i.e.* that Movant could be found guilty of Count 3, possession ..., if you find Movant carried or used a firearm during and in relation to a drug trafficking offense. TT. at pp 1156-1160. Movant cannot be convicted on the bases of an alternative theory containing elements that are included in jury instructions, but not charged in the indictment. *Syme, supra.* This allowed the jury to convict Movant for uncharged conduct. Accordingly, the court's instructions improperly amended the indictment. *See, e.g., United States v. Thomas*, 274 F. 3d 655, 670 (2nd Cir. 2001)(constructive amendment occurs when the terms of the indictment are effectively modified by the court's actions such that "there is a substantial likelihood that the defendant may have been convicted of an offense other than that charged in the indictment").[1]

---

[1] Because the error affected the charging terms of the indictment, it is a constructive amendment, not a variance. *See United States v. Castro*, 776 F.2d 1118, 1121-22 § n.1 (3rd Cir. 1985) (distinguishing constructive amendments form variances).

As stated earlier, in conjunction with constructively amending Count 3, one of the two alternative theories supporting the conviction on Count 3 was legally or constitutionally invalid, to wit: "The first (legal theory) is that (Movant) carried or used a firearm during and in relation to a drug trafficking offense." TT. at p. 1158. The Court cannot discount that the jury did not unanimously agree on this alternative theory in finding Movant guilty on Count 3. *See Griffin v. United States,* 502 U.S. 46, 60 (1991) (citing from *United States v. Williams,* 344 F.3d 365, 376-77 n. 6 (3rd Cir. 2003). Under *Griffin,* if one of two or more alternative theories supporting a count of conviction is either (1) unconstitutional, or (2) legally invalid,[2] then the reviewing court should vacate the jury verdict and remand for a new trial without the invalid or unconstitutional theory. *See United States v. Syme,* 276 F. 3d 131, 144 (3rd Cir. 2002) (citations omitted).

Consequently, the Court should vacate the jury verdict on Count 3.

### Trial and Appellate Counsel were ineffective in failing to object to the jury instructions and then to raise the issue on appeal.

To prove that his counsel were ineffective, Movant must show that his attorney's performance was deficient and that he suffered prejudice from this deficient performance. *Strickland v. Washington,* 466 U.S. 668, 687 (1984). Counsel have a duty to research the facts and law. Surely counsel was aware of Movant's charges, yet failed to object to the jury charge on Count 3 as described earlier in this brief. Counsel should have instantly

---

[2]    The Court in *Griffin* explained the distinction in treatment between insufficient evidence and legal error by stating: Jurors are not generally equipped to determine whether a particular theory of conviction submitted to them is contrary to law...When, therefore, jurors have been left the option of relying upon a legally inadequate theory, there is no reason to think that their own intelligence and expertise will save them from that error...502 U.S. at 59.

realized that the court, during its charge to the jury, constructively amended Movant's indictment on Count 3.  Solid, meritorious arguments based on directly controlling precedent should be discovered and timely brought to the Court's attention.  Movant's Counsel failed to meet this standard in that they failed to recognize and argue that in Count 3, Movant was not charged with carrying or using a firearm during and in relation to a drug trafficking crime.  TT. at p. 1156.

In *Syme*, the Third Circuit recognized the difficulty of a defendant proving actual prejudice in the matter at bar.  276 F.3d at 154.  As the Third Circuit explained, it is nearly impossible for a defendant to demonstrate that his/her conviction was based on a particular theory.  *Id.*  Similarly, there is no way to determine whether the jury (unanimously) convicted Movant on the first or second legal theories.  *See id.*  Therefore, it cannot be demonstrated that Movant was not prejudiced.

Trial and appellate Counsel's performance fell below an objective standard of reasonableness.  Counsel's deficient performance prejudiced Movant, resulting in an unreliable or fundamentally unfair outcome in the proceeding.

Movant is entitled to have his conviction and sentence on Count 3 vacated.

## II.    TRIAL COUNSEL WAS CONSTITUTIONALLY INEFFECTIVE FOR FAILING TO MOVE TO SUPPRESS ANY EVIDENCE RELATING TO THE SEARCH AND SEIZURE OF THE PREMISES KNOWN AS 315 NORTH 9TH ST., APT. 3 IN LEBANON, PENNSYLVANIA

The Supreme Court explicitly has extended the right to federal habeas review of Sixth Amendment claims to instances in which the alleged

ineffective representation necessarily implicates a Fourth Amendment claim. *See Kimmelman v. Morrison,* 477 U.S. 365, 382-83 (1986).

Failure to file a suppression motion can amount to ineffective assistance of counsel. *Id.* At 365, 385. But the defendant "must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice." *Id.* At 375 (affirming finding of ineffectiveness).

In *Strickland v. Washington,* the Supreme Court established a two-prong test to evaluate ineffective assistance claims, 466 U.S. 668, 687 (1984). To obtain reversal of a conviction under the *Strickland* standard, the defendant must prove that counsel's performance fell below an objective standard of reasonableness, *Id.* At 687-88, and that counsel's deficient performance prejudiced the defendant, resulting in an unreliable or fundamentally unfair outcome in the proceeding. *Id.* at 687. A defendant's failure to satisfy one prong of the *Strickland* test negates a court's need to consider the other. *Werts v. Vaughn,* 228 F.3d 178, 206 (3rd Cir. 2000) (court did not address prejudice prong because counsel's pretrial investigations and decisions were reasonable).

On January 23, 2002, Counsel filed motions to (1) suppress the oral statements made by Movant at the Good Samaritan Hospital on July 21, 2000, and (2) suppress any evidence regarding the search at 315 North Ninth Street, Apartment Three, Lebanon, Pennsylvania. On January 24, 2002, the Court denied Movant's motion to suppress any evidence at 315 North Ninth Street, Apartment Three, Lebanon, Pennsylvania.

On February 7, 2002, the Court granted Movant's motion to suppress the oral statements made by him at the Good Samaritan Hospital on July 21,

2000.[3]  Doc's 239 & 240.  The Court concluded that "(b)ecause (Movant) invoked his right to have counsel present during interrogation, and Lieutenant Kauffman re-initiated interrogation after the assertion of the right, the subsequent statements were elicited in violation of the Fifth Amendment of the United States Constitution."  *Id.* at 10.

Unfortunately for Movant, his suppressed statements were used anyway, in an affidavit of probable cause to secure a search warrant and authorization to search the premises known as 315 North 9th Street, Apartment 3 in Lebanon, Pennsylvania.  Movant's name was identified on the warrant as name of owner, occupant or possessor of said premises to be searched.  *See* Exhibit A, Application for Search Warrant and Authorization.

Following the successful suppression of Movant's oral statements, counsel <u>never</u> followed up with another motion to suppress any evidence regarding the search at 315 North Ninth Street.  The suppression motion, had it been filed, would have shown that the affidavit of probable cause to secure the search warrant relied heavily on the suppressed oral statements made by Movant on July 21, 2000.  *See* Exhibit B, Memorandum dated March 14, 2001, denying codefendant Christopher Ames' motion to suppress any evidence relating to the search and seizure of the premises known as 315 North 9th Street, Apartment 3 in Lebanon, Pennsylvania.

---

[3]       In response to questions asked by Lebanon City Police Department Lieutenant Daniel Kauffman about the specifics of the July 21, 2000, shooting, Movant nodded his head in affirmation that he knew certain persons, including an individual known as "Boom" and Defendant Angel Sanchez. Moreover, Movant indicated that he had been at the Lebanon Village Apartments on July 18, 2000 – the night of the first shooting. Doc. 239 at 4. He also indicated that he was with Defendant Angel Sanchez that night. *Id* However, he denied involvement in July 18, 2000 shooting and clarified that if he had wounded the victim of that shooting, he would have admitted responsibility. *Id.* Lieutenant Kauffman never read Movant his rights or obtained a written waiver of those rights. *Id.*

Exhibit B reveals that during the Apartment search, the police found crack cocaine in a pair of blue jeans lying on the floor near where Mr. Ames was standing when the police entered as well as additional quantities of crack cocaine located in other areas. *Id.* at p. 3.  Mr. Ames was subsequently arrested and charged with possessing with intent to deliver the crack cocaine found in the apartment on July 21, 2000. *Id.*  To establish probable cause for the search warrant, the government relied heavily on Movant's admissions to Lt. Kauffman, *i.e.* Movant's presence at Lebanon Village during the shooting and his arrest that followed. *Id.* at pp. 6, 8-9. Relying on Movant's responses to questions asked by Lt. Kauffman, the Court found that the affidavit was sufficient to support probable cause and that the police acted in good faith in relying on the search warrant. *Id.*

In *Wong Sun v. United States*, 371 U.S. 471 (1963), it was held that a trial court erred in admitting as accused's statements to the police and also a quantity of drugs (heroin) that was seized from a third party on the basis of the accused statements, where these items of evidence had been obtained following the unconstitutional arrest of the accused, and where the taint of the arrest had not been purged.  The Supreme Court said that the heroin should not have been used as evidence against the accused, since such evidence had been come at by the exploitation of the officer's illegal contact, and since the connection between that conduct and the discovery of the evidence had not become so attenuated as to dissipate the taint of the illegality. *See also Brown v. Illinois*, 422 U.S. 590 (1975) (The absence of other police misconduct) was not enough to attenuate the connection between the police misconduct and the incrimination evidence obtained from the accused during his detention, and thus such evidence was properly suppressed).

8

In the case *sub judice*, without Movant's admissions, there was no probable cause to search his residence. Consequently, any search and seizure was unreasonable and in violation of the Federal Constitution's Fourth Amendment.

Exhibits A & B were a matter of record long before Movant's trial started. Where trial counsel fails to make a motion to suppress because he neglected "to make a reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary", then ineffective representation is shown. *Kimmelman*, 477 U.S. at 385; *Strickland*, 466 U.S. at 691. Movant's trial counsel should have investigated the record and discovered that the search warrant's affidavit of probable cause was premised primarily on Movant's admissions to Lt. Kauffman; admissions that were subsequently suppressed by the Court. Without Movant's admissions, the affidavit was sorely lacking in many respects. *See* Exhibit B at p.9. When this ineffective representation is combined with the equally disturbing fact that trial counsel failed to preserve for appeal any of the claims made here, trial counsel's representation was, indeed, constitutionally ineffective.

Aside from the crack seized from the apartment and used as an evidentiary exhibit in the government's case in chief against Movant, there was no additional evidence of crack <u>sufficient</u> to convict Movant on Counts 5 & 6.[4]

---

[4]     Count 5 – criminal conspiracy to distribute and possess with intent to distribute controlled substances; to wit: 50 grams of crack; and Count 6 – distribution and possession with intent to distribute controlled substances; to wit: 50 grams of crack.

Counsel's deficient performance prejudiced Movant which resulted in an unreliable or fundamentally unfair trial or its verdict, *i.e.* Movant was convicted on Counts 5 & 6.

Accordingly, the convictions and sentences on Counts 5 & 6 should be vacated.

### III.    ONE OF THE ALTERNATIVE THEORIES SUPPORTING MOVANT'S CONVICTION ON COUNT 4 IS EITHER UNCONSTITUTIONAL OR LEGALLY INVALID

Count 4 charged Movant with possessing, using, carrying, brandishing, and discharging a firearm in furtherance of drug trafficking and during and in relation to drug trafficking. According to the verdict form, the jury unanimously agreed that Movant was guilty of possession, use, carry, brandishing the firearm that he possessed, used or carried, discharging the firearm he possessed, used or carried.

In retrospect, as to Count 4, the court charged the jury as follows:

Use of a firearm includes... <u>bartering</u> the firearm during and in relation to the commission of a crime. TT. at p. 1160 (emphasis added).[5]

\*            \*            \*

Now there are two legal theories under which (movant), either as a principal or as an aider and abettor, can be found guilty....
TT. at p. 1158.

\*            \*            \*

The first is that (Movant) carried <u>or</u> used a firearm during and in relation to a drug trafficking offense. *Id.* (emphasis added).

\*            \*            \*

---

[5] "Bartering" referred to the alleged straw purchase of firearms for these defendants by Dennis Rittle on July 12, 2000 in exchange for drugs. TT. at p. 1156.

> The second theory under which (Movant) may be found guilty of the
> offense charged in Counts 3 and 4 of the indictment is the theory that
> (Movant) possessed a firearm in furtherance of drug trafficking.
>
> TT. at p. 1160.

At this stage, it is impossible to discern which legal theory the jury
unanimously agreed on. However, adding insult to injury, one of the two
theories submitted to the jury was legally insufficient due to a subsequent
Supreme Court decision interpreting the statute, 18 U.S.C. § 924 (c)(1)(A).

On December 10, 2007, the United States Supreme Court held a
person does not "use" a firearm under 18 U.S.C. § 924 (c)(1)(A) when he
receives it in trade for drugs. *Watson v. United States*, No. 06-571 (United
States Supreme Court, December 10, 2007). In *Watson*, the government
fruitlessly urged the Supreme Court to import "use" as "receipt in barter"
into § 924 (c)(1)(A). To that end, the Court provided the government no
succor.

Multiple-theory guilty verdicts "based on evidentiary deficiencies
must be treated differently than those based on legal deficiencies." *United
States v. Garcia*, 992 F.2d 409, 416 (2nd Cir. 1993). Where a conviction
<u>may</u> have rested on a ground determined to be unconstitutional, it must be
reversed. *See Stromberg v. California*, 283 U.S. 359, 368 (1931). The same
is true where one of the possible bases of a guilty verdict is shown to be
statutorily defective and "it is impossible to tell which ground the jury
selected." *See Yates v. United States*, 354 U.S. 298 (1957) (one object of
conspiracy barred by statute of limitations). The idea that animates
*Stromberg* and *Yates* is: where "jurors have been left the option of relying
upon a legally inadequate theory, there is no reason to think that their own

11

intelligence and expertise will save them from that error." *Griffin v. United States*, 502 U.S. 46 59 (1991). *See also Garcia*, 992 F. 2d at 416 (Court has reversed convictions under the same statute where instruction on two of the three theories submitted to the jury were legally insufficient due to a subsequent Supreme Court decision interpreting the statute.)

One of the two alternative theories supporting Movant's conviction on Count 4 was legally or constitutionally invalid; to wit: "The first (legal theory) is that (Movant) carried or used a firearm during and in relation to a drug trafficking offense." TT. at p. 1158 (emphasis added). The Court cannot discount that the jury did not unanimously agree on this "either/or" alternative theory in finding Movant guilty on Count 4. *See Griffin v. United States*, 502 U.S. 46, 60 (1991)(citing from *United States v. Williams*, 344 F. 3d 365, 376-77 n.6 (3rd Cir. 2003). Under *Griffin*, if one of two or more alternative theories supporting a count of conviction is either (1) unconstitutional, or (2) legally invalid, then the reviewing court should vacate the jury verdict and remand for a new trial without the invalid or unconstitutional theory. *See United States v. Syme*, 276 F.3d 131, 144 (3rd Cir. 2002) (citations omitted).

Consequently, the Court should vacate the jury verdict on Count 4.

**The Supreme Court's holding in *Watson V. United States*, No. 06-571 was unavailable to Movant's trial and appellate counsel**

---

Courts usually will not entertain a § 2255 motion if the Movant did not raise the claim at trial, or on direct appeal. *See United States v. Frady*,

456 U.S. 152, 162-66 (1982). In order to obtain § 2255 relief despite such procedural default, Movant must show both cause for his failure to assert the claim in earlier proceedings and actual prejudice from the alleged error. *See Frady*, 456 U.S. at 170-71.

Prior to *Watson*, Third Circuit case law wholly embraced "use of a firearm includes bartering the firearm; purchase of firearms in exchange for drugs." The Supreme Court, in *Watson*, recently recognized this not to be true. And instead, interpreted 18 U.S.C. § 924 (c)(1)(A) to mean a person does <u>not</u> use a firearm when he receives it in trade for drugs.

Though the issue was not previously raised by Movant in any prior proceedings, the novelty of the issue constitutes "cause" for procedural default. *Reed v. Ross,* 468 U.S. 1 (1981). A claim is novel when "...its legal basis is not reasonably available to counsel." *Id.* at 16. The legal basis for this issue was sufficiently unavailable to Movant's attorney before the *Watson* case as it was not the subject of any prior federal court decision. *See* the reasoning in *United States v. Gardner,* 417 F.Supp. 2d 703, 707 (D. Md. 2006).

To establish prejudice, Movant must show "not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions. *See Frady*, 456 U.S. at 170.

In *United States v. Syme, supra,* the Third Circuit recognized the difficulty of a defendant proving actual prejudice in the matter at bar. 276 F.3d at 154. As the Third Circuit explained, it is nearly impossible for a defendant to demonstrate that his/her conviction was based on a particular

theory. *Id.* Similarly, there is no way to determine whether the jury (unanimously) convicted Movant on the first or second legal theory. *See id.* Therefore, it cannot be demonstrated that Movant was not prejudiced.

Movant is entitled to have his conviction and sentence vacated on Count 4.[6]

## IV.    COUNT 4 FAILED TO CHARGE MOVANT WITH ANY CODIFIED FEDERAL CRIME

The Sixth, Tenth, and Eleventh Circuit Courts of Appeals treat 18 U.S.C. § 924 (c) as setting forth two separate and distinct offenses.[7] The Third Circuit appears to have not addressed this issue.

Count 4 charged Movant with <u>possessing,</u> using, carrying, brandishing and discharging <u>firearms</u> in furtherance of and <u>during and in relation </u>to drug trafficking crimes .... (underscore added). [8]

Just as *Combs* dissected § 924 ( c ), Movant adopts the analyses in *Combs* and likewise submits as follows:

---

[6]    Assuming *arguendo* the government contends that the Supreme Court's holding in *Watson* was available to trial counsel and that "cause" has <u>not</u> been established, Movant <u>timely</u> asserts that his trial and appellate counsel were constitutionally ineffective. Movant further reserves the right to supplement his § 2255 motion with a memorandum of law briefing ineffective assistance of counsel.

[7] *See United States v. Combs,* 369 F.3d 925 (6th Cir. 2004);*United States v. Lott,* 310 F.3d 1231 (10th Cir. 2002) and *United States v. Timmons,* 283 F. 3d 1246 (11th Cir. 2002). Movant incorporates the reasoning in his arguments from grounds I and III *supra* as if the same were set forth herein.

[8]    Had the government framed Count 4 to read "(Movant" did possess firearms in furtherance of drug trafficking crimes and did use, carry, brandish and discharge firearms during and in relation to drug trafficking crimes, " then at least the government would have charged Movant with federal crimes, albeit two separate and distinct federal crimes. The government admits as much by the way they separated "use" and "possession" when they framed Count 3, (possession offense).

...(A)ny person who, **during and in relation** to any crime of violence or drug trafficking crime...for which the person may be prosecuted in a court of the United States, **uses or carries** a firearm, ("use" offense)

or

who, **in furtherance** of any such crime, **possesses** a firearm, shall, in addition to the punishment for such crime of violence or drug trafficking crime (receive an additional penalty). ("possession" offense)

18 U.S.C. § 924 (c) (emphasis added) (cited from *United States v. Combs*, 369 F. 3d at 930).

The Statutory text, legislative history, and requisite proof argue for the Movant's perspective that 18 U.S.C. § 924(c) criminalizes two separate offenses – (1) using or carrying a firearm during and in relation to a drug trafficking crime, and (2) possessing a firearm in furtherance of a drug trafficking crime. *Combs,* pp. 931-933.

Analogous to *Combs,* in the matter at bar, both the government and the district court confused the elements of the two offenses criminalized by 18 U.S.C. § 924 (c) throughout Movant's proceedings. Admittedly, any attempt to unwind the mismatched elements of the statutory prongs in the indictment, the jury instructions (or lack thereof) and the conviction, exposes the hopelessly "jumbled mess" that resulted. *See United States v. Pleasant,* 125 F.Supp.2d 173, 183 (E.D. Va. 2000).

## COUNT 4 – SUFFICIENCY OF THE INDICTMENT

Movant's indictment on Count 4 charged him with "possess(ing) …
firearms … during and in relation to" drug trafficking crimes – utilizing one
element from each of the two distinct § 924(c) offenses.  Indicting Movant
based on the <u>conduct</u> from the § 924(c) "possession" offense in conjunction[9]
with the <u>standard of participation</u> (during and in relation) from the other
"use" offense results in a failure to charge Movant with <u>any</u> codified federal
crime.  Indistinguishable from *Combs*, the court's jury instructions for Count
4 tracked the indictment error, likewise intermixing elements of the two
different crimes.

The court's jury instructions, moreover, omitted and did <u>not</u> define the
element "during and in relation to" standard of participation.[10]

Because Movant's indictment on Count 4 cannot be reasonably
construed to have charged him with a crime under federal law, his
conviction on Count 4 should be vacated and the indictment dismissed for
failure to charge an offense.

Trial and appellate counsel's deficient performance in this matter
tragically unreasonable which prejudiced Movant – caused him to be
convicted on a charge not codified as a federal crime.

---

[9]    "And", "or" are conjunctions.  "And" was used in Movant's indictment to connect
"possession" to "during and in relation".

[10]    Had an instruction been given, it would have said, "the 'during and in relation to'
element requires that the firearm furthered the purpose or effect of the crime and its
presence or involvement was not the result of coincidence." *Smith v. United States*, 508
U.S. 223, 238 (1993).

## V.    COUNT 4 IS DUPLICITOUS. THIS VIOLATED MOVANT'S SIXTH AMENDMENT RIGHT TO A UNANIMOUS JURY VERDICT

Assuming *arguendo* Count 4 charged Movant with a codified federal crime, then, the government charged Movant with separate and distinct crimes which leaves uncertainty as to whether Movant's conviction on the score, was based on a unanimous jury decision.

Count 4 charged Movant with possessing, using, carrying, brandishing, and discharging a firearm in furtherance of drug trafficking and during and in relation to drug trafficking.

Duplicity is the joining in a single count of two or more distinct and separate offenses." *United States v. Starks*, 515 F.2d 112, 116 (3rd Cir. 1975). It is charging more than one crime in a single count. *United States v. Morse*, 785 F.2d 771, 774 (9th Cir.), *cert. denied*, 476 U.S. 1186 (1986). In the matter at bar, Count 4 – possession of a firearm under 18 U.S.C. § 924 (c) combined with use and carrying of firearms under 18 U.S.C. § 924 (c) – is duplicitous because it charges two separate and distinct crimes. *See United States v. Savoires*, 430 F.3d 376, 377 (6th Cir. 2005). The danger posed by duplicity is the inescapable possibility of a no unanimous jury verdict in contravention of the sixth amendment. Trial counsel did not object to Count 4 on the ground of duplicity. Appellate counsel, moreover, did not follow up on appeal. When the dust settles, there remains uncertainty as to whether Movant's conviction on Count 4 was unanimous either as to "possession" offense, or "use" offense. There remains no way to determine whether the jury unanimously convicted Movant on the possession offense or the use offense; the former requiring a higher standard

of participation than the latter. *See United States v. Combs,* 369 F 3d 925, 933 (6th Cir. 2004). Therefore, it cannot be demonstrated that Movant was not prejudiced.

Accordingly, Movant is entitled to have his conviction and sentence on Count 4 vacated.

## VI.  THE TWO § 924(C)(1) COUNTS, COUNTS 3 & 4, ARE BASED ON A SINGLE "UNIT OF PROSECUTION" THEREFORE THE MULTIPLE § 924 (C)(1) CONVICTIONS ARE IMPROPER

The Double Jeopardy Clause of the Fifth Amendment states that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." United States Constitution Amendment V. "The Double Jeopardy Clause protects, among other things, against multiple punishments for the same offense." *North Carolina v. Pearce,* 395 U.S. 711, 717 (1969).

In the matter at bar, Movant's sentences, for his convictions under Counts 3 and 4, violated the Double Jeopardy Clause because he received multiple sentences based upon the same criminal conduct. On Count 3, he received a sentence of 5 years' incarceration. On Count 4, he received a sentence of 25 years' incarceration. These sentences were "multiple punishments" because they were imposed to run consecutively to each other. Accordingly, for the reasons set forth herein, one of these multiplicities sentences must be vacated.

The indictment, on its face, charged Movant *inter alia* with Count 1 conspiracy to possess, use, carry, brandish, and discharge firearms in furtherance of drug trafficking (the drug conspiracy charged in Count 5) in violation of 18 U.S.C § 924 (o); Count 3 charged that Movant violated the

18

firearm possession statute in relation to a drug trafficking crime (the drug conspiracy charged in Count 5) and in doing so, violated 18 U.S.C. § 924 (c)(1). Finally, Count 4 charged Movant with possessing, using, carrying, brandishing, and discharging a firearm in relation to a drug trafficking crime (the drug conspiracy charged in Count 5), again in violation of 18 U.S.C. § 924 (c)(1). In short, Counts 3 and 4 charged violations of § 924 (c)(1) in connection with Count 5.

The drug trafficking crime referred to in Count 3 and as charged in Count 5, alleged a violation of 21 U.S.C. § 846. That statute provided in part that "it shall be unlawful for any person knowingly or intentionally" to conspire to manufacture, distribute, ... with the intent to manufacture ... 50 grams or more of cocaine base ...." 21 U.S.C. § 846.

The drug trafficking crime referred to in Count 4, was also Count 5.[11]

At the conclusion of the trial, during its charge to the jury, the District Court gave instructions on how to determine whether Movant was guilty of Counts 3 and 4. The District Court stated:

> "With respect to the (Movant), you may find him guilty if you
> find the government has proven beyond a reasonable doubt that
> he either carried or used a firearm during and in relation to a
> drug trafficking offense or that he possessed a firearm in
> furtherance of a drug trafficking offense."

---

[11]    Count 5, the drug conspiracy predicate offense, ran from a date unknown to the Grand jury and continued through on or about July 21, 2000. Movant was convicted of two § 924(c) counts, 3 and 4, based upon his alleged possession or use of the same firearm on two different dated during the course of this single ongoing conspiracy.

TT. at p. 1157.

*                    *                    *


"Count 4 of the indictment charges (Movant) with the same

offense on another occasion ..."

*Id.*

In light of the foregoing, Movant's protection against Double Jeopardy was violated as the district court's instruction allowed him to be convicted for two offenses - - requiring consecutive sentences - - which were based upon the same conduct.

In *United States v. Lindsay*, 985 F.2d 666 (2nd Cir. 1993), this court addressed the issue as to whether a defendant could be subject to multiple § 924 (c) violations based upon the use of multiple firearms during the commission of a single predicate offense.[12] In *Lindsay*, the Second Circuit analyzed whether the "allowable unit of prosecution" under § 924 (c) focused on the predicate offense or the individual firearms. After carefully scrutinizing the language of § 924(c), as well as its legislative history, the Court found, "this firearms statute ... is ambiguous as to the appropriate unit of prosecution." *Id.* at 675. Further, the Court found "since congress failed to specify the firearm as the appropriate unit of prosecution under § 924 (c),

---

[12]    In *Lindsay* the predicate offense was a drug trafficking conspiracy which ran from 1983 to 1988. He was convicted of seven counts of 924 (c) based upon his use of seven different firearms during the course of conspiracy.

we invoke the rule of lenity and conclude that a defendant who uses multiple firearms in relation to a single (predicate offense) may be charged with only one violation of § 924 (c)." *Id.* at 676 (emphasis added). Thus the Court concluded that "only where the defendant commits multiple (predicate crimes) and the government can link firearms to those crimes, may the government prosecute for multiple violations of § 924(c). Where the government links multiple firearms to a single crime, only one § 924 (c) violation occurs." *Id.* at 674.

Other Circuits are in accord with *Lindsay* and have held only one § 924 (c) conviction can be attached to any single, ongoing predicate crime even though multiple §924 (c) offenses were alleged to have occurred on different dates. *See United States v. Anderson,* 59 F.3d 1323 (D.C. Cir. 1995)(en banc)(vacating five § 924(c) convictions occurring on four separate dated during a four month period where predicate offense as a drug conspiracy); *United States v. Hamilton,* 953 F.2d 1344, 1356 (11th Cir. 1992)(vacating three § 924 (c) convictions occurring on three separate dates during a ten month period where the predicate offense was a drug conspiracy running for the entire period).

In *Anderson,* the D.C. Circuit expressly agreed with *Lindsay* and held, "we agree with the Second Circuit that, at a minimum, the statute is quite ambiguous with respect to the issue before us. Accordingly, we hold that only one § 924(c) violation may be charged in relation to one predicate crime." 59 F.3d at 1334.

21

In the matter at bar, Movant's two § 924 (c) convictions are predicated upon the same "unit of prosecution." They are both based upon a violation of the same statute, 21 U.S.C. § 846.

The circumstances in the matter at bare are distinguishable and more egregious than the Second Circuit's ruling in *United States v. Wallace,* 447 F.3d 184, 186 (2nd Cir. 2006). In *Wallace,* the defendant was convicted of two § 924 (c) offenses. Each count charged a different predicate offense. One count charged drug trafficking conspiracy, in violation of 21 U.S. C. § 846, as the predicate offense. The other count charged commission of a drive by shooting during a major drug offense, in violation of 18 U.S.C. § 36(b), as the predicate offense.[13] In vacating one of these convictions, the court found that – even though the predicate offenses were based on different statutes – they were both based upon the same unit of prosecution." 447 F.3d at 188. In determining whether this conduct constituted the same "unit of prosecution", *Wallace* relied upon the court's earlier ruling in *United States v. Finley,* 245 F. 3rd 199 (2nd Cir. 2001). *Wallace* held "§924(c) does not clearly manifest an intention to punish defendant twice for continuous possession of a firearm in furtherance of simultaneous predicate offenses consisting of virtually the same conduct." 447 F3d at 188, *quoting Finley* 245 F.3d at 207.

In *Finley,* the defendant engaged in a drug sale to an undercover officer. Upon his arrest, shortly after the sale, a drug stash and shotgun were recovered. The defendant was convicted of two violations of § 924(c). The predicate for one of the §924(c) offenses was possession of the shotgun

---

[13] Both offenses also charged murder (of the same person) during the commission of the offenses in violation of § 924(j)(1).

during the drug sale. The predicate for the other offense was possession of the shotgun during possession of the drug stash. Upon vacating one of the two § 924(c) convictions, the Second Circuit found that even though two separate predicate offenses (drug sale and drug possession) were attached to the § 924(c) counts, "the predicate offenses were simultaneous or nearly so, they consisted of virtually the same conduct with the same criminal motivation and one of them (possession of a drug with intent to distribute) was a continuing offense." 245 F.3d at 207.

The Second Circuit's analysis, and its reasoning in *Finley* and *Wallace* should be adopted by this Court and applied to the matter at bar. Counts 3 and 4 occurred within the same time frame of the drug conspiracy alleged in Count 5.

As in *Finley,* if this Court allows the multiple § 924(c) convictions to stand, it would have an unintended *Draconian* affect. 245 F.3d at 208. In *Finley,* the Second Circuit noted – if the convictions were allowed to stand – then an armed drug dealer could be prosecuted for two §924(c) offenses if he sold only a portion of his stash and was then later arrested with a gun and remainder of his stash. Yet, if the armed dealer sold the entire stash in a single transaction, he would only be subject to one § 924(c) offense. *Id.*

In the matter at bar, allowing Movant's § 924(c) convictions to stand could produce a similar *Draconian* affect. For example, a citizen who possesses a firearm on or about July 12, 2000, and again possesses or uses a firearm between July 18, 2000, and July 12, 2000, during the commission of a drug trafficking conspiracy – the single predicate offense – which ran from on a date unknown to the Grand Jury, and continuing through on or about

July 21, 2000, can be charged with two different § 924(c) counts based upon his/her use of the same firearm during the course of the lone conspiracy. As found by the Second Circuit, this was not the intent of Congress. *Id.* Accordingly, one of Movant's § 924(c) convictions must be vacated.

Trial counsel neither objected nor did Appellate Counsel follow-up and address this double jeopardy claim on appeal. There is no coherent strategy in not preserving a claim at trial and the forfeiting a no frivolous claim on appeal that can reduce your client's sentence by 25 year. *United States v. Syme,* 276 F.3d 131, 158 (3rd Cir. 2002) (it is a miscarriage of justice to give a person an illegal sentence that increases his punishment, just as it is to convict an innocent person). Counsel's performance fell below an objective standard of reasonableness and counsel's deficient performance prejudiced the Movant resulting in an unreliable or fundamentally unfair outcome in the proceeding. *Glover v. United States,* 531 U.S. 198, 204 (2001)(Counsel's failure to object to application of guidelines that increased sentence, was ineffective assistance; United *States v. Mannino,* 212 F.3d 835 (3rd Cir. 2000) (Failing to raise sentencing issue denied effective assistance). Failure to raise an issue on appeal with a reasonable probability of prevailing has been found to be ineffective assistance of counsel. *Compare Flores v. Demskie,* 215 F3d 293 (2nd Cir. 2000); *Jackson v. Leonardo,* 162 F3d 81, 86-87 (2nd Cir. 1998)(reversing dismissal of habeas petition where appellate counsel failed to raise straightforward double jeopardy claim.

**VII.  TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO REQUEST A CURATIVE INSTRUCTION AT THE TIME HIS SECOND MOTION OF RMISTRIAL WAS MADE AND DURING THE COURT'S CHARGE TO THE JURY.  APPELLATE COUNSEL WAS INEFFECTIVE**

**FOR NOT CLAIMING THAT THE TRIAL COURT
ABUSED HER DISCRETION IN NEITHER GRANTING
THE MOTIONS FOR MISTRIAL NOR GRANTING
MOVANT'S MOTION FOR A NEW TRIAL**

A mistrial was twice argued on behalf of Movant Ahmed Walker.
First when the 3 co-defendants pled guilty after four days of trial, and were
removed from the case, and second, when a witness, Dennis Rittle, twice
made unsolicited responses to questions stating that Movant had been shot.
Movant's contention focuses on the latter.

A seven-day trial began on February 20, 2002. Defendants,
Christopher Ames, Eric Sanchez, Angel Sanchez, and Movant were initially
tried together.

On February 21, 2002, a Motion in Limine was argued to exclude any
evidence that a co-defendant drove Movant to the hospital after Movant had
been shot.

Although objections were sustained, and witnesses were
prohibited from mentioning that Movant was shot, a government witness,
Dennis Rittle, despite prohibitions against such testimony, twice stated, on
direct, that Movant had been shot. *See* TT. at pp. 912-913. The following
colloquy took place:

> MR. MCGOWAN: .... Mr. Walker (the Movant) wants me to
> make a motion for a mistrial because of the reference to his being
> shot, by the prior government witness. *See* TT. at p. 934.

> THE COURT: I was waiting for that. *Id.*

25

*        *        *

Judge Rambo set aside the February 25, 2002, motion for a mistrial for consideration post trial. TT. at p. 935. Judge Rambo previously ruled that the information that Movant was in the hospital after being shot, was to be excluded as irrelevant and highly prejudicial, and because it had no connection to the trial charges. Moreover, such information is highly prejudicial in that it allowed, without further explanation, for inferences that Movant was shot in connection with dealing drugs, or some other illegal activity. Doc. No. 333 at p. 23. Further, evidence that the testimony of the government's crucial witness, Dennis Rittle, was prejudicial is evidenced by the erroneous conclusions contained in the PSI findings presented under the "offense conduct" section, paragraph 5. If the PSI investigator could gain the misperception that Movant was shot in the hand in relation to the July 18, 2000, incident, surely at least on juror would come to the same erroneous, highly prejudicial conclusion. Surely, the previously ruled inadmissible statements and insinuated admissions provided to the jurors prejudiced Movant and led the jurors to a verdict that was against the weight of the evidence.

A.    Trial counsel was ineffective for failing to request curative instructions, and government exhibits be stricken from the record at the time his second motion for mistrial was made and during the Court's charge to the jury.

---

During opening statements, co-defendant Ames' counsel, Sam Stretton, said "that his client met (Movant) while incarcerated ... (That on July 20[th], 21st) (Movant) was shot ... the police had gotten a search warrant

based on the fact that they saw blood from where (Movant) was shot leading to the apartment ... they found drugs, gun ... (Ames) was just there as a result of (Movant) having been shot ... (Ames) will tell you that he doesn't sell drugs, for (Movant) ..." TT. at pp. 18-27.

Four Days into the trial, Christopher Ames pled guilty along with Eric and Angel Sanchez. Sam Stretton's highly prejudicial comments about Movant made in his opening statement lingered unabated amongst the jurors throughout the rest of the Movant's trial. Trial counsel never requested a curative instruction. An effective counsel would have realized his client was entitled to a curative instruction. Trial counsel should have requested a curative instruction, to wit:

> "The comments made by attorney Sam Stretton in his opening statement must be entirely disregarded by you. The reasons are not a matter for your concern."

Moreover, on the fourth day of trial, when the three co-defendants decided to plead guilty, trial counsel failed to request that the government exhibits submitted as evidence against the three co-defendants for the jury's consideration, be stricken from the record, because of prejudicial spillover, *i.e.,* that "evidence admissible against one defendant is prejudicial to all defendants." In the matter at bar, the evidence that was admissible against three co-defendants, prejudiced Movant. Although the district court abused her discretion in not granting the mistrial, counsel compounded the prejudice make by a bad decision, by not requesting that the evidence submitted over the past four days against three co-defendants, be stricken from the record.

27

*See* Exhibit C, Government's Amended List of Exhibits. Trial Counsel also should have requested a curative instruction on that score too.

Lastly, after Movant's counsel filed a motion for a new trial, the government in its opposition brief, relied heavily on the fact that Movant's trial counsel failed to request the Court to give a curative jury instruction in regards to Dennis Rittle's testimony, specifically when Rittle twice told the jury that Movant was shot. Doc. No. 339 at p. 25. The Court, in its Memorandum and Order, dittoed the government's position. Doc. No. 344 at p. 5. Clearly, the government and the Court join in and support Movant's contention that effective counsel would have requested a curative instruction.

B.    Appellate Counsel was ineffective for not claiming that the trial court abused her discretion in neither granting either of the motions for mistrial nor granting Movant's motion for a new trial.

---

Due Process requires effective assistance of counsel. *Evitts v. lucey*, 469 U.S. 387, 396 (1985)(due process requires effective assistance of counsel during first appeal as of right). The Sixth Amendment provides that "[i] n all criminal prosecutions, the accused shall enjoy the right ... to have assistance of counsel for his defense. U.S. Const. Amend. VI; *McMann v. Richardson*, 397 U.S. 759, 771 n. 14 (1970)(6th Amendment right to counsel is right to effective assistance of counsel).

Accordingly, appellate counsel should have raised these meritorious claims on Movant's appeal of right. In that counsel didn't, Movant was denied due process and his right to effective assistance of counsel.

VIII.  **TRIAL COUNSEL WAS INEFFECTIVE FOR
REQUESTING TO STIPULATE TO THE ADMISSION OF
TESTIMONY ABOUT TWO YEAR OLD JUSTINA PEREZ
WHO WAS SHOT ON JULY 18, 2000, AND FOR FAILING
TO REQUEST A LIMITING INSTRUCTION. APPELLATE
COUNSEL WAS INEFFECTIVE FOR NOT APPEALING
THAT THE COURT ABUSED HER DISCRETION IN
ALLOWING SAID TESTIMONY AND IN NOT
ADMINISTERING AND APPROPRIATE LIMITING
INSTRUCTION.**

In considering whether to admit other-act evidence, the trial court must determine whether the evidence is relevant to the issue under Fed.R.Evid. 401 and 402.  In addition, even if relevant, such evidence under Fed.R.Evid. 403, "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury. *United States v. Gordon*, 987 F.2d 902, 908 (2nd Cir. 1993). "Similarity, being a matter of relevancy, is judged by the degree in which the prior act approaches near identity with the elements of the offense charged." *Gordon*, 987 F.2d at 908. (citation omitted)(emphasis added). "Unfair prejudice" refers to "the capacity of some concededly relevant evidence to lure the fact finder into declaring guilt on a ground different from proof specific to the offense charged." *Old Chief v. United States,* 519 U.S. 172, 180 (1997).  In other words, unfairly prejudicial evidence is that having "an undue tendency to suggest decision on an improper bases, commonly, though not necessarily, an emotional one." *Id.* (citation and internal quotation marks omitted).  The probative value of evidence against a defendant is low where the evidence does not go to an element of the charge. *See United States v. Ellis,* 147 F3d 1131, 1135, (9th Cir. 1998).

In the matter at bar, Movant was <u>not</u> charged with any crime of violence. He was, however, charged with possession, using, carrying, brandishing and discharging firearms in perpetrating a drug trafficking crime. 18 U.S.C. § 924(c)(1)(2003). Nevertheless, the prosecution, starting with day one of the trial, sought testimony that would strike an indelible emotional chord with the jury. Evidence that would have absolutely no relevancy to the elements of the charged crimes. Once the bell of prejudice was rung, there was no undoing it.

On the first day of the trial, Iris Perez gave heart-wrenching testimony that she was the mother of Justina Perez who was two years old at the time of the Lebanon Village shooting.

As a logical matter, the fact that Justina was shot does not go to an element of the crimes charged. This necessarily makes its probative value low. *United States v. Ellis*, 147 F.3d 1131, 1135 (9th Cir. 1998). The risk that a jury will convict for crimes other than those charged – or that, uncertain of guilt, it will convict anyway because a bad person deserves punishment – creates a prejudicial effect that outweighs ordinary relevance." *See* the reasoning in *Old Chief v. United States*, 519 U.S. 172, 181 (1997). Movant was not charged with shooting Justina Perez. AUSA Fawcett never explained to the Court the relevancy of Ms. Perez's testimony about the shooting. Mr. McGowan should never have requested to stipulate that Ms. Perez's two year old daughter Justina was struck in the back of the leg with a bullet because the "shooting" was not an element of proof. *In re Diet Drugs Prods Liability Litigation*, 369 F.3d 293, 315 (3rd Cir. 2004). Mr. McGowan did object to the relevancy of the testimony, however, he failed to request a limiting instruction. And, the district court abused her discretion in allowing

this extensive prejudicial testimony. *United States v. Hitt* 981 F.2d 422, 424 (9th Cir. 1992)("Where the evidence is of very slight (if any) probative value, its an abuse of discretion to admit it if there's even a modest likelihood of unfair prejudice or a small risk of misleading the jury.").

The description of a two year old, innocent, little girl being shot in the leg ... bleeding ... crying ... being rushed to Hershey Hospital in an ambulance very well could have triggered an emotional response from the jury members, who were likely to be sympathetic to the little two year old girl and consequently want to assign blame and punish the man who caused the shooting. Moreover, AUSA Fawcett's closing argument drove home to the jury the connection, implicit from the testimony, between the alleged actions of Movant and the shooting of Justina.

In summary, there is at least a "modest likelihood of unfair prejudice." *Hitt*, 981 F.2d at 424. The evidence about the shooting had "an undue tendency to suggest decision on an improper basis." *Old Chief*, 519 U.S. at 180 (citation and internal quotation marks omitted). The likelihood of unfair prejudice was high enough to outweigh the minimal probative value of the evidence. The district court abused her discretion under Fed.R. Evid. 403.

A.    Trial Counsel was ineffective for requesting to stipulate to the admission of testimony about two year old Justina Perez who was shot on July 18, 2000, and, for failing to request a limiting instruction.

Although trial counsel rightfully objected to the relevancy of the "shooting", he failed to further pursue the objection. Moreover, whether or not the Court abused its discretion in allowing the "shooting" evidence does not excuse counsel from failing to request a limiting instruction. For the

31

myriad of reasons stated earlier, there is no valid strategic reason for trial counsel to have chosen not to request a limiting instruction. Assuming, *arguendo,* but certainly not conceding that the "shooting" testimony was admissible, it does not decide the question of whether a limiting instruction would still have been requested by counsel, and that counsel's failure to seek a limiting instruction in this instance was substandard performance. By asking for a stipulation, trial counsel equated inadmissible testimony with an element of proof. This is not the law and counsel should be versed with the law. Counsel's actions were objectively unreasonable.

Movant was prejudiced as a result therefrom, because there is a reasonable probability that at least **one juror,** most likely a mother with children, was likely to be sympathetic to the little two year old girl and consequently wanted to assign blame and punish Movant for the shooting.

B.    Appellate Counsel was ineffective for not appealing that the Court abused her discretion in allowing said testimony and in not administering an appropriate limiting instruction.

It is suggested that limiting instruction be given both at the time extrinsic evidence is introduced and again in the final instructions to guard against undue prejudice to the accused and to limit such evidence to tis proper purpose. *See United States v. Rivera,* 837 F.2d 906, 913 (10th Cir. 1988)(where evidence is admitted pursuant to Rule 403 the trial judge <u>must</u> give limiting instruction both at the time evidence is admitted and in the general charge to the jury to minimize the risk of prejudice), *reversed on other grounds,* 900 F.2d 1462 (10th Cir. 1990); Fed.R.Evid.105.

The likelihood of unfair prejudice was high enough to outweigh the minimal probative value of the "shooting" evidence; therefore its admission was an abuse of discretion under Fed.R.Evid. 403.

As previously detailed in ground 7(B) *supra,* and for reasons discussed earlier, appellate counsel should have raised this meritorious claim on Movant's appeal of right. In that counsel did not, Movant was denied due process and his right to effective assistance of counsel.

## IX.    TRIAL COUNSEL WAS INEFFECTIVE BY FAILING TO INVESTIGATE AND PRESENT WITNESSES FAVORABLE TO MOVANT'S DEFENSE

Movant was charged with various narcotics and firearms offenses. Two of the government's witnesses, Robertito Irazarry and Behah Ali Sills, gave scathing albeit dubious testimony at trial that, for the most part, appeared to be the linchpin of the government's case against Movant.

In retrospect, in plenty of time prior to trial, Movant wrote several letters urging counsel to investigate, and also to interview Maria Rivera and Eric Sanchez. Initially, the letters were prompted by Movant's review of redacted DEA and ATF reports. The same reports reviewed by trial counsel. *See* Exhibit D, Affidavit of Ahmed Walker, ¶3. The letters, unfortunately, fell on deaf ears and went unanswered. Instead, had counsel followed up on the letters and investigated, he would have learned that the testimony given by Irazarry and Sills was false, and likely suborned by the government.

## TESTIMONY OF IRAZARRY AND SILLS

**Irazarry testified:**

33

(1) that Movant sold him drugs on five different occasions during the summer of 2000.  TT. at 819;

&ast;                    &ast;                    &ast;

(2) that on one occasion when he was picking up drugs from Movant at Movant's girlfriend's home, he saw a gun on the table in the kitchen. TT. at 821.

&ast;                    &ast;                    &ast;

(3) that Movant's girlfriend, Tomika Howard, moved the gun into another room.  TT. at 822; and

&ast;                    &ast;                    &ast;

(4) that Movant told him the reason for the Lebanon Village shooting "was over drug territory" and that Movant told him that he fired a weapon. TT. at 823.

&ast;                    &ast;                    &ast;

**Sills Testified:**

(5)  that Movant told him that the Lebanon Village shooting "happened over an argument … about drug territory."  TT. at 924; and

&ast;                    &ast;                    &ast;

(6)  that he witnessed Movant selling drugs on Leman Street. TT. at 925.

**HAD COUNSEL INVESTIGATED, HE WOULD HAVE:**

34

(A) discovered, through court order, that Movant could have absolutely no contact with Ms. Tomica Howard during the summer of 2000. This information contradicts the testimony of Irazarry and could have been used to effectively cross-examine him. See ¶ 1-4 (inclusive) *supra; see also* Exhibit D, Attachment Five;

(B) discovered that Movant was charged in 1999 with assault on his girlfriend's son Rory. *See* Exhibit D, Attachment Two ¶2. Movant's girlfriend name is Tomica Howard;

(C) discovered that Movant was in ISOLATION in County lock-up during the timeframe of the alleged conversations between Movant and Sills. Had counsel investigated, he would have been able to effectively cross-examine Sills. Effective cross-examination would have seriously impeached the testimony given by sills as annotated above in ¶ 5 and 6 *supra; see also* Exhibit D, Attachment Two ¶ 8-11 (inclusive); and

(D) discovered that there was no agreement to sell drugs, between Eric Sanchez and Movant. And, that Eric Sanchez was willing to attest to this as a witness testifying on behalf of Movant. *See* Exhibit D, Attachment Three.

Attachments one, four, five and six to Exhibit D, were available to the prosecution <u>prior</u> to trial, which, lends support to Movant's additional claim that the prosecution either suborned false testimony from Irazarry and Sills (which ably could make trial counsel ineffective) or learned during their respective testimonies that they testified falsely and failed to promptly bring this to the attention of the Court (which would constitute fraud upon the court).

## TRIAL COUNSEL'S INEFFECTIVENESS

### Cross-Examination

A "primary interest" protected by the Confrontation Clause is the right of cross-examination. *Douglas v. Alabama*, 390 U.S. 415, 418 (1965). "Cross-examination is the principal means by which the believability of a witness and the truth of this testimony are tested." *Davis v. Alaska*, 415 U.S. 308, 316 (1974). Indeed, cross –examination is the "greatest legal engine ever invented for the discovery of truth." *California v. Green*, 399 U.S. 149, 158 (1970).

### Prosecutorial Misconduct

It is serious misconduct for a prosecutor to obtain a conviction through the knowing use of false evidence. *See United States v. Wallach*, 935 F.2d 445, 473 (2nd Cir. 1991)(Altimari, J., concurring)(knowing use of false testimony is "perhaps the most grievous accusation that can be leveled against a prosecutor"). The use of false evidence is improper whether the prosecutor affirmatively elicits such evidence, *See Miller v. Pate*, 386 U.S. 1, 7 (1967) or merely "allows it to go uncorrected when it appears," *Napue v. Illinois*, 360 U.S. 264, 269 (1959).

### Investigation

The Supreme Court and the Third Circuit have held that the failure to investigate potential defense witnesses is constitutionally deficient where that failure is based upon an incomplete investigation where counsel's limitation of the investigation was unreasonable. *See United States v. Gray*, 878 F.2d 702, 710 (3rd Cir. 1989)(citing *Strickland*, 466 U.S. at 690-91).

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a performance and prejudice test by which to evaluate the claim that counsel in a criminal case has been ineffective. In order to have a

conviction reversed, the defendant must demonstrate (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that the poor performance prejudiced the outcome of the proceeding. *See Strickland,* 466 U.S. at 687-88. Turning to the former, the failure to call witnesses may not be insulated from constitutional standards simply by labeling it "strategic"; rather, the decision must be "sound" and "reasonable" under the facts of the case. *See, e.g., United States v. Fennell,* 53 F.3d 1296, 1304 (D.C. Cir. 1995) (stating that a hearing would be necessary to assess whether counsel's decisions and strategies were reasonable).

In the matter at bar, trial counsel failed to investigate potential defense witnesses, Maria Rivera and Eric Sanchez. Both the Supreme Court and the Third Circuit have held that the failure to investigate potential defense witnesses is constitutionally deficient where that failure is based upon an incomplete investigation where counsel's limitation of the investigation was unreasonable. *See United States v. Gray,* 878 F.2d 702, 710 (3rd Cir. 1989) (citing *Strickland,* 466 U.S. at 690-91); *See also Workman v. Tate,* 957F.2d 1339, 1345 (6th Cir. 1992) ("Where counsel fails to investigate and interview promising witnesses, and therefore have no reason to believe they would not be valuable in securing defendant's release, counsel's inaction constitutes negligence, not trial strategy"; *United States v. Kauffman,* 109 F.3d 186, 190 (3rd Cir. 1997) (stating that there was no strategy involved where counsel's "failure to investigate or research the … issue at all resulted in a cursory, uninformed judgment call …").

As discussed earlier, had counsel interviewed Rivera and Sanchez, he would have seriously impinged the testimony of Irazarry and Sills. *Bryant v. Scott,* 28 F3d 1411, 1419 (5th Cir. 1994) (counsel ineffective for failing to investigate and interview witnesses, and noting that while counsel's cross-

37

examination of the government's witnesses "was effective, that is not to say it could not have been improved by prior investigation.") *United States v. Baynes,* 687 F2d 659, 667-68 (3ʳᵈ Cir. 1982) ("competent cross-examination does not take the place of affirmative defense built upon thorough investigation and preparation"). Moreover, counsel would have mounted a serious challenge to the prosecution's narcotic's conspiracy case against Movant by showing that a conspiracy did not exist; that there was no agreement entered into; that drugs were sold independently to which Sanchez in his affidavit concedes. *See* Exhibit D, Attachment C.

The second prong of *Strickland* focuses on the "reasonable probability" of prejudice, that is, whether "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694. Movant was prejudiced. However, reliance on affidavits in disposing of a petition for a writ of habeas corpus without the taking of testimony, is improper. *Walker v. Johnston,* 312 U.S. 275 (1941). In *Walker,* the Court stated that judicial inquiry into the "very truth and substance of the causes" of the defendant's detention "involves the reception of testimony." *Walker,* 312 U.S. at 285-86. *See also United States v. Levy,* 377 F.3d 259, 265 (2ⁿᵈ Cir. 2004) (Generally, in the context of ineffective assistance claims, attorney affidavits cannot be said to be completely unbiased – attorney's understandably have an interest in maintaining their reputations and avoiding civil liability); *United States v. Crawford,* 161 F.3d 4, 1998 WL 610870 (4ᵗʰ Cir., Sept. 3, 1998) ("a district court may not credit an attorney's affidavit over a petitioner's verified papers without conducting an evidentiary hearing."). As the record stands, it does not conclusively show that Movant is entitled to no relief. Therefore, at minimum, Movant

has the right to an evidentiary hearing to determine whether prejudice resulted from counsel's deficient performance.

**X.    APPELLATE COUNSEL WAS INEFFECTIVE FOR NOT CONTENDING ON APPEAL THAT THE DISTRICT COURT ABUSED HER DISCRETION IN COUNTING MOVANT'S DELINQUENCY ADJUDICATION IN HIS CRIMINAL HISTORY CALCULATION.**

Movant's Criminal History Category was calculated to be a Category II on a 1997 juvenile arrest and conviction. He was adjudicated Delinquent and sentenced to serve 6-18 months in custody in a limited secure residential facility.

Movant objected both times he was sentenced to the use of this offense in determining his Criminal History Category. As part of Movant's first appeal, this Court affirmed the inclusion of the 1997 juvenile conviction in determining Movant's Criminal History Category. Despite this, it is respectfully suggested that the use of this enhancement violated Movant's rights under the Fifth and Sixth Amendments and the Supreme Court's holding in *Shepard v. United States*, 544 U.S. 13 (2005).

In the matter at bar, it is important to note that no evidence of his juvenile conviction, to include any documentation whatsoever, was submitted to the Court as part of the sentencing process. Before addressing "*Shepard*" and "Standard of Proof", Movant respectfully reminds the Court that the Law-of-the-Case doctrine does not apply where the decision was clearly erroneous and would work a manifest injustice. *Shultz v. Onan Corporation*, 737 F.2d 339, 345 (3rd Cir. 1984). "Under law of the case doctrine, as now most commonly understood, it is not improper for a court to

depart from a prior holding if convinced that it its clearly erroneous and would work a manifest injustice." *Arizona v. California,* 460 U.S. 605, 619 n. 8 (1983).

This Court held in Movant's first appeal that the inclusion of Movant's juvenile conviction in his criminal history determination was "not unreasonable". *United States v. Walker,* 136 Fed. Apps. 524, 529 (3rd Cir. 2005). Given the argument submitted below it is respectfully suggested that this holding cannot stand.

## A. *Shepard v. United States*

In the case, the Court violated the Supreme Court's holding in *Shepard* by considering criminal history matters it should not have considered. Movant's juvenile conviction should not have been counted against him. His sentence is unreasonable.

## B. Standard of Proof

The requirement of proof beyond a reasonable doubt under the Fifth Amendment Due Process Clause protects against factual error whenever a potential loss of liberty is at stake. *In re Winship,* 397 U.S. 358, 363-64, 368 (1970). As W*inship* itself involved judicial fact finding in a juvenile delinquency proceeding, this is so regardless of the identity of the fact finder and whether or not the finding results in "conviction" of a "crime". Facts to which the reasonable doubt standard applies are not just those that go to guilt or innocence, but those that increase punishment. *Mullaney v. Wilbur,* 421 U.S. 684, 697-99 (1975).

Appellate counsel should have properly argued this issue on appeal because there was a reasonable probability of prevailing. Movant was prejudiced as a result therefrom because his sentence was increased.

## XI.  TRIAL COUNSEL WAS INEFFECTIVE AT TRIAL AND AT SENTENCING BECAUSE THE COURT WAS NOT MADE AWARE OF MOVANT'S MENTAL HEALTH HISTORY

### Competency to Stand Trial

18 U.S.C. § 4241 sets out procedure to determine mental competency to stand trial.  It allows the prosecutor or defense counsel to file a motion for a competency hearing.  It also requires the court to grant the motion, or "order such a hearing on its own motion, if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent ..." 18 U.S.C. § 4241(a).

## MOVANT'S EXTENSIVE MEDICAL PSYCHIATRIC HISTORY

According to Movant's presentence Investigation Report ("PSR"), specifically, under Offender Characteristics, it was described that Movant has an extensive and serious mental health history.  *See* PSR, ¶ 52, 55-57, 59.  In 1992, while at the Pleasantville Diagnostic Center, located in New York, Movant was found to be in the low average range of intellectual functioning (IQ:87).  Movant's evaluation further unveiled that he had emotional factors that interfered with his cognitive functions.  *Id.* at ¶56. Movant was diagnosed as having a personality disorder (not otherwise specified) with a borderline sadistic and anti-social personality features.  *Id.* Movant was further diagnosed as having a conduct disorder and an impulse control disorder.  *Id.* at ¶ 57.  He was classified as emotionally disturbed and was in a special education self-contained classroom in the 9th grade.  *Id. at* ¶ 59.  Movant has been treated with medications such as mellaril, lusteril (sp), thorazine, ritalin, and lithium.  *Id.* at ¶57; *see also* Exhibit E, Prison Evaluation, dated January 4, 2000.

41

## TRIAL COUNSEL DID NOT REASONABLY INVESTIGATE MOVANT'S EXTENSIVE MEDICAL PSYCHIATRIC HISTORY

Trial counsel clearly did not reasonably investigate Movant's extensive medical psychiatric history, the record supports no investigation was conducted.

In the instant case, due process was violated. Prejudice should be presumed when effective assistance of counsel was denied during pretrial, trial and sentencing, all critical stages of the proceeding. *Strickland*, 466 U.S. at 692. However, if prejudice is not presumed, the Movant must establish a "reasonable probability" that, but for counsel's unprofessional errors, the result of the trial and/or sentencing proceedings would have been different.

### XII.   TRIAL COUNSEL WAS INEFFECTIVE FOR SUGGESTING A DEFENSE THAT WAS NOT LEGALLY VIABLE

### CONCESSION OF GUILT IN THE CLOSING ARGUMENT

Trial counsel, during closing, conceded that Movant sold cocaine in Lebanon, and, under the guise of self defense, conceded Movant's guilt to discharge of firearms.

### CONCESSION THAT MOVANT SOLD COCAINE IN LEBANON

During his closing argument, trial counsel made a statement that Movant was a drug dealer, but neither a member of drug conspiracies nor did he aid and abet them. TT. at 1104.

Counsel's closing was the functional equivalent of a plea of guilty to several counts of the indictment. The record does not indicate the

admissions were made with the client's consent. In fact, Movant <u>never</u> consented to counsel's admissions.

## UNDER THE GUISE OF SELF DEFENSE, TRIAL COUNSEL CONCEDED MOVANT'S GUILT TO DISCHARGE OF FIREARMS

For the sake of brevity, and for the same reasons stated above, counsel's conduct was deficient and Movant was prejudiced therefrom. Moreover, it can be argued that the Court *sua sponte* directed a verdict for the government by suggesting that self defense might apply. And the only way self-defense would apply is to first assume Movant discharged firearms.

## XIII. TRIAL COUNSEL WAS INEFFECTIVE FOR NOT SUBMITTING, UNDER Fed. R. Crim. P. 29 and 33, THAT THE EVIDENCE WAS INSUFFICIENT TO SUPPORT A FINDING OF GUILT ON COUNTS 3, 4, AND 6 ON THE GOVERNMENT'S THEORY OF AIDING AND ABETTING. APPELLATE COUNSEL WAS INEFFECTIVE FOR NOT CHALLENGING THE DISTRICT COURT'S DISCRETION ON GIVING AN AIDING AND ABETTING INSTRUCTION.

In the matter at bar, trial counsel provided ineffective assistance when he failed to move for a judgment of acquittal pursuant to Rule 29 and/or a new trial under Rule 33.

## THE EVIDENCE WAS INSUFFICIENT TO SUPPORT A FINDING OF GUILT ON COUNTS 3, 4 AND 6 ON THE GOVERNMENT'S THEORY OF AIDING AND ABETTING

Counts 3, 4, and 6, in part, state "Christopher Ames, Eric Sanchez and [Movant], aided and abetted by each other ... [a]ll in violation of Title 18, United States Code, ... Section 2.

Whether or not to give an aiding and abetting instruction, is a matter within the discretion of the trial court, provided there is evidence

sufficient to support a finding of guilt on the theory. *See. e.g., (Larry D.) Hawthorne v. United States,* 829 A.2d 948, 952 (D.C. 2003); *Edwards v. United States,* 767 A.2d 241, 251). That means, at a minimum, that there must be evidence to support that someone else acted as a principal, as "[o]ne cannot aid and abet himself." *Brooks v. United States,* 599 A.2d 1094, 1099 (D.C. 1991) (quoting *United States v. Martin,* 747 F.2d 1404, 1407 (11th Cir. 1985)). It is not enough that two or more persons acted in concert; there must be a principal actor … the prosecution must establish that "someone ha[s] that status. *Gayden v. United States,* 584 A.2d 578, 582 (D.C. 1990) (quoting *United States v. Staten,* 189 U.S. App. D.C. 100, 108, 581, F2d 878, 887 (1978) (interpreting federal aiding and abetting statute, 18 U.S.C. § 2(a))). Otherwise, there is a risk that the jury might convict without the necessary preliminary finding that a "crime was committed by someone, " who was assisted by the defendant. Noting that "there must be evidence that someone other than the defendant was the principal whom the defendant aided and abetted. But to convict for aiding and abetting, the logic is inescapable that there must be another person who acted as the principal.

In the matter at bar, the prosecution never identified the principal whom the Movant was alleged to have aided and abetted.

Not only was there insufficient evidence to support a finding of guilt on the aiding and abetting theory, the Court, in addition, abused its discretion in giving the aiding and abetting instruction. The bottom line – insufficient evidence calls for vacation of the convictions on counts 3, 4, and 6. Counsel's deficient performance in not moving for judgment of

acquittal and/or motion for a new trial based on the above analysis
prejudiced Movant by increasing his punishment.

## APPELLATE COUNSEL WAS INEFFECTIVE FOR NOT CHALLENGING THE DISTRICT COURT'S DISCRETION ON GIVING AN AIDING AND ABETTING INSTRUCTION

Appellate counsel should have addressed this non-frivolous claim on
appeal.  Unfortunately, he did not and Movant as prejudiced as his
conviction and sentences on Counts 3, 4, and 6 were otherwise affirmed.

## XIV. COUNSEL'S CUMULATIVE ERRORS VIOLATED MOVANT'S FIFTH AMENDMENT DUE PROCESS RIGHT AND SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL

The Third Circuit has held that even where no single error by counsel
amounts to ineffective assistance, the cumulative effect of counsel's errors
may require habeas corpus relief.  *See United States v. ex. rel. Sullivan v.
Cuyler,* 631 F.2d 14, 17 (3rd Cir. 1980); *see also Strickland v. Washington,*
466 U.S. at 695-96 (discussing prejudice in terms of multiple errors); *Crisp
v. Duckworth,* 743 F.2d 580, 583 (7th Cir. 1984) ("even if individual acts or
omissions are not so grievous as to merit a finding of incompetence or of
prejudice from incompetence, their cumulative effect may be substantial
enough to meet the *Strickland* test."), *cert. denied,* 469 U.S. 1226 (1985).

# CONCLUSION

For all the foregoing reasons set forth herein, Movant Ahmed Walker asks this Court to grant his § 2255 motion and vacate his convictions and sentences. And, for such other and further relief as this Court may deem just and proper.

Respectfully submitted,

Ahmed Walker
Reg. No. 10837-067
US Penitentiary Allenwood
P.O. Box 3000
White Deer, PA  17887

Movant, *pro se*

Dated: _8/11/08_

Certified Mail 7003 3110 0006 1296 1839

## PROOF OF SERVICE

I HEREBY CERTIFY that the original Memorandum of Law in support of Movant's Motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C § 2255 was given to prison authorities on the ___11th___ day of _August_, 2008, for certified mailing to the United States District Court for the Middle District of Pennsylvania, at the below address:

> Office of the Clerk
> United States District Court
> Middle District of Pennsylvania
> U.S. Courthouse
> 228 Walnut Street
> P.O. Box 983
> Harrisburg, PA  17108

Certified Mail 7003 3110 0006 1296 1839

_[signature]_
Ahmed Walker

Witnessed by:

_[signature]_
USP Allenwood Case Manager
Authorized to Administer Oaths

J. Kaminski, Case Manager,
Authorized by the Act of July 7,
1955, as amended to administer
oaths (18 USC 4004)

47

Ahmed Walker
10837-067
US Penitentiary
PO Box 3000
White Deer, PA
17887

AUG 12 2008

MAILED FROM
U.S. PENITENTIARY

ED FROM
PENITENTIARY

AUG 14 2008

7003 3110 0006 1296 1839

Honorable Sylvia H. Ram
U.S. District Judge
U.S. District Court
115 Co___
___ _____
PO Box 98
Harrisburg, PA 17108

CERTIFIED MAIL

7003 3110 0006 1296 1839

August 11, 2008

Ahmed Walker
Reg. NO. 10837-067
U.S. Penitentiary Allenwood
P.O. Box 3000
White Deer, PA 17887

**FILED**
HARRISBURG, PA

AUG 1 8 2008

MARY E. D'ANDREA, CLERK
Per _____
Deputy Clerk

Honorable Sylvia H. Rambo
U.S. District Judge
U.S. District Court
U.S. Courthouse
228 Walnut Street
P.O. Box 983
Harrisburg, PA 17108

      Re: United States v. Ahmed Walker
         Civil Action No.:
         Crim. No. 1:CR-00-300-03 (Rambo, J.)

Dear Judge Rambo:

    In    response to my motion for reconsideration (Doc. 436)
(to exceed fifty pages in my § 2255 brief) of your order (Doc.
435) granting permission to file a brief <u>not</u> to exceed fifty pages
in support of [my] motion for relief pursuant to 28 U.S.C. § 2255,
you said that "[t]he court was confident that [I] can further
reduce the arguments in [my] brief to fifty pages, without weak-
ening [my] claims, and without the assistance of counsel" (Doc.
438). The court subsequently denied my motion for reconsideration,
and, for appointment of counsel, <u>id</u>. And, my memorandum of law
in support of my petition for habeas corpus pursuant to 28 U.S.C.
§ 2255 (Doc. 437) was stricken. <u>Id</u>.

    For the record, although I can appreciate your confidence in
me, I am lodging an objection to your order (Doc. 438) filed on

July 14, 2008 as I feel, in reducing my brief to under fifty pages, that I may have inadvertantly weakened the merits of my claims, especially in light of your decision in not according me the guiding hand of counsel.  Accompanying my objections and enclosed brief, are the following requests:

(1) please docket this letter;

(2) please reconsider, in part, your order striking the brief, and, consider not striking "original" Exhibits A-E (inclusive) that accompanied the brief as they are not only "original" documents, but also, are referred to in my reduced brief submitted herewith;

(3) I am renewing my request for appointment of counsel; and

(4) please "clock" and mail me a copy of my reduced brief submitted herewith because the copy machine at the prison is broken at this time.  Thank you so much.

Respectfully submitted,

Ahmed Walker
Movant, pro se

Enclosure

2