IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**UNITED STATES OF AMERICA**          :
                                      :
         **v.**                       : **1:00-CR-300-03**
                                      :
**AHMED WALKER**                      :
                                      :

**M E M O R A N D U M**

Before the court is Ahmed Walker's motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255. For the reasons that follow, the motion will be granted in part and denied in part.

**I.       Background[1]**

On May 16, 2001, a grand jury issued a seven-count superseding indictment charging Ahmed Walker, Christopher Ames, and Eric Sanchez. (Doc. 48.) Walker was charged in Count 1 with conspiracy to possess, use, carry, brandish, and discharge firearms in furtherance of drug trafficking in violation of 18 U.S.C. §924(c) and (o); in Count 2 with possessing, brandishing and discharging a firearm in furtherance of drug trafficking on March 13, 2000, in violation of 18 U.S.C. §924(c); in Count 3 with possession of firearms in furtherance of drug trafficking on July 12, 2000, in violation of 18 U.S.C. §924(c); in Count 4 with possessing, brandishing and discharging firearms in furtherance of drug trafficking

---

[1] Because the court writes for the parties who are already intimately familiar with the factual background of this case, including that over 1100 pages of trial transcripts, the court will not reiterate in detail all of the facts underlying Walker's conviction. Instead, the court will refer to the facts presented at trial by citation to the trial transcript only where necessary.

between July 18, 2000, and July 21, 2000, in violation of 18 U.S.C. §924(c); in Count 5 with criminal conspiracy to distribute and possess with intent to distribute 50 grams or more of crack cocaine, cocaine hydrochloride and heroin, in violation of 21 U.S.C. §846; and in Count 6 with distribution and possession with intent to distribute 50 grams or more of crack cocaine, cocaine hydrochloride, heroin, and marijuana, in violation of 21 U.S.C. §841(a). (*Id.*)

On August 8, 2001, a seven-count second superseding indictment was filed, which added Angel Sanchez as a co-defendant in several counts, but made no substantive changes to the charges against Walker. (*See* Doc. 116.) Walker entered pleas of not guilty subsequent to each of these charging documents being filed.

At trial and at all times through his sentencing, Walker was represented by Terrence McGowan, Esquire ("trial counsel"). A jury was selected on January 14, 2002, and trial was to begin that day. However, the court granted a continuance of the trial to allow Walker to file certain pre-trial motions within fourteen days of that date. On January 23, 2002, trial counsel filed several pre-trial motions (with supporting briefs), including a motion to suppress physical evidence, a motion to suppress statements, and a motion to suppress identification. (*See* Docs. 214-223.) The next day, the court denied the motion to suppress physical evidence. (Doc. 225.) The court held a hearing on the motion to suppress statements, and motion to suppress identification on February 1, 2002. On February 7, 2002, the Court denied the latter motion and granted the motion to suppress certain statements made by Walker while he was in the hospital. (Docs. 237-241.)

Trial commenced on February 20, 2002, and the Court granted the government's motion to dismiss Count 2 of the indictment that same day. (Trial

Transcript at 18 ("TT").)  In the middle of trial, on February 25, 2002, Walker's three co-defendants entered into guilty plea agreements with the government and entered guilty pleas in court.  (*Id.* at 807-13.)  Immediately after the guilty pleas were taken, trial counsel moved for a mistrial, arguing that no curative instruction would adequately address the prejudice to Walker from the fact that he was the lone defendant left in the courtroom after three days of testimony.  (*Id.* at 808-9.)  Trial counsel also argued that a mistrial was warranted because there was testimony of two witnesses—Dechert and Radwanski—which would not have been admissible in a trial against Walker had he been tried alone.  (*Id.*)  The court denied the motion for a mistrial.  (*Id.* at 813.)  Instead, the trial continued against Walker alone, and the court gave the following instruction to the jury:

> Ladies and gentlemen of the jury, three of the defendants have been separated from this trial.  The reasons are not a matter for your concern.
>
> However, I do need to instruct you that there was testimony from a Mr. Dechert and Officer Radwanski that must be entirely disregarded by you because it had nothing to do with Mr. Walker.

(*Id.* at 814.)

At the conclusion of the evidence, on February 26, 2002, Walker moved for a judgment of acquittal of all counts.  The court denied this motion.  (*Id.* at 1024-32.)  After deliberation, on February 28, 2002, the jury returned a verdict finding Walker guilty of all counts.  Walker filed a motion for a new trial and arrest of judgment, which was denied by the court by memorandum and order dated December 10, 2002.  (Doc. 344.)

On February 13, 2003, the court sentenced Walker to an aggregate term of imprisonment of 681 months.  The term consisted of 240 months for conspiracy

to possess, brandish, and discharge firearms in furtherance of drug trafficking (Count 1); 321 months on both his conviction for criminal conspiracy to distribute and possess with intent to distribute 50 grams or more of crack cocaine and a quantity of cocaine hydrochloride, heroin, and marijuana, and the underlying substantive offense (Counts 5 and 6); 60 months for possession of firearms in furtherance of drug trafficking on July 12, 2000 (Count 3); and 300 months for possessing, brandishing and discharging firearms in furtherance of drug trafficking between July 18, 2000, and July 21, 2000 (Count 4). The sentences on Counts 5 and 6 were ordered to be served concurrently; all other sentences were to be served consecutively. (*See* Doc. 348.) That same day, the court granted trial counsel's motion for leave to withdraw, and appointed Damien Schorr, Esquire ("appeal counsel") to represent Walker on direct appeal. (Doc. 349.) Attorney Schorr also represented Defendant during the *Booker* re-sentencing proceeding, and through the appeal of the *Booker* re-sentencing.

An appeal was filed with the assistance of appeal counsel. On appeal, Walker argued four bases for overturning his conviction and the court's sentence: (1) that the court's sentencing determinations made use of acts not charged in the indictment and not found by the jury; (2) that the evidence was insufficient to support his conviction on Count 4; (3) that in applying the sentencing guidelines, that court mistakenly included a juvenile conviction in his criminal history, which added two criminal history points to his guideline calculations; and, (4) that the court erred in its denial of his motion in limine to preclude government witnesses from referring to him by his nickname "Ammo," because the use of this nickname was sufficiently prejudicial to warrant reversal of his convictions on Counts 1, 3,

and 4 of the second superseding indictment.  *See United States v. Walker*, 136 Fed. Appx. 524, 526 (3d Cir. 2005).

On August 22, 2005, the Third Circuit affirmed Walker's conviction on all counts, but vacated his sentence on Counts 1, 5, and 6, and remanded the case for re-sentencing consistent with *United States v. Booker*, 543 U.S. 220 (2005).  *See Walker*, 136 Fed. Appx. at 525 (3d Cir. 2005).   Following a re-sentencing hearing on October 28, 2005, the court reduced Walker's aggregate term of imprisonment from 681 months to 622 months. (Doc. 389.)

On November 3, 2005, Walker filed his second direct appeal to the Third Circuit. (Doc. 390.)  In that appeal, Walker raised two issues.  First, he asserted that his sentence was unreasonable because the court failed to give meaningful consideration to the factors enumerated in 18 U.S.C. § 3553(a).  *United States v. Walker*, 251 Fed. Appx. 735, 735 (3d Cir. 2006).  Second, he challenged his sentence on Counts 1, 5, and 6, contending that his guideline range was incorrectly based on quantities of drugs that were not found by a jury, as well as a leadership enhancement that was not found by the jury.  *Id.*  On December 15, 2006, the Third Circuit affirmed this court's sentence.  *See id.* at 737.

Walker filed a petition for rehearing, which petition was denied by Third Circuit on February 1, 2007.  He then filed a petition for writ of certiorari, which petition was denied by the Supreme Court on June 18, 2007.  *See Walker v. United States*, 557 U.S. 1137 (2007).

On June 17, 2008, Walker filed a *pro se* motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence By a Person in Federal Custody ("pro se § 2255 Motion").  (Doc. 433.)  In that motion, Walker alleged fourteen different

grounds of error by either this court or trial and/or appellate counsel. After receiving an extension of time, on February 17, 2009, the Government filed its Brief in Opposition to Walker's pro se § 2255 Motion. (Doc. 452.) After an extension, on March 25, 2009, Walker filed his response to the Government's brief. (Doc. 455.)

On May 18, 2009, the court appointed Dennis Boyle, Esq. as counsel for Walker and ordered an evidentiary hearing for July 21, 2009. (Doc. 457.) On May 21, 2009, Walker filed a Motion to Amend his pro se § 2255 Motion and supporting brief. (Docs. 459-60.) On that same date, the court entered an order construing Walker's motion and brief as a supplemental motion and brief and further ordered the Government to file its response to the supplemental motion by June 22, 2009. (Doc. 462.) On June 8, 2009, the court appointed Edward Rymsza, Esquire as substitute counsel for Walker because of Attorney Boyle's conflict of interest representing a Government trial witness. (Doc. 464.) On June 22, 2009, the Government filed a Motion for Extension to respond to Mr. Walker's Motion to Supplement his pro-se § 2255 Motion, which motion was granted on June 24, 2009. (Docs. 465-66.) Despite the granting of an extension, no objection or response to the supplemental pro-se motion was ever filed by the Government.

The evidentiary hearing on Walker's § 2255 motion was continued several times at the request of Walker. On January 19, 2010, a Motion for Leave to Amend Walker's pro se § 2255 Motion was filed along with a supporting brief. (Docs. 479-80.) On February 16, 2010, the Government filed a letter-brief in response. (Doc. 483.) By order dated March 17, 2010, the court granted Walker's motion to supplement. (Doc. 488.) On April 2, 2010, a supplemental motion to

vacate under 28 U.S.C. § 2255 was filed along with a supporting brief. (Docs. 489-90.)

On April 20, 2010, the court held an evidentiary hearing. After that hearing, Walker sought leave to file a supplemental brief, which was granted by order dated April 21, 2010. (Doc. 493.) Walker filed his supplemental brief on April 30, 2010. (Doc. 494.) Despite being permitted to do so, the Government chose not to file a supplemental response.

## II.      **Legal Standard**

To obtain collateral relief based on alleged trial errors to which no contemporaneous objection was made, or appellate errors not preserved on direct appeal, a convicted defendant must demonstrate both (1) "cause" excusing his procedural default (and in the instance of unpreserved trial errors his double procedural default) and (2) "actual prejudice" resulting from the errors, or must demonstrate his "actual innocence." *United States v. Frady*, 456 U.S. 152, 167-68 (1982); *United States v. Jenkins*, 333 F.3d 151, 154-55 (3d Cir. 2003); *United States v. Garth*, 188 F.3d 99, 107 (3d Cir. 1999). A convicted defendant may show "cause" for his procedural default by demonstrating that the reason for such default was his counsel's ineffectiveness. *United States v. Mannino*, 212 F.3d 835, 840 (3d Cir. 2000); *Garth*, 188 F.3d at 107. The benchmark for judging any claim of ineffectiveness of counsel, however, is "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686 (1984).

Under *Strickland*'s two-prong test for ineffective assistance, a defendant must first show that counsel's performance was deficient, meaning that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Id*. at 687. A court considering an ineffective counsel claim "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. Moreover, even where at first blush one might question the efficacy of a particular action by trial counsel, "the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id*. (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). "Strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Id*. at 690.

Under the second prong of the *Strickland* test, a defendant must show that counsel's deficient performance prejudiced the defense, meaning that as a result of counsel's errors the proceedings were rendered unfair or unreliable. *United States v. Nahodil*, 36 F.3d 323, 326 (3d Cir. 1994). "Because failure to satisfy either prong defeats an ineffective assistance claim, and because it is preferable to avoid passing judgment on counsel's performance when possible," it is sometimes appropriate to begin the ineffective assistance analysis with the prejudice prong. *United States v. Cross*, 308 F.3d 308, 315 (3d Cir. 2002) (citing *Strickland*, 466 U.S. at 697-98).

Furthermore, "[w]hen a defendant has raised a claim and has been given a full and fair opportunity to litigate it on direct appeal, that claim may not be used as basis for a subsequent § 2255 petition." *United States v. Hayes*, 231 F.3d 1132,

1139 (9th Cir. 2000).  Stated differently, "a person who has raised an issue, and had it resolved by a federal court, cannot start from scratch on collateral review and ask the judiciary to proceed as if the first resolution had not occurred." *Peoples v. United States*, 403 F.3d 844, 847 (7th Cir. 2005) (citing *Sanders v. United States*, 373 U.S. 1 (1963), and *Davis v. United States*, 417 U.S. 333 (1974)).

III.     **Discussion**

All of the issues raised in Walker's pro se motion to amend, (Doc. 459), his counseled motion to amend, (Doc. 489), and his supplemental brief, (Doc. 494), relate back to Walker's original pro se § 2255 motion, (Doc. 433), and are cumulative.  Combined, these documents assert eighteen grounds of error by either this court or trial and/or appeal counsel.  Roughly, these claims can be broken down into three categories: (1) errors committed by the court and/or the government that were not raised by either counsel; (2) errors committed by trial counsel; and, (3) errors committed by appeal counsel.  The court will address them in turn.

A.       **Alleged errors committed by the court and/or the government that were not raised by either counsel**

Walker contends that the court and/or the Government committed six errors: (1) that the court's jury instructions regarding Count 3 constructively amended the second superseding indictment; (2) that charging Walker with two counts under 18 U.S.C. § 924(c) (Counts 3 & 4) based on a single unit of prosecution was impermissible; (3) that the use of alternative bases for conviction on Count 4 was either unconstitutional or legally invalid; (4) that Count 4 failed to charge the movant with any codified federal crime; (5) that Count 4 is duplicitous, and both counsel failed to object; and, (6) that the court erred in assessing a five year

9

mandatory minimum consecutive sentence and a ten year sentence on Count 4 because Walker was already subject to a ten year mandatory minimum sentence in Counts 5 and 6.

### 1. **Jury instructions regarding Count 3**

Walker asserts that the court erred in giving jury instructions which constructively amended Count 3 of the second superseding indictment. The second superseding indictment charges Walker, as follows:

> On or about July 12, 2000, in Lebanon County, Pennsylvania, within the Middle District of Pennsylvania, and elsewhere, the defendants . . . [Ahmed Walker], aided and abetted by each other, *did possess firearms in furtherance of drug trafficking crimes for which they may be prosecuted in a court of the United States*; that is, conspiracy to distribute and possess with intent to distribute and distribution and possession with intent to distribute a controlled substance.
>
> All in violation of Title 18, United States Code, Section 924(c)(1)(A) and (C)(I), and Section 2.

(Doc. 116, Second Superseding Indictment at Count 3 (emphasis added).)

Title 18 U.S.C. § 924(c)(1)(A), the section charged in Count 3, makes it a crime, and enhances the penalties for "any person who, during and in relation to any crime of violence or drug trafficking crime . . . uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm. . . ." In its charge, the court stated the following:

> Now Count 3 of the second superseding indictment charges Ahmed Walker with carrying or using a firearm during and in relation to a drug trafficking crime or possessing a firearm in the furtherance of drug trafficking on July 12, 2000.

> The charge in Count 3 stems from the alleged straw
> purchase of firearms for those defendants by Dennis Rittle
> on July 12, 2000 in exchange for drugs.

(TT at 1156.)

Walker argues that the court improperly expanded the scope of the second superseding indictment through its charge by adding the words "carrying or using a firearm during and in relation to a drug trafficking crime," which, although found in the statute, varies from the words of the charging document, which simply states that Walker "possess[ed] firearms in furtherance of drug trafficking crimes." (*Compare* TT at 1156 *with* Second Superseding Indictment at Count 3.)

This claim was not preserved during trial, thus, Walker is required to allege and establish both cause and prejudice for this procedural default. *See United States v. Frady*, 456 U.S. 152, 167-68 (1982). The fact that Walker frames this issue not only as court error, but also as ineffectiveness of trial and appellate counsel satisfies the cause requirement. However, the court finds that Walker cannot meet *Strickland's* prejudice requirement.

First, although the language used in the second superseding indictment does not include the "carrying or using a firearm during and in relation to a drug trafficking crime" contained in the statute and used by the court in its instruction, the charging document unequivocally states the crimes charged were all done "in violation of [18 U.S.C. § 924(c)(1)(A)]." (*See* Second Superseding Indictment at Count 3.) Thus, the court's recitation of the statutory language contained in its charge can hardly be said to have constructively amended the charging document, as that document referenced the statute quoted by the court. An indictment is considered sufficient "if, when considered in its entirety, it adequately informs the

defendant of the charges against [him] such that [he] may prepare a defense and invoke the double jeopardy clause when appropriate," *United States v. Whited,* 311 F.3d 259, 262 (3d Cir. 2002). Accordingly, the court finds that the indictment properly put Walker on notice that he was being charged with *all* possible offenses spelled out in § 924(c)(1)(A). Accordingly, the court's instruction did not amend the second superseding indictment.

Second, it is clear that there was an adequate factual basis for the jury's conviction on Count 3. At trial, Dennis Rittle testified that on July 12, 2000, he and Walker, along with Walker's co-conspirators traveled to Shyda's Gun Shop, and that while there, Rittle purchased three guns that he then gave to Walker. (TT at 873-875.) In return for purchasing these guns, Rittle testified that he got "a few bags of crack" from Walker. (*Id.* at 877.) This testimony established that Walker possessed the firearm in furtherance of drug trafficking, and that he carried it in relation to a drug offense, which adequately supports the jury's verdict.

Finally, even if the court were to find that its instruction improperly expanded that possible basis for conviction on Count 3 because it set forth two possible bases for a determination that Walker was guilty when only one basis for his guilt was set forth in the charging document, a conclusion that the court does not reach, Walker is still not entitled to relief on his claim. In *Hedgepath v. Pulido*, — U.S. —, 129 S. Ct. 530, 531 (2008), the Court held that when a jury returns a general verdict after being instructed on both a valid and an invalid theory, a reviewing court must ask whether this error "had a substantial and injurious effect or influence in determining the jury's verdict." *Id.* (*citing Brecht v. Abrahamson*, 507 U.S. 619 (1993).)

Here, Walker cannot establish that he was actually prejudiced by any error that may have occurred because the Government presented compelling and uncontradicted evidence that Walker possessed the firearm that Rittle straw-purchased for him, and that this possession was in furtherance of drug trafficking. Thus, even if the court's instruction was in error, the error was harmless and had no injurious effect on the verdict. Accordingly, to the extent that Walker asserts that these claims are attributable to the ineffectiveness of either trial or appeal counsel, the court finds that Walker has failed to establish that he was prejudiced by any error that either counsel may have committed.

## 2.  Alleged errors as to Count 4

Walker alleges that the court and/or the Government committed three errors as to the charges contained in Count 4 of the second superseding indictment, and that his counsel failed to effectively address these claims either at trial or on appeal: (1) Walker's conviction on multiple counts (Counts 3 and 4) under 18 U.S.C. § 924(c) based on a single unit of prosecution was impermissible; (2) the use of alternative bases for conviction on Count 4 was either unconstitutional or legally invalid; (3) Count 4 failed to charge the movant with any codified federal crime; and (4) Count 4 is duplicitous.

In a supplemental letter brief filed February 16, 2010, the Government acknowledged that Walker's claims regarding consecutive § 924(c) sentences has merit, and agreed that the court should vacate his conviction and sentence as to Count 4 of the second superseding indictment. (*See* Gov't's Ltr. Br., Doc. 483 at 4.)

In *United States v. Diaz*, 592 F.3d 467, 475 (3d Cir. 2010), the Third Circuit held that the imposition of two consecutive sentences for possession of a

firearm in furtherance of drug trafficking when a defendant was convicted on only one predicate drug trafficking offense violated the Constitution's prohibition of double jeopardy. Here, each of the Government's § 924(c) counts lists two predicate offenses—criminal conspiracy and the substantive drug offense—thus, it is possible that each § 924(c) conviction is supported by its own predicate offense. However, the court has no way of knowing which predicate offense the jury pegged to which § 924(c) conviction because the jury was not instructed that they had to connect the guns used in each § 924(c) charge to a separate predicate offense. Without this factual determination, and in light of the Third Circuit's decision in *Diaz*, the court cannot simply assume that the § 924(c) charges were tied to the separate predicate offenses. Therefore, the court will vacate Walker's conviction and sentence on Count 4 of the second superseding indictment. As stated previously, the government agrees with this analysis. (*See* Gov't's Ltr. Br., Doc. 483, at 4.)

Because the court will vacate Walker's conviction and sentence as to Count 4, the court need not address the other areas of alleged error concerning Count 4 raised by Walker, and will dismiss them as moot.

### 3. **Sentencing errors**

Finally, Walker asserts that the court erred in assessing a five year mandatory minimum consecutive sentence on Count 3, and a ten year sentence on Count 4 because Walker was already subject to a ten year mandatory minimum sentence on Counts 5 and 6. The court will not address the allegation of error as to Count 4 because Walker's conviction and sentence as to that count will be vacated consistent with the previous discussion.

The essence of Walker's claim is that his five year mandatory minimum sentence on Count 3 is prohibited by the introductory clause of § 924(c)(1)(A) because he was subject to a longer, ten year mandatory minimum sentence on Counts 5 and 6. As previously stated, § 924(c)(1) penalizes the possession, use, or carrying of a firearm in furtherance of, among other things, a drug trafficking crime. The section opens with a prefatory clause that limits the imposition of the mandatory sentence "[e]xcept to the extent that a greater minimum sentence is otherwise provided by this subsection or by any other provision of law." 18 U.S.C. § 924(c)(1)(A).

Walker bases his claim on the Second Circuit Court of Appeal's decision in *United States v. Williams*, 558 F.3d 166 (2d Cir. 2009). In that case, relying on a previous decision, the Second Circuit analyzed the "except clause" contained in Section 924(c)(1)(A), and concluded that the mandatory minimum sentence referred to in that section is inapplicable in cases where the defendant is subject to a longer mandatory minimum sentence for a drug trafficking offense that is part of the same criminal transaction or same set of operative facts as the firearm offense found in Section 924(c). Thus, Walker contends that the court's five year sentence on the firearm charge— Count 3—to run consecutively to the ten-year mandatory minimum sentence on charges in Counts 5 and 6 are contrary to *Williams*. While *Williams* may be the law in the Second Circuit, it is not the law of the Third Circuit.

In *United States v. Abbott*, the Third Circuit declined to follow the rationale of *United States v. Whitley*, 529 F.3d 150 (2d Cir.2008), the case upon which the *Williams* court relied, and held that the "except clause" of Section 924(c)

"refers only to other [alternative] minimum sentences that may be imposed for *violations of § 924(c) and not separate offenses*" such as the sentence on the predicate offenses. 574 F.3d 203, 208 (3d Cir.2009) (emphasis added). This court is bound by the Third Circuit's decision in *Abbott*, and therefore, the court concludes that Walker's argument is without merit.

**B.    Allegations of trial counsel error**

In addition to the claims raised by Walker concerning the alleged errors committed by the court and the Government, discussed above, and which were unaddressed by trial counsel, Walker asserts that trial counsel was ineffective in several other respects. Specifically, Walker asserts that trial counsel was ineffective for: (1) failing to move to suppress evidence of the search of 315 N. Ninth Street, Apt. 3, Lebanon, Pennsylvania, after the court suppressed statements that Walker made while hospitalized where those statements were used in the affidavit of probable cause for the search warrant; (2) failing to request a curative instruction after his request for a mistrial was denied when Dennis Rittle testified about Walker having been shot; (3) for failing to request an adequate curative instruction after his request for a mistrial was denied following the guilty pleas of Walker's three co-defendants; (4) for failing to request a limiting instruction regarding the unintentional shooting of a two year old at the scene; (5) for failing to make the court aware of the extent of Walker's mental health history; (6) for suggesting a defense that was not legally viable; (7) for not challenging the sufficiency of the evidence on Counts 3, 4, and 6 regarding the Government's theory of aiding and

abetting; and (8) for failing to properly advise Walker of his sentencing exposure. The court will address each of these in turn.[2]

### 1. **Failing to move for suppression of evidence of search after the court suppressed statements made while Walker was hospitalized**

Prior to trial, one of Walker's co-defendants filed a motion to suppress evidence seized pursuant to a search warrant executed at Walker's residence located a 315 N. Ninth Street, Apt. 3, Lebanon, Pennsylvania. Following a suppression hearing and briefing, the court denied the motion to suppress any evidence obtained as a result of that search. (*See* Docs. 98-99.) On January 23, 2002, trial counsel for Walker filed several motions, including a motion to suppress evidence obtained as a result of the search of his residence, as well as, a motion to suppress statements made by him while he was being treated at Good Samaritan Hospital for a gunshot wound. On January 24, 2002, the court summarily denied Walker's motion to suppress because it was identical in all material respects to the motion previously denied as to Walker's co-defendant. (Doc. 225.) However, on February 7, 2002, the court granted the motion to suppress the statements made by Walker while he was hospitalized. (Docs. 239-40.)

Walker now contends that his trial counsel was ineffective for failing to file a second motion to suppress the physical evidence seized during the search of his residence on the basis that the suppressed statements made while Walker was hospitalized should have been excluded from the affidavit of probable cause in

---

[2] In his motion and various briefs, Walker also alleged that trial counsel was ineffective for failing to investigate and present witnesses favorable to Walker's defense. However, at his § 2255 hearing, Walker withdrew this claim. (*See* Doc. 497, Tr. of Habeas Hr'g at 7.) As such, the court will not address it further.

support of the search warrant, and, if they were so excluded, the warrant would have lacked probable cause.

Even if trial counsel was deficient for failing to file a subsequent motion, the court concludes that Walker was not prejudiced. The affidavit of probable cause supporting the search warrant contains a single line stating that "Walker did also admit . . . his presence at Lebanon Village during the shooting." (*See* Doc. 437-3 at 3.) This assertion follows other information placing Walker at Lebanon Village during the shooting, as well as the fact that Walker had been arrested for his involvement in the shooting. (*See id*.)

In its memorandum denying the suppression of the evidence seized, the court demurred ruling upon whether probable cause existed, relying instead on the fact that there was not a sufficient absence of probable cause such that a reasonable police officer could not have relied, in good faith, on the magistrate's belief that probable cause existed. The court would reach the same conclusion even if the hospital statements suppressed by the court were stricken from the affidavit. That is, even in the absence of these statements, the court concludes that the good faith exception applies because the affidavit was not so lacking in probable cause that a reasonable officer could not rely on the magistrate's belief that it existed.

Accordingly, the court finds that Walker cannot establish that counsel's failure to file a renewed motion to suppress resulted in any prejudice or that the outcome of the proceedings would have been any different had the motion been filed.

18

**2. Trial counsel's failure to request a curative instruction after his request for a mistrial was denied when Dennis Rittle testified about Walker being shot**

Before trial, the court ruled that any references to Walker being shot were not admissible. However, during trial, Government witness Dennis Rittle twice testified to this very fact. (*See* TT at 912-13.) There is no suggestion in the record, on either of these occasions, that counsel for the Government tried to elicit this information. At a sidebar during the testimony of the next government witness, trial counsel moved for a mistrial based on Rittle's comments. (*See id*. at 934.) The motion was denied.

Walker now claims that trial counsel was ineffective for failing to request a curative instruction after the court denied his motion. A court considering an ineffective counsel claim "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland,* 466 U.S. at 689. Moreover, even where at first blush one might question the efficacy of a particular action by trial counsel, "the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). "Strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Id*. at 690.

At the hearing on Walker's § 2255 motion, trial counsel testified that he did not request a curative instruction because it likely would have drawn more attention to the shooting incident than if nothing were said. (Doc. 497, Tr. of Habeas Hr'g at 14.) This is the sort of strategic decision made by trial counsel that falls well within the wide range of reasonable professional assistance. Thus, the

court concludes that Walker has failed to demonstrate the trial counsel was ineffective in not requesting a curative instruction. To the contrary, trial counsel's decision to do so was a legitimate trial strategy.

### 3. Trial counsel's failure to request a curative instruction after his request for a mistrial was denied following the guilty pleas by Walker's co-defendants

During the trial, Walker's co-defendants entered guilty pleas leaving Walker as the sole defendant for the remainder of the trial. Walker contends that the curative instruction provided by the court was insufficient to mitigate the prejudice he suffered by his co-defendants conspicuous absence, and that trial counsel was ineffective for not having requested an instruction that advised the jury that the co-defendant's absence cannot in any matter be used against Walker.

The court notes that the allegation of error against trial counsel is that he did not request specific language to be used by the court, not that he was ineffective for failing to address the co-defendants' absence. In fact, immediately after the guilty pleas were taken, trial counsel moved for a mistrial, arguing that *no curative instruction* given by the court would be adequate to address the prejudice to Walker from the fact that he was the lone defendant left in the courtroom after three days of testimony. (TT at 808-9.) Trial counsel also argued that there was testimony of two witnesses—Dechert and Radwanski—that did not implicate Walker and would not have been admissible in a trial against Walker had he been tried alone. (*Id.*) The motion was denied by the court. (*Id.* at 813.) Walker now contends that trial counsel's all or nothing approach was ineffective and that once trial counsel realized that the court would deny his motion he should have suggested specific language for the court to consider in crafting its curative instruction.

20

Walker believes that the court's curative instruction should have included language that explicitly cautioned the jury that his co-defendants' absence should not be in any manner used against Walker. The court believed that it was doing this when it gave the following curative instruction:

> Ladies and gentlemen of the jury, three of the defendants have been separated from this trial. The reasons are not a matter for your concern.
>
> However, I do need to instruct you that there was testimony from a Mr. Dechert and Officer Radwanski that must be entirely disregarded by you because it had nothing to do with Mr. Walker.

(*Id.* at 814.)

While it certainly would have been preferable for the court to have explicitly stated that the absence of the other defendants should not be held against Walker, rather than simply stating that the reasons for their absence was not a matter for the jury's concern, the court does not believe that its choice of language was so woefully inadequate as compared to Walker's preferred language such that the outcome of the proceedings can realistically be called into question. The court's language was admittedly imperfect and could have been better, but this is not the standard for collateral review. Rather, Walker must demonstrate that there is a reasonable probability that the outcome of the proceeding would have been different had a more detailed instruction been given. Walker has not met this burden.

Thus, the court concludes that trial counsel's failure to object to a curative instruction and suggest supplemental language was not deficient such that it fell below the wide range of reasonable professional assistance guaranteed by the Sixth Amendment. The court denied trial counsel's request for a mistrial and gave a

curative instruction. The fact that trial counsel did not dictate the language of that instruction does not render his representation ineffective.

## 4. **Failure to request a limiting instruction regarding the unintentional shooting of a two year old at the scene**

The charges upon which Walker was convicted involve an exchange of gunfire between Walker and others at the Lebanon Village Apartments on July 18, 2000. As a result of the shoot out, a two year old girl was unintentionally shot in the leg. At trial, the girl's mother testified about the shooting, and ballistics experts and fact witnesses connected the bullet retrieved from the two-year old's leg to the gun used by Walker. Walker now contends that trial counsel was ineffective for failing to request a limiting instruction regarding this evidence.[3]

It is unclear from Walker's brief what he believes would have been a basis for a limiting instruction. While Federal Rule of Evidence 404(b) limits the admissibility of certain evidence, it does not apply to evidence that is intrinsic to the crime charged, such as evidence that is directly connected to the factual circumstances of the crime. *See United State v. Parker*, 553 F.3d 1309, 1314-15 (10th Cir. 2009) ("Rule 404(b) only limits evidence of 'other' crimes . . . extrinsic to the charged crime . . . evidence of acts or events that are part of the crime itself, or evidence essential to the context of the crime, does not fall under the other crimes limitations of Rule 404(b).").

---

[3]There appears to be some confusion about whether Walker claims that counsel was ineffective for failing to request that the Government stipulate to this evidence rather than have it introduced through testimony. During the § 2255 hearing, trial counsel testified that he attempted to have the government stipulate to this evidence because he knew that it would be highly damaging, but that the government would not do so. (Doc. 497, Tr. of Habeas Hr'g at 17.) To the extent that Walker contends that counsel was ineffective for requesting a stipulation that did not occur, the court finds that he suffered no prejudice.

Here, evidence that a two-year old was shot from a gun connected to Walker during a drug related shooting where over thirty bullets were shot within a matter of minutes was admissible not for some limited purpose, but rather it was admissible because it was inseparable from the criminal event itself. Thus, there was no limiting instruction that would have been applicable under the circumstances, and the court finds that trial counsel was not ineffective for failing to request a limiting instruction.[4]

### 5. **Trial counsel's failure to make the court aware of the extent of Walker's mental health history**

Walker argues that trial counsel was ineffective for failing to present potential mitigation evidence in support of a sentencing departure based on Walker's mental health history.

Walker's presentence report noted at least two placements for diagnostic testing to assess Walker's mental and emotional health. Specifically, in November 1992, Walker underwent a psychological evaluation and was found to have a low-average IQ, and that he suffered from emotional factors that seemed to interfere with his cognitive functions. According to the presentence report, the report from that psychological evaluation indicated that Walker was diagnosed as having a personality disorder with borderline, sadistic and anti-social personality. In January 1994, Walker underwent another psychiatric evaluation while in placement. That evaluation, among other things, noted that Walker had a generalized conduct disorder and an impulse control disorder.

---

[4]The court notes that it did give its standard jury instruction that jurors should not let bias, prejudice, or sympathy influence their deliberations or decision in the case. (*See* TT at 1142.)

The record reflects that in response to the presentence report, Walker filed pro se objections which were supplemented by trial counsel. In these objections, trial counsel notes Walker's previous mental health diagnoses, requests a downward departure for diminished capacity under U.S. Sentencing Guidelines Manual § 5K2.13 (2001), and requests an additional psychological or psychiatric examination to further his argument for downward departure. This request was made by counsel in his August 16, 2002 objections. However, counsel did not follow-up with a motion requesting such an examination.

At sentencing, the issue was raised again. Trial counsel pursued the request for downward departure and asked the court to defer sentencing in order to get a psychiatric evaluation to further his 5K2.13 motion for downward departure. The court denied the request, at least in part because the court is not permitted to depart under 5K2.13 where "the facts and circumstances of the defendant's offense indicate a need to protect the public because the offense involved actual violence or a serious threat of violence." (Doc. 352-2, Feb. 13, 2003, Tr. of Sentencing at 11:1-4 (quoting U.S. Sentencing Guidelines Manual § 5K2.13(2) (2001).) The court then refused the request for downward departure because of the restrictions imposed by subsection two of section 5K2.13, and "[i]n the absence of any further proof that the defendant really fits in a 5K2.13." (*Id.*)

Walker now contends that trial counsel was ineffective because he should have subpoenaed Walker's mental health records from his prior placements, he should have requested a psychological evaluation earlier, and he should have moved for departure based on section 5H1.3 of the sentencing guidelines.

As to his first contention, the court finds that Walker suffered no prejudice from the fact that trial counsel did not subpoena his prior mental health records. These evaluations were conducted in 1992 and 1994, and would have shed no light into the state of Walker's mental health at the time he committed the offenses in 2000. Accordingly, the court would have placed little reliance on these records in support of Walker's downward departure motion. Under the second prong of the *Strickland* test, a defendant must show that counsel's deficient performance prejudiced the defense, meaning that as a result of counsel's errors the proceedings were rendered unfair or unreliable. *United States v. Nahodil*, 36 F.3d 323, 326 (3d Cir. 1994). With regard to trial counsel's failure to subpoena these records, the court does not believe that the failure to do so changed the result of Walker's sentence.

Walker' second contention is more troubling. There is no doubt that one of the reasons that the court did not depart under 5K2.13 was because counsel did not provide proof that Walker merited the departure. Although trial counsel did make a request for a psychological evaluation in his objections to the presentence report, he did not file a motion requesting that Walker be evaluated prior to sentencing.

However, even assuming that trial counsel had requested an evaluation, and the evaluation concluded that Walker suffered from diminished capacity at the time he committed the offenses in question, the court would not have departed under 5K2.13 because subsection two of that section explicitly states that a court "may not depart below the applicable guideline range if . . . (2) the facts and circumstances of the defendant's offense indicate a need to protect the public because the offense

involved actual violence or a serious threat of violence." U.S. Sentencing Guidelines Manual § 5K2.13(2) (2001). There is no doubt that Walker's offense involved actual violence. To reiterate, there was ample evidence connecting Walker to the accidental shooting of a two-year old bystander, as well a gun fight that resulted in over thirty bullets being shot in a matter of minutes. These facts alone, lead the court to conclude that offenses in question involved actual violence or a serious threat of violence.

Under second prong of the *Strickland* test, a defendant must show that counsel's deficient performance prejudiced the defense, meaning that as a result of counsel's errors the proceedings were rendered unfair or unreliable. *United States v. Nahodil*, 36 F.3d 323, 326 (3d Cir. 1994). No psychological evaluation would have been able to overcome the facts of this case and the prohibition of granting a downward departure where the offense involved violence. The fact that the guidelines are advisory does not change the court's analysis.

Lastly, Walker's contention that trial counsel should have moved for departure based on section 5H1.3 of the guidelines is misplaced. That section is a policy statement that cross references section 5K2, and thus necessarily contains the same conditions as section 5K2.13. Accordingly, the court finds that Walker has not demonstrated that he was prejudiced by counsel's failure to formally request a psychological or psychiatric evaluation to further his request for downward departure under either section 5K2.13 or section 5H1.3.

### 6. Trial counsel's failure to properly advise Walker of his sentencing exposure

Walker contends that trial counsel was ineffective because he failed to properly advise him of his potential sentencing exposure. Walker contends that had

he been correctly advised of his sentencing exposure, there was a reasonable probability that he would not have proceeded to trial and would have entered a guilty plea.

During the § 2255 hearing, trial counsel repeatedly stated that he told Walker that he would be facing a lot of time if he were convicted, and that he reviewed a possible worst case scenario with Walker. (*See* Doc 497, Tr. of Habeas Hr'g at 31-38.) During the hearing, trial counsel presented handwritten notes from his file which shows a rough guidelines calculation with a cumulative prison sentence of 105 years. (Gov't's Ex. 1 to Habeas Hr'g.) Although he could not state with specificity when he reviewed these calculations with Walker, trial counsel stated unequivocally that he did do so. (Doc 497, Tr. of Habeas Hr'g at 32-33.) Furthermore, the billing records submitted by trial counsel for payment under the Criminal Justice Act reflect several occasions where trial counsel met with his client to discuss the possibility of plea agreements with the government. (*See* Doc. 496 at entries dated Dec. 10, 2001, Dec. 31, 2001, Jan. 14, 2002, Feb. 22, 2002.)

Incredibly, Walker makes the completely contradictory assertions that had he known his sentencing exposure he would not have proceeded to trial, but at the same time argues that the figures calculated in Government's Exhibit 1—which trial counsel calculated would land Walker in prison for 105 years—were inaccurate because they *overestimated* his potential sentence. It is hard for the court to reconcile these arguments. Even assuming that trial counsel overstated Walker's potential sentencing exposure, it is difficult to see how this prejudiced Walker when his argument is that had he known how much time he was facing that he would have pled guilty rather than risk a trial.

Based on the evidence taken at the § 2255 hearing, the court concludes that trial counsel adequately advised Walker of his possible sentencing exposure and was not ineffective in this regard.

### 7. **Alleged errors committed in closing**

Walker contends that trial counsel was ineffective because he conceded in his closing argument that Walker sold drugs in Lebanon and that, by arguing self-defense, trial counsel conceded that Walker discharged a firearm. The transcript does not support Walker's contention.

Nowhere in trial counsel's closing argument does he concede that Walker sold drugs in Lebanon. (*See* TT at 1083-1126.) Walker points to a place in the transcript where trial counsel states the following:

> You may surmise and you may believe and with some reason, you may believe Mr. Walker, yeah, he sold cocaine in Lebanon. But look at the time frame. Look at the dates that he was alleged to have been involved in the conspiracies with these codefendants, when we was supposed to be aiding and abetting them.

(Tr. at 1104.) Placed in its context, this statement is not a concession by trial counsel. Immediately before making this statement, trial counsel was talking about the burden of proof, and immediately after this statement trial counsel went into great detail about what he believed were the discrepancies in the government's case tying Walker to a conspiracy to distribute drugs during the times alleged in the indictment. In this light, trial counsel was stating that even if the jury believed that Walker dealt drugs, in order to convict him of the indicted charges they would have to believe that he did so in concert with his codefendants during the times alleged in the indictment. In other words, just selling was not enough unless it was connected with the specific period of time charged in the indictment. Given the overwhelming

evidence tying Walker to drug distribution, this was a valid theory. Furthermore, even taken out of context, the statement made by trial counsel is not an admission that Walker dealt drugs it is simply a concession that they jury *may* conclude that he did.

While counsel did concede that Walker was found with one gram of cocaine when he was arrested, this was in the context of arguing that the jury would have to conclude that he was responsible for distributing at least 49 other grams of cocaine in order to convict him of the crimes charged. (*Id.* at 1112.) Again, however, trial counsel argued vigorously that even if the jury believed witnesses who testified that Walker sold drugs in Lebanon, the time periods testified to by the witnesses did not correspond either to the time periods set forth in the indictment or the time periods during which Walker was not incarcerated. (*Id.* at 1104, 1112.) Finally, despite Walker's claim to the contrary, trial counsel specifically stated that there was no self-defense claim at issue, and that anything he said to the contrary was a misstatement. (*Id*. at 1121.)

Read in its entirety, trial counsel's closing argument cannot be considered ineffective. Simply put, Walker's claim fails because the record does not provide a factual basis to support his claim for ineffectiveness. Certainly, there is nothing in trial counsel's closing argument that would lead the court to believe that his performance "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686 (1984).

**8**. **Trial counsel's failure to challenge the sufficiency of the evidence on Counts 3, 4, and 6 regarding the government's theory of aiding and abetting**

Lastly, Walker argues that trial counsel was ineffective for failing to move for a judgment of acquittal on Counts 3, 4, and 6 on the basis that the evidence that Walker aided and abetted was insufficient to support a guilty verdict, for failing to request a new trial on the same basis, and for failing to seek to prevent the court from giving an aiding and abetting instruction.

Pursuant to Rule 29 of the Federal Rules of Criminal Procedure, trial counsel did move for a judgment of acquittal on all counts on the basis that the evidence was insufficient. (*See* Tr. at 1025-1028.) The court denied that motion. (*Id.* at 1032.) Post-trial, trial counsel filed a motion for a new trial pursuant to Rule 33 of the Federal Rules of Civil Procedure based, in part, on a claim that the convictions in counts 1 and 5 were against the weight of the evidence. (Doc. 332.) The court denied that motion. (Doc. 344.) Walker now argues that trial counsel should have argued that a judgment of acquittal or new trial should have been granted as to Counts 3, 4, and 6, as an aider and abettor.[5]

There was ample evidence presented at trial that Walker possessed a firearm in furtherance of drug trafficking, (Count 3), and that he distributed and possessed with intent to distribute a controlled substance, (Count 6).

For instance, at trial, Dennis Rittle testified that beginning in approximately March 2000, he was purchasing pound quantities of marijuana from Walker. (TT at 864.) Beginning about June 2000, Rittle began purchasing powder

---

[5]Since the court will vacate Walker's conviction and sentence as to Count 4, the court will not discuss the evidence as to this count.

cocaine from Walker and, soon thereafter, began purchasing crack cocaine from Walker. (*Id.* at 867-68.) When he was getting the cocaine, he would get 3.5 grams of cocaine between 2-4 times per day over a two month period. (*Id.* at 867-69.) Which translates, over the two month period, to well over 50 grams of cocaine alone.

On July 12, 2000, Walker approached Rittle and asked him to get some guns for him saying "he had some drama and needed them for protection." (*Id.* at 873.) Walker told Rittle that he would pay him with crack cocaine. Rittle and Walker, along with coconspirators, traveled to Shyda's Gun Shop where Walker and his coconspirators picked out the firearms that they wanted and Rittle purchased them. (*Id.* at 873-74.) Rittle gave the guns to Walker, who kept the .40 caliber, and gave the others to his coconspirators. In exchange for purchasing these guns, Rittle testified that he "got a few bags of crack." (*Id.* at 877.)

This evidence is sufficient to sustain a conviction on Counts 3 and 6, and it is well-established that a criminal defendant is culpable whether he commits a crime himself; that is, if he acts as a principal, or whether he aids and abets another in committing a crime, and a defendant need not be indicted specifically as an aider and abettor in order to be convicted on that theory. *See United States v. Donahue*, 885 F.2d 45, 48 (3d Cir. 1989). Furthermore, aiding and abetting is implied in every indictment for a substantive offense. *United States v. Frorup*, 963 F.2d 41, 52 n.1 (3d Cir. 1992).

Thus, the court concludes that sufficient evidence was presented to support the jury's finding of guilt on Counts 3 and 6, and trial counsel was not

ineffective for failing to challenge aider and abettor liability or for failing to move for a new trial on the same.

### C.  Alleged errors committed by appeal counsel

In addition to the errors that Walker alleges his trial counsel committed, he asserts that his appeal counsel committed errors that effectively deprived him of adequate counsel on appeal.  In assessing the effective assistance of counsel on appeal, the court again applies the *Strickland* test.  *See Buehl v. Vaughn*, 166 F.3d 163, 173-74 (3d Cir 1999).  Effective appellate advocacy is the exercise of reasonable selectivity in deciding which legal issues to raise.  *Id.*

Many of the errors that Walker alleges against appeal counsel piggy-back on the errors that he alleges against trial counsel.  For instance, Walker asserts that: (1) appeal counsel was ineffective for failing to appeal the denial of his request a limiting instruction regarding the unintentional shooting of a two year old at the scene; (2) appeal counsel was ineffective for failing to appeal the court's denials of Walker's mistrial motions, and for failing to challenge the cautionary instruction given after the guilty pleas of his co-defendants during trial; (3) appeal counsel was ineffective for failing to contest that it was improper for the court to consider his juvenile conviction in his criminal history calculation; and (4) appeal counsel was ineffective for failing to raise a sufficiency of evidence argument regarding counts 3, 4, and 6 regarding the government's theory of aiding and abetting.  The court will address each of these in turn.

### 1.  Limiting Instruction

In part III.B.4., above, the court concluded that Walker's trial counsel did not err in failing to request a limiting instruction concerning evidence that a two-

year old was shot during the July 2000 shoot out at Lebanon Village. For the same reasons, the court concludes that appeal counsel was not ineffective for failing to raise this issue on appeal.

### 2. Failure to appeal the court's use of an aiding and abetting instruction regarding Counts 3, 4, and 6

In part III.B.8., above, the court concluded that trial counsel was not ineffective for his failure to file post-trial motions challenging the sufficiency of the evidence on Counts 3, 4, and 6, and the court's use of an aiding and abetting instruction because the evidence was more than sufficient to sustain the verdict, and it is well-established that a criminal defendant is culpable whether he commits a crime himself or assists someone else in committing a crime. For the same reasons, the court concludes that appeal counsel was not ineffective for failing to raise this issue on appeal.

### 3. Failure to appeal the denial of mistrial motions and for not challenging the adequacy of the curative instructions

Walker asserts that appeal counsel was ineffective for failing to directly appeal the denial of his mistrial motions, the adequacy of the curative instruction given when his co-defendants pled, and for failing to assert that trial counsel was ineffective for his failure to request an appropriate curative instruction.

The court finds that Walker has failed to meet his burden in demonstrating that appeal counsel's performance fell outside of the "wide range of reasonable professional assistance," *Strickland*, 466 U.S. at 689, or that, even if counsel's performance was deficient, that he was prejudiced. As to the first issue, appeal counsel's purported failure to appeal the denial of Walker's mistrial request after Dennis Rittle testified that he had been shot, the court has already determined

that this reference, unaccompanied by any reference to the July 12, 2000 shootout at Lebanon Village, "could not be prejudicial to defendant." (*See* Doc. 344, Dec. 10, 2002 Mem. & Order Denying Mot. for New Trial at 5.) Although appeal counsel could not remember at the § 2255 hearing why he did not appeal this particular issue, the court finds that the issue would not have been meritorious on appeal and counsel was not deficient for failing to raise the issue. Rittle's reference to Walker being shot was unsolicited by counsel for the government and was disconnected from any testimony concerning the July 12, 2000 shooting. Given this, it is difficult to see how mistrial would have been warranted, and how appeal counsel was ineffective for failing to argue that mistrial was warranted on appeal.

Regarding the court's second denial of Walker's request for a mistrial—when his co-defendants entered guilty pleas in the middle of the trial—as well as the effectiveness of the court's curative instruction, appeal counsel testified during the § 2255 hearing that he considered that issue but "didn't see it as anything that would really win on appeal." (Doc. 497, Tr. of Habeas Hr'g at 74:11-12.) Specifically, as to whether the curative instruction was adequate, appeal counsel testified as follows:

> Q:   With regard to the cautionary instruction that the judge gave, your testimony is that you believe that was adequate?
>
> A:   Yes. I mean, it just didn't raise any red flags in my mind. It seemed like it was appropriate. As I said, I don't recall if I did any research on it. It didn't seem like a winning issue as far as I was concerned. It just didn't jump out at me.

(*Id.* at 75:2-8.) It is apparent from this exchange, as well as counsel's testimony concerning the denial of Walker's mistrial request, that appeal counsel considered

34

these issues yet chose not to take them on appeal because he did not believe that they would be meritorious. There is no question that the job of appeal counsel is to be reasonably selective as to the issues that he takes on appeal. *See Buehl*, 166 F.3d at 173-74. The fact that appeal counsel considered these issues, but chose not to appeal them is within the wide range of reasonable professional assistance that is expected of effective counsel. This is particularly true because had the issues been raised on appeal, the court believes that its decision and its curative instruction would have been upheld for the reasons set forth in Part III.B.3, above. Accordingly, the court concludes that appeal counsel was not ineffective for failing to raise these issues on direct appeal.

### 4. Appeal counsel's failure to contest the inclusion of his juvenile conviction in determining his criminal history category

Finally, Walker contends that appeal counsel was ineffective for failing to properly argue on appeal that his juvenile conviction should not have been included in determining his criminal history category. Contrary to Walker's argument, this issue was raised on direct appeal. (*See* Def.'s Ex. 8 at 2255 Hr'g, Dec. 29, 2003, Br. in Supp. of Appeal to 3d Cir. at 19-20.) The Third Circuit ruled that Walker's claim that the inclusion of his juvenile conviction was erroneous "has no merit," and that this court's decision to include it in assessing his criminal history category "was not unreasonable." *United States v. Walker*, 136 F. App'x 525, 528-29 (3d Cir. 2005).

"When a defendant has raised a claim and has been given a full and fair opportunity to litigate it on direct appeal, that claim may not be used as a basis for a subsequent § 2255 petition." *United States v. Hayes*, 231 F.3d 1132, 1139 (9th Cir.

2000).  Since the Third Circuit has already ruled that the court's inclusion of Walker's juvenile conviction was not unreasonable, Walker cannot relitigate that claim here under the guise of a § 2255 motion.

### D.    Cumulative Errors

In addition to the individual errors alleged above, Walker contends that the cumulative effect of these errors violated his Fifth and Sixth Amendment rights to counsel.  "'[A] cumulative-error analysis merely aggregates all the errors that individually have been found to be harmless . . . analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless.'" *Albrecht v. Horn*, 485 F.3d 103, 139 (3d Cir. 2007) (*quoting Darks v. Mullin*, 327 F.3d 1001, 1018 (10th Cir.2003)).  "Cumulative errors are not harmless if they had a substantial and injurious effect or influence in determining the jury's verdict, which means that a habeas petitioner is not entitled to relief based on cumulative errors unless he can establish actual prejudice." *Id.* (quotations omitted, *citing Brecht v. Abrahamson*, 507 U.S. 619 (1993); *see Whitney v. Horn*, 280 F.3d 240, 258-59 n.18 (3d Cir. 2002) (*Strickland* prejudice and *Brecht* harmless error are essentially same standard)).

With the exception of the stacking of section 924(c) convictions, which the Government conceded was an error, and because of which the court will vacate the conviction and sentence on Count 4, Walker has failed to establish that trial or appeal counsel were ineffective in their representation.  It is difficult for the court to see how one error plus a number of non-errors can have a cumulative effect.  *See Castro v. Ward*, 138 F.3d 810, 832 (10th Cir. 1998) (stating that the cumulative error analysis applies "where there are two or more actual errors," and that it does not

"apply to the cumulative effect of non-errors"). Here, in all but one instance, Walker has failed to establish that either his trial or his appeal counsel erred. Accordingly, the court finds that Walker has failed to establish that there was cumulative, actual prejudice resulting from the representation he received either from trial or appeal counsel.

**IV.** **Conclusion**

       In accordance with the foregoing, the court will grant in part and deny in part Walker's motion for relief pursuant to 28 U.S.C. § 2255. The court will vacate Walker's conviction and sentence on Count 4 of the second superseding indictment and will schedule him for resentencing. In all other respects, Walker's motion is denied. The court will issue an appropriate order.

s/Sylvia H. Rambo      
United States District Judge

Dated: June 11, 2010.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**UNITED STATES OF AMERICA**     :
                                 :
                                 :
         **v.**                  : **1:00-CR-300-03**
                                 :
                                 :
**AHMED WALKER**                 :
                                 :
                                 :

## O R D E R

In accordance with the accompanying memorandum of law, **IT IS
HEREBY ORDERED THAT** Defendant Ahmed Walker's Motion to Vacate, Set
Aside, or Correct his Sentence pursuant to 28 U.S.C. § 2255, (Doc. 433 and 489), is
**GRANTED IN PART AND DENIED IN PART** as follows:

(1)     The motion is **GRANTED** as to Count 4 of the second
superseding indictment, and the court finds that the imposition of consecutive
sentences under 18 U.S.C. § 924(c) constituted double jeopardy.  Accordingly,
Defendant Ahmed Walker's conviction and sentence on Count 4 of the second
superseding indictment is **VACATED**.  A resentencing hearing will be scheduled by
separate order.

(2)     The motion is **DENIED** in all other respects.


                                   s/Sylvia H. Rambo
                                   United States District Judge

Dated:  June 11, 2010.